WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                         :

**In re**                         :       **Chapter 11 Case No.**
                         :

**STEVE & BARRY'S**          :

**MANHATTAN LLC, et al.,**   :       ___ - _____ (  )
                         :

         **Debtors.**         :       **(Jointly Administered)**
                         :

------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), 362(d),
363(b) AND 503(b) OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULES 4001, 6003 AND 6004 SEEKING AUTHORITY TO
(A) (i) CONTINUE THE DEBTORS' WORKERS' COMPENSATION
PROGRAMS AND THEIR LIABILITY, PROPERTY, AND OTHER
INSURANCE PROGRAMS AND (ii) PAY ALL PREPETITION
OBLIGATIONS IN RESPECT THEREOF, (B) DIRECT FINANCIAL
INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS
RELATED TO SUCH OBLIGATIONS AND (C) SCHEDULE A FINAL HEARING**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

        Steve & Barry's Manhattan LLC and its debtors affiliates, as debtors and debtors

in possession (collectively, "<u>Steve & Barry's</u>" or the "<u>Debtors</u>"), respectfully represent:

<u>**Background**</u>

        1.      On the date hereof (the "<u>Commencement Date</u>"), the Debtors each

commenced with this Court a voluntary case under chapter 11 of title 11 of the United States

Code (the "<u>Bankruptcy Code</u>"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

## Steve & Barry's Business

3. Steve & Barry's is a specialty retailer of apparel and accessories that provides consumers with quality low-priced apparel. Founded in 1985, Steve & Barry's has grown exponentially from an original store in Philadelphia, Pennsylvania to 276 stores located throughout the United States. Many Steve & Barry's retail locations serve economically challenged areas that other retailers have abandoned because of household income levels, population trends or crime rates. During the course of its expansion, Steve & Barry's has diversified its business beyond its original line of university apparel, and its products currently fall broadly into three categories: (i) licensed university apparel and lifestyle brands, (ii) private-label casual clothing and accessories for men, women and children, and (iii) exclusive celebrity branded lines of apparel and accessories.

4. Steve & Barry's offers quality apparel and accessories at dramatically lower prices than typically found for similar goods from other specialty retailers, and in a more upscale, customer-friendly store design. Steve & Barry's achieves this by operating stores with low occupancy costs, and by relying mostly upon word of mouth and news stories, rather than paid print or other advertising, resulting in significant cost savings. Steve & Barry's keeps its costs low by maintaining overseas offices and purchasing most merchandise directly from their

NY2:\1886688\08\14FS008!.DOC\76023.0003

sources without intermediaries. The savings realized through each strategy are then passed on to Steve & Barry's customers in the form of low prices. Almost all items in Steve & Barry's retail locations are priced at $9.98 or less.

5. As of May 31, 2008, Steve & Barry's (including nondebtor affiliates) consolidated assets totaled approximately $693.5 million and recorded consolidated liabilities totaled approximately $638 million. Consolidated revenues for the twelve months ended May 31, 2008, were approximately $656.6 million. Steve & Barry's currently employs, either directly or through its non-debtor affiliates, approximately 8,600 domestic employees and 1,100 international employees. Approximately 7,300 of the domestic employees are part-time hourly employees and 1,300 are full-time salaried employees.

## Jurisdiction

6. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

7. In connection with the operation of their businesses, the Debtors maintain certain workers' compensation programs and various liability, property, and other insurance programs and policies (collectively, the "Insurance Programs") through several different insurance carriers (the "Insurance Carriers"). Annexed hereto as Exhibit A is a list of each of the Insurance Programs, disclosing with respect to each Insurance Program, as applicable: the Insurance Carrier, the type of coverage, the coverage period, and the aggregate annual premium

due thereunder.[1]  By this Motion, the Debtors request authority, pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Bankruptcy Rules 4001, 6003 and 6004 to (i) continue their Insurance Programs uninterrupted; (ii) pay, in the Debtors' discretion, the undisputed prepetition obligations thereunder (the "Insurance Obligations"); (iii) modify the automatic stay solely and for the limited purpose of permitting employees with claims under the Workers' Compensation Program to proceed with their claims in accordance with such program in the appropriate judicial or administrative forum; and (iv) schedule a final hearing (the "Final Hearing") to consider the relief requested herein on a permanent basis.

8.      As part of their cash management system, the Debtors maintain bank accounts at certain banks and financial institutions (the "Banks"), including, but not limited to, the Banks listed on Exhibit B annexed hereto and any other bank that is approved as part of the Debtors' cash management system.  The Debtors draw upon funds in their accounts to satisfy their obligations arising from the Insurance Programs.  In addition to the relief requested above, the Debtors request that the Court authorize the Banks to receive, honor, process, and pay any and all checks drawn, or electronic fund transfers requested or to be requested on the Debtors' Banks, to the extent that such checks or electronic fund transfers relate to any of the foregoing.

### Workers' Compensation Programs

9.      The laws of the various states in which the Debtors operate require the Debtors to maintain workers' compensation policies and programs to provide their employees with workers' compensation benefits for claims arising from or related to their employment with

---

[1] In addition to the Insurance Programs listed on Exhibit A, the Debtors maintain numerous other insurance policies and programs with respect to employee benefits including health, dental, disability, and life insurance.  These programs and policies are addressed in a separate motion filed contemporaneously herewith pertaining to the Debtors' employee wage policies and benefit programs.

NY2:\1886688\08\14FS008!.DOC\76023.0003

the Debtors. The Debtors maintain workers' compensation coverage through a fully-insured, third-party insurance program provided by Chubb Indemnity Insurance Company (the "Chubb Program"), and various statutorily required State Programs (as defined herein, and together with the Chubb Program, the "Workers Compensation Programs").

### A. The Chubb Program

10. Unless otherwise required by state law, workers' compensation coverage for the Debtors' employees is provided through a fully-insured, guaranteed cost workers' compensation policy and program provided by Chubb. The Chubb Program is maintained by S&B Industries, Inc., and covers all of the Debtors' domestic employees who are not otherwise covered by one of the State Programs. Under the Chubb Program, the Debtors pay an annual premium to Chubb, but incur no other costs, subject to a "true-up" (discussed below) regardless of the number of claims filed. Rather, Chubb is responsible for the payment of all claims and benefits up to the statutory limit for all employees covered by the Chubb Program.

11. The Chubb Program obliges the Debtors to pay an annual premium in the amount of $1,450,000 (the "Estimated Premium") for the period November 30, 2007 through and including November 29, 2008. The Estimated Premium is paid by the Debtors in ten equal installments of approximately $145,000. As of the Commencement Date, the Debtors are obliged to pay two further payments to Chubb, with such payments being due on July 31, 2008 and August 31, 2008.

12. Chubb performs an audit of the Debtors' actual payroll at the conclusion of each policy year. If the Debtors' payroll and actual claims exceed those used to calculate the Estimated Premium, the Debtors are required to pay an additional premium to Chubb in a "true-up." If, however, the payroll and actual claims numbers are less than the Estimated Premium,

the Debtors receive a refund from Chubb for the difference. For the policy year 2006-2007, upon audit, the Debtors owed an additional $202,289 in premiums. Accordingly, following the annual audit, and at some point subsequent to the Commencement Date, Chubb may have a liquidated claim arising from periods before the Commencement Date. The Debtors are seeking the Court's authorization to pay such claims, in their discretion, as they come due.

**B.** **The State Programs**

13. In Ohio, Washington and West Virginia, state statutes require the Debtors to utilize specific workers compensation programs. These state specific workers' compensation programs provide coverage up to the statutory awards limit in each state (the "Statutory Limit"); coverage for claims above the Statutory Limit are covered under the Chubb Program. As a result, the Debtors' employees in these states are not covered by the Chubb Program for Statutory Limits and are instead covered by the Workers Compensation Program required in the state in which they work.

14. In Ohio, there is a mandatory, state-sponsored workers' compensation system. The Debtors purchase two separate workers' compensation programs from the Ohio Bureau of Workers' Compensation. One program covers employees who work in the Debtors' distribution center (the "Distribution Center Program") and has an annual estimated premium for the period July 1, 2008 through July 1, 2009 of $450,000. The other program covers employees who work in the Debtors' Ohio based stores (the "Ohio Store Program," and together with the Distribution Center Program, the "Ohio Programs") and has an annual estimated premium of $130,000 for the period July 1, 2008 through July 1, 2009, and covers employees who work in the Debtors' Ohio based stores (the "Ohio Store Program," and together with the Distribution Center Program, the "Ohio Programs"). The Ohio Programs are automatically renewable, and

premiums with respect to the Ohio Programs are paid, in arrears, every six months.  Accordingly there is approximately $225,000 in accrued and unpaid premiums with respect to the Distribution Center Program and $65,000 in accrued and unpaid premiums with respect to the Ohio Stores Program.  The payment of these premiums is due on or around July 31, 2008.  Subject to a true-up based on an end of year audit of the Debtors' Ohio payroll and labor industry classifications, there are no additional charges with respect to the Ohio Program.

15.     Similarly, in the state of Washington, the Debtors' workers' compensation for Statutory Limits is provided by the Washington Department of Labor and Industry (the "Washington Program").  The Washington Program has a term of January 1, 2007 through and including December 31, 2008.  The Debtors pay an estimated annual premium in the amount of $60,000, which is paid on a quarterly basis, three months in arrears.  There are currently $15,000 in accrued and unpaid obligations with respect to the Washington Program.  The payment of these premiums is due on July 31, 2008.  Subject to a true-up following an annual audit of the Debtors' payroll, the Debtors incur no additional costs with respect to the Washington Program.

16.     In West Virginia, the Debtors' purchase workers' compensation coverage for Statutory Limits through Brick Street Mutual Insurance Company (the "West Virginia Program," and together with the Ohio Program and the Washington Program, the "State Programs").  The West Virginia Program has an annual premium of $40,000 and a term that runs from March 8, 2008 through March 8, 2009.  All premiums under the West Virginia Program are paid in full, and, subject to a true-up following an audit of the Debtors West Virginia payroll, the Debtors will incur no additional costs for this coverage.

NY2:\1886688\08\14FS008!.DOC\76023.0003

C.    **Payment of Workers' Compensation Obligations is Warranted**

17.    Payment of the premiums for the Workers' Compensation Programs and the payment of prepetition workers' compensation claims is essential to the continued operation of the Debtors' businesses.  As of the Commencement Date, there are no outstanding obligations under the Workers' Compensation Programs.  At some time subsequent to the Commencement Date, certain Insurance Carriers may have liquidated claims arising from policies under the Workers' Compensation Program for periods prior to the Commencement Date for premiums or true-ups.  Therefore, the Debtors request authority to pay, in their discretion, any and all undisputed amounts due and owing with respect to any Workers' Compensation Program as they come due in the ordinary course of these chapter 11 cases.

D.    **The Automatic Stay Should Be Waived for Workers' Compensation Claims**

18.    Section 362(a) of the Bankruptcy Code, commonly known as the "automatic stay," operates to stay

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).  Section 362, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause."  Id. § 362(d)(1).

19.    To the extent the Debtors' employees hold valid workers' compensation claims, the Debtors seek authorization, under section 362(d) of the Bankruptcy Code, to permit these employees to proceed with their claims in the appropriate judicial or administrative forum. The Debtors believe cause exists to modify the automatic stay because prohibiting the Debtors' employees from proceeding with their claims could have a detrimental effect on the financial well-being and morale of such employees and lead to their departure.  As discussed above, such

8

departures could cause a severe disruption in the Debtors' businesses to the detriment of all parties in interest.

20.     To this end, and solely with respect to workers' compensation claims covered under the Workers' Compensation Programs, the Debtors seek to modify the automatic stay as it relates to workers' compensation claims; provided, that such claims are pursued in accordance with the Workers' Compensation Program and recoveries, if any, are limited to the proceeds from the applicable Workers' Compensation Program.  All other claims, including any relating to matters covered by other Insurance Programs, will remain subject to the automatic stay.  To effectuate the aforementioned modification of the automatic stay, the Debtors request that the Court waive the stay of a judgment under Bankruptcy Rule 7062 and the requirements under Bankruptcy Rule 9014 relating to contested matters with respect to claims under the Workers' Compensation Programs.

21.     Pursuant to this Motion, the Debtors do not seek a waiver, termination, or modification of the automatic stay with respect to any other claims or matters.

**Liability and Property Insurance Programs**

22.     The Debtors maintain various liability and property related insurance programs, which provide the Debtors with insurance coverage for liabilities relating to, among other things, general commercial claims, property damage, general foreign liability, directors' and officers' liability, commercial crime, employment practices, umbrella, and various other property-related and general liabilities (collectively, the "Liability and Property Insurance Programs").  Continuation of these policies is essential to the ongoing operation of the Debtors' businesses.

23.     The Debtors are required to pay premiums under the Liability and Property Insurance Programs based upon fixed rates established by the applicable Insurance

Carrier. The annual premiums for these policies, and the Workers Compensation Programs, aggregate approximately $4,700,000. The Debtors pay certain of these premiums directly to the Insurance Carriers, while a number of the premiums under the Debtors' Liability and Property Insurance Programs are financed by third party financing companies.

24.     Specifically, the Debtors have procured the Liability and Property Insurance Programs (as listed on <u>Exhibit A</u>), which provide the Debtors with insurance coverage for liabilities relating to, among other things, general liability, primary property liability, automobile liability, ocean cargo liability, employment practices liability, directors and officers liability, crime liability, kidnap and ransom, and umbrella or excess liability insurance. Moreover, the Debtors maintain a foreign insurance package, which covers the Debtors' domestic employees when traveling abroad, and various additional property insurance programs in certain areas, such as excess earthquake insurance, and a number of flood and excess flood insurance programs.

25.     The Debtors' primary property and general liability insurance coverage (the "<u>Package Policy</u>")[2] is provided by Federal Insurance Company, a subsidiary of the Chubb Group ("<u>Federal</u>"). The Debtors pay the combined premium of $1,162,164 directly to Federal in four quarterly payments of approximately $209,000.[3] The Package Policy has a term which began on September 1, 2007 and runs through September 1, 2008. The Debtors made the final quarterly payment with respect to the Package Policy on June 30, 2008.

---

[2] The Package Policy consists of two separate policies, the property coverage and the general liability coverage, both of which are set forth on the schedule attached hereto as <u>Exhibit A</u>.

[3] This combined premium amount is based on the number of stores operated by the Debtors at the beginning of the Package Policy's term. The Debtors have opened additional stores since that time, and Chubb is currently calculating the resulting policy increase.

26.    With the exception of the Package Policy, foreign insurance package, crime liability, kidnap and ransom, workplace violence liability and automobile liability, all of the Debtors' policies with respect to the Liability and Property Program are financed by Imperial A.I. Credit Companies ("<u>AICCO</u>").[4]  The Debtors have entered into three premium finance agreements (the "<u>Premium Finance Agreements</u>") with AICCO.  Pursuant to the Premium Finance Agreements, AICCO pays the premiums at the policies' inception, and the Debtors are required to make an initial payment equal to twenty-percent of the policy cost and thereafter make monthly payments comprised of the premium and financing fees.  The aggregate premiums financed pursuant to the Premium Finance Agreements is $1,144,512.  The Debtors made the payment under the Premium Financing Agreements on June 1, 2008.  Another AICCO financing payment of $11,000 related to a director and officer liability policy is due on July 25, 2008.

27.    In addition to the annual premiums, pursuant to certain of the Liability and Property Insurance Programs, the Debtors are required to pay various deductibles for claims asserted under the policies.  The amounts of the applicable deductibles are set forth in <u>Exhibit A</u>.  Generally speaking, under the Debtors' Liability and Property Insurance Programs if a claim is filed against a policy that has a deductible, the provider will pay the claim less the amount of the deductible, rather than pay the full amount of the claim and charge the Debtors for the amount of the deductible.  The Debtors believe that, as of the Commencement Date, there are no accrued and outstanding amounts with respect to any deductibles under the Liability and Property Insurance Program.  At some time subsequent to the Commencement Date, deductibles for claims relating to the period prior to the Commencement Date may arise.  Accordingly, the

---

[4] The financed policies include the following policies: umbrella liability, excess liability, excess earthquake liability, various flood liability policies, ocean cargo liability, excess property liability, employment practices liability, and D&O coverage.

NY2:\1886688\08\14FS008!.DOC\76023.0003

Debtors are seeking the Court's authorization to pay such undisputed claims, in their discretion, as they come due.

## Insurance Brokers

28.     The Debtors employ an insurance broker, Frank Crystal & Co., Inc. (the "Broker") to assist them with the procurement and negotiation of their Insurance Programs and the processing of claims, and, in certain circumstances, to remit payment to the Insurance Carriers on behalf of the Debtors. The Broker is paid a commission by the Insurance Carriers, not by the Debtors. Accordingly, there are no amounts accrued and outstanding with respect to payments to the Broker.

## Debtors Request Authority to (i) Continue the Insurance Programs and (ii) Pay All Obligations in Respect Thereof

29.     Pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Bankruptcy Rules 4001, and 6004, the Debtors seek authority to continue, in their sole discretion, the Insurance Programs on an uninterrupted and same basis, and in accordance with the same practices and procedures as were in effect prior to the Commencement Date. Furthermore, the Debtors seek authority to pay, in their sole discretion, all undisputed premiums, deductibles, administrative fees, and other obligations arising under the Insurance Programs, as applicable, that were or are due and payable, or related to the period before or after, the Commencement Date.

30.     Pursuant to section 503(b)(1) of the Bankruptcy Code, a debtor may incur, and the court, after notice and a hearing, shall allow as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1). In addition, pursuant to section 363(b) of the Bankruptcy Code, a debtor may, in the exercise of its sound business judgment and after notice and a hearing, use property of the estate

NY2:\1886688\08\14FS008!.DOC\76023.0003

outside of the ordinary course of business.  Id. § 363(b).  The Debtors submit that the use of estate funds for payment of the Insurance Obligations is permitted by sections 503(b)(1) and 363(b) of the Bankruptcy Code as necessary costs of preserving the estate.

31.     Furthermore, to supplement these explicit powers, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Id. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."  In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing Ionosphere Clubs, 98 B.R. at 177).

32.     In a long line of well-established cases, federal courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  See, e.g., Miltenberger v. Logansport C. & S.W. Ry. Co., 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); Dudley v. Mealey, 147 F.2d 268 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

33.     The "doctrine of necessity" functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of

critical prepetition claims not explicitly authorized by the Bankruptcy Code.  See In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize the payment of pre-petition claims if such payment was essential to the continued operation of the debtor); In re Boston & Me. Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation).  The doctrine is frequently invoked early in a chapter 11 case, particularly in connection with the payment of prepetition claims.  The court in In re Structurelite Plastics Corp. indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of pre-petition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'"  86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (quoting Chateaugay Corp., 80 B.R. at 287).  The court stated that "a per se rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code."  Id. at 932.  The rationale for the doctrine of necessity rule is consistent with the paramount goal of chapter 11 – "facilitating the continued operation and rehabilitation of the debtor."  Ionosphere Clubs, 98 B.R. at 176.  Accordingly, pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

34.     Moreover, numerous courts in this jurisdiction have granted the relief requested herein in other chapter 11 cases.[5]  See, e.g., In re Fortunoff Fine Jewelry and Silverware, LLC, Case No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 29, 2008) [Docket No. 312],

---

[5] Because of the voluminous nature of the unreported orders cited herein, they are not annexed to this Motion.  Copies of these orders are available upon request of Debtors' counsel, including at the hearing to consider the Motion.

(Bankr. S.D.N.Y. Feb. 5, 2008) [Docket No. 42]; In re PRC, LLC, Case No. 08-10239 (MG) (Bankr. S.D.N.Y. Jan. 25, 2008) [Docket No. 37]; Silicon Graphics, Inc., et. al., Case No. 06-10977 (BRL) (Bankr. S.D.N.Y May 31, 2006) [Docket No. 144], (Bankr. S.D.N.Y May 10, 2006) [Docket No. 49]; In re Atkins Nutritionals, Inc., et al., Case No. 05-15913 (ALG) (Bankr. S.D.N.Y. Aug. 1, 2005) [Docket No. 32].

### Continuing the Insurance Programs and Paying All Obligations in Respect Thereof Is Necessary to Preserve the Value of the Debtors' Estates

35.     The nature of the Debtors' businesses and the extent of their operations make it essential for the Debtors to maintain their Insurance Programs on an uninterrupted basis. The nonpayment of any premiums, deductibles, or related fees under one of the Insurance Programs could result in one or more of the Insurance Carriers declining to renew their insurance policies or refusing to enter into new insurance agreements with the Debtors in the future. If the Insurance Programs lapse without renewal, the Debtors could be exposed to substantial liability for personal and/or property damages to the detriment of all parties in interest. Furthermore, the Debtors would then be required to obtain replacement policies on an expedited basis at a significant cost to the estates.

36.     Moreover, the Insurance Programs are vital to all aspects of the Debtors' operations. Applicable state law mandates that the Debtors maintain workers' compensation coverage for their employees. Failure by the Debtors to pay the premiums associated with their Workers' Compensation Programs would jeopardize their coverage and expose the Debtors to substantial liability in fines by various state workers' compensation boards.

37.     In addition, the risk that eligible workers' compensation claimants will not receive timely payment for prepetition employment-related injuries could have a devastating effect on the financial well-being and morale of the Debtors' current employees. Departures by

15

employees at this critical time may result in a severe disruption of the Debtors' businesses with a substantially adverse impact on the Debtors, the value of their assets and their businesses. The retention of the Debtors' qualified and dedicated senior management also is linked to the continued effectiveness of the directors' and officers' liability insurance policies.

38.     Finally, pursuant to the terms of the guidelines established by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), the Debtors are obligated to remain current with respect to their primary Insurance Programs. Therefore, the continuation of the Insurance Programs, on an uninterrupted basis, and the payment of all undisputed prepetition and postpetition Insurance Obligations arising under the Insurance Programs are essential to preserve the Debtors' businesses and preserve the value of the Debtors' estates for all creditors. Accordingly, the Debtors are seeking the Court's authorization to continue the Insurance Program and related policies as such practices, programs, and policies were in effect as of the date of the commencement of the Debtors' chapter 11 cases and authorize, but not direct, the Debtors to pay any undisputed prepetition claims arising under the Insurance Program as they come due.

39.     To the extent any Insurance Program or related agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors do not, at this time, seek to assume any such contract. Accordingly, if the Court authorizes the payments described above, such payments should not be deemed to constitute a postpetition assumption or adoption of the programs, policies, or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code. The Debtors are in the process of reviewing these matters and reserve all of their rights under the Bankruptcy Code with respect thereto.

NY2:\1886688\08\14FS008!.DOC\76023.0003

Moreover, authorization to pay all amounts on account of the Insurance Obligations shall not affect the Debtors' right to contest the amount or validity of these obligations.

### Interim Relief Should Be Granted

40.     The Debtors seek authority to continue the Insurance Programs and to pay those obligations that are or become due and payable prior to the Final Hearing.  These obligations include payments in respect of the (i) Chubb Program, (ii) Distribution Center Program, (iii) Ohio Stores Program, (iv) Washington Program, and (v) the AICCO payment for a director and officer liability policy.  In addition, the Debtors request that the automatic stay be waived for workers' compensation claims on an interim basis.

41.     The Debtors' submit the facts cited herein illustrate that the interim relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.  Based on the foregoing, Bankruptcy Rule 6003 has been satisfied.

42.     Furthermore, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the stay of the order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).[6]

### Applicable Banks Should Be Authorized to Honor and Pay Checks Issued and Make Other Transfers to Pay Insurance Obligations

43.     As a result of the commencement of the Debtors' chapter 11 cases, and in the absence of an order of the Court providing otherwise, the Banks may dishonor or reject Debtors' checks and electronic fund transfers with respect to the Insurance Obligations. Therefore, the Debtors request that the Court authorize the Banks listed on Exhibit B annexed hereto to, and any other bank the Debtors are authorized to do business with under the Cash

---

[6] Bankruptcy Rule 6004(h) is an interim bankruptcy rule adopted pursuant to standing General Order M-308 of the United States Bankruptcy Court for the Southern District of New York, signed on October 11, 2005 by Chief Judge Stuart M. Bernstein.

Management Motion[7] to process, honor, and pay all prepetition and postpetition checks issued or to be issued, and electronic fund transfers requested or to be requested, by the Debtors with respect to their Insurance Obligations. The Debtors also seek authority to issue new postpetition checks or effect new electronic fund transfers with respect to the Insurance Obligations to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected.

44.     The Debtors represent that each of these checks or transfers is or will be drawn on accounts authorized by the Court under the Cash Management Motion, and can be readily identified as relating directly to payments under the Insurance Programs. Accordingly, the Debtors believe that prepetition checks and transfers other than those relating to the Insurance Programs will not be honored inadvertently.

## Memorandum of Law

45.     Pursuant to Local Bankruptcy Rule for the Southern District of New York 9013-1(b), because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

## Notice

46.     No trustee, examiner, or creditors' committee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion on (i) the Office of the United

---

[7] Contemporaneously herewith the Debtors filed the Debtors' Motion Pursuant to Sections 105(A), 345(B), 363(B), 363(C) and 364(A) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 for (A) Authorization to (i) Continue Using Existing Centralized Cash Management System, (ii) Honor Certain Prepetition Obligations Related to the Use of the Cash Management System, and (iii) Maintain Existing Bank Accounts and Business Forms; and (B) An Extension of Time to Comply With Section 345(B) of the Bankruptcy Code (the "Cash Management Motion").

States Trustee for the Southern District of New York, (ii) counsel to the prepetition lenders, and (iii) those creditors holding the thirty largest unsecured claims against the Debtors' estates (on a consolidated basis). The Debtors submit that no other or further notice need be provided.

47. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: July 9, 2008
New York, New York

/s/ Lori R. Fife
Harvev R. Miller
Lori R. Fife
Shai Y. Waisman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:   (212) 310-8000
Facsimile:    (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

NY2:\1886688\08\14FS008!.DOC\76023.0003

# EXHIBIT A

## (Insurance Programs)

**Insurance Programs**

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium |
|---|---|---|---|---|
| Property (Package) | Federal Insurance Co. | 35870309 | 9/1/07 – 9/1/08 | $703,164 |
| General Liability (Package) | Federal Insurance Co. | 35870309 | 9/1/07 – 9/1/08 | $459,000 |
| Automobile Liability | Federal Insurance Co. | 73542723 | 9/1/07 – 9/1/08 | $52,493 |
| Workers' Compensation | Chubb Indemnity Insurance Co. | 71736929 | 11/30/07 – 11/29/08 | $1,450,020 |
| Workers' Compensation | Ohio Bureau of Workers' Compensation | 1484600 | 7/1/08-7/1/09 | $450,000 |
| Workers' Compensation | Ohio Bureau of Workers' Compensation | 1363904 | 7/1/08-7/1/09 | $130,000 |
| Workers' Compensation | Washington Department of Labor and Industry | 602556732 | 1/1/07-12/31/08 | $60,000 |
| Workers' Compensation | Brick Street Mutual Insurance Company | WC10024488-02 | 3/8/08-3/8/09 | $40,000 |
| Foreign Package | Great Northern Insurance Co. | 35847472 | 9/1/07 – 9/1/08 | $7,500 |
| Umbrella Liability (Lead) | Great American | TUU 777 9518 | 9/1/07 – 9/1/08 | $140,000 |
| Excess Liability | Federal Insurance Co. | 93639209 | 9/1/07 – 9/1/08 | $55,550 |
| Excess Liability | St. Paul Fire & Marine | QI 09002769 | 9/1/07 – 9/1/08 | $38,250 |
| Excess Liability | Zurich American Insurance | AEC 9139313-01 | 9/1/07 – 9/1/08 | $25,250 |
| Differences in Condition | Axis Surplus Insurance | AXS100448 | 9/1/07-9/1/08 | $19,000 |
| National Flood | Hartford Insurance Company of the Midwest | 87024663562007 | 8/19/07-8/19/08 | $2,181 |
| National Flood | Hartford Insurance Company of the Midwest | 87028610082007 | 10/5/07-10/5/08 | $3,278 |

NY2:\1886688\08\14FS008!.DOC\76023.0003

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium |
|---|---|---|---|---|
| National Flood | Hartford Insurance Company of the Midwest | 87028610042007 | 10/5/07-10/5/08 | $2,092 |
| National Flood | Hartford Insurance Company of the Midwest | 87028610162007 | 8/19/07-8/19/08 | $2,294 |
| National Flood | Hartford Insurance Company of the Midwest | 87028609942007 | 10/5/07-10/5/08 | $838 |
| National Flood | Hartford Insurance Company of the Midwest | 87028609922007 | 10/5/07-10/5/08 | $838 |
| National Flood | Hartford Insurance Company of the Midwest | 87028609672007 | 10/5/07-10/5/08 | $798 |
| National Flood | Hartford Insurance Company of the Midwest | 87028609452007 | 10/5/07-10/5/08 | $757 |
| National Flood | Hartford Insurance Company of the Midwest | 87028610242007 | 9/27/07-9/27/08 | $2,181 |
| National Flood | Hartford Insurance Company of the Midwest | 87028609862007 | 10/15/07-10/15/08 | $838 |
| National Flood | Hartford Insurance Company of the Midwest | 87023762092007 | 5/6/08-5/6/09 | $1,386 |
| National Flood | Hartford Insurance Company of the Midwest | 87023762192007 | 5/6/08-5/6/09 | $1,860 |
| National Flood | Hartford Insurance Company of the Midwest | 87028609992006 | 9/30/07-9/30/08 | $838 |
| National Flood | Hartford Insurance Company of the Midwest | 87029352852007 | 1/25/08-1/25/09 | $4,058 |
| National Flood | Hartford Insurance Company of the Midwest | 87029352852007 | 1/25/08-1/25/09 | $838 |

NY2:\1886688\08\14FS08!.DOC\76023.0003

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium |
|---|---|---|---|---|
| National Flood | Hartford Insurance Company of the Midwest | 99023014392007 | 3/4/08-3/4/09 | $4,506 |
| National Flood | Hartford Insurance Company of the Midwest | 87029352872007 | 1/25/08-1/25/09 | $4,506 |
| National Flood | Hartford Insurance Company of the Midwest | 4500121223438 | 3/5/08-3/6/08 | $1,775 |
| National Flood | Hartford Insurance Company of the Midwest | 87023051872007 | 3/5/08-3/5/09 | $6,025 |
| National Flood | Hartford Insurance Company of the Midwest | 87028822012007 | 9/29/07-9/29/08 | $3,367 |
| National Flood | Hartford Insurance Company of the Midwest | 87028610212007 | 10/5/07-10/5/08 | $2,984 |
| National Flood | Hartford Insurance Company of the Midwest | 327700715559 | 6/12/07-6/12/08 | $4,058 |
| Ocean Cargo | American Home (AIG) | 88769 | 9/1/07-Until Cancelled | $149,153 |
| Excess Property | Commonwealth Insurance Company | US7112 | 9/1/07-9/1/08 | $35,000 |
| Excess Property | Landmark American Insurance | LHD354534 | 9/1/07-9/1/08 | $32,500 |
| Excess Property | Homeland Insurance Company of NY (One Beacon) | YS0496 | 9/1/07-9/1/08 | $168,000 |
| Excess Property | Great American Insurance Company of NY | CPP282777400 | 9/1/07-9/1/08 | $37,000 |
| Excess Property | Commonwealth Insurance Company | US7111 | 9/1/07-9/1/08 | $36,491 |
| Flood-Excess Property | Landmark American Insurance | LHD354603 | 9/1/07-9/1/08 | $25,000 |

4

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium |
|---|---|---|---|---|
| Flood-Excess Property | Landmark American Insurance | LHD354603 | 9/1/07-9/1/08 | $25,000 |
| Flood-Excess Property | Landmark American Insurance | LHD354604 | 9/1/07-9/1/08 | $49,215 |
| Employment Practice Liability | Illinois National Union | 1860915 | 9/16/07 – 9/1/08 | $149,544 |
| Special Coverage | Vigilant Insurance Co. | 68035146 | 9/5/07 – 9/5/08 | $5,500 |
| Crime Liability | Vigilant Insurance Co. | 82090232 | 9/10/07 – 9/1/08 | $12,000 |
| D&O Side A Coverage | Illinois National | 3014598 | 11/27/07 -5/25/09 | $168,983 |
| D&O | Great American Insurance Co. | DML5592747 | 5/25/08-5/25/09 | $53,000 |
| D&O excess layer | Houston Casualty | 14MGO6A8385 | 5/25/08-5/25/09 | $34,450 |
| D&O excess layer | Ace American | DOX-G23647102001 | 5/25/08-5/25/09 | $31,000 |

NY2:\1886688\08\14FS008!.DOC\76023.0003

# EXHIBIT B

## (Bank Accounts)

| BANK | ACCOUNT NUMBER |
|---|---|
| Cathay Bank<br>800 W. 6th Street<br>Los Angeles, CA 90017<br>Attn: Louise Yeh<br>Fax: (213) 972-4242 | 23506409 |

NY2:\1886688\08\14FS008!.DOC\76023.0003

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                      :

**In re**                              :        **Chapter 11 Case No.**
                                        :

**STEVE & BARRY'S**                :

**MANHATTAN LLC, <u>et</u> <u>al.</u>,**     :       ___ - _____ (  )
                                        :

            **Debtors.**              :        **(Jointly Administered)**
                                        :
-------------------------------------------------------------x

**INTERIM ORDER PURSUANT TO SECTIONS 105(a), 362(d),
363(b), AND 503(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULES 4001, 6003 AND 6004 FOR ORDER (A) (i) AUTHORIZING
DEBTORS TO CONTINUE THEIR WORKERS' COMPENSATION
PROGRAMS AND THEIR LIABILITY, PRODUCT, PROPERTY, AND
OTHER INSURANCE PROGRAMS, (ii) AUTHORIZING DEBTORS
TO PAY ALL PREPETITION OBLIGATIONS IN RESPECT THEREOF,
(B) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND
PROCESS CHECKS AND TRANSFERS RELATED TO SUCH
<u>OBLIGATIONS, AND (C)  SCHEDULING A FINAL HEARING</u>**

Upon the motion, dated July 9, 2008 (the "<u>Motion</u>"), of Steve & Barry's

Manhattan LLC and its debtor affiliates, as debtors and debtors in possession

(collectively, the "<u>Debtors</u>"), for an order, pursuant to sections 105(a), 362(d), 363(b),

and 503(b) of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>")

and Rules 4001, 6003 and 6004 of the Federal Rules of Bankruptcy Procedure, for

authority to (a) (i) continue their workers' compensation programs (the "<u>Workers'</u>

<u>Compensation Programs</u>") and their liability, product, property, and other insurance

programs, including, without limitation, all of the policies set forth on <u>Exhibit A</u> annexed

hereto (together with the Workers' Compensation Programs, the "<u>Insurance Programs</u>"),

(ii) pay all prepetition obligations in respect thereof, on an uninterrupted basis, consistent

with their practices in effect prior to the commencement of the Debtors' chapter 11 cases,

including the payment of all premiums, claims, deductibles, administrative expenses, and all other charges incurred, whether relating to the period prior to or after the commencement of these chapter 11 cases (collectively, "Insurance Obligations"), (iii) modify the automatic stay solely and for the limited purpose of permitting employees with claims under the Workers' Compensation Program to proceed with their claims in accordance with such program in the appropriate judicial or administrative forum; and (B) authorization for certain banks and financial institutions (the "Banks"), including, but not limited to, the Bank listed on Exhibit B annexed hereto, to honor and process checks and transfers related to such obligations, and (C) schedule a hearing to consider the relief requested on a permanent basis (the "Final Hearing"), all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the United States Trustee for the Southern District of New York (the "U.S. Trustee"), (ii) counsel to the agents for the Debtors' prepetition lenders, and (iii) those creditors holding the thirty largest unsecured claims against the Debtors (on a consolidated basis), and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "Interim Hearing"); and the appearances of all interested parties having been noted in the record of the Hearing; and upon the

Affidavit of Gary Sugarman Pursuant to Rule 1007-2 for the Local Bankruptcy Rules of the Southern District of New York in Support of First-Day Motions and Applications, sworn to on July 9, 2008, the record of the Interim Hearing, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on an interim basis; and it is further

ORDERED that the Debtors are authorized and empowered to maintain their Insurance Programs without interruption, on the same basis, and in accordance with the same practices and procedures that were in effect prior to the commencement of the Debtors' chapter 11 cases; and it is further

ORDERED that the Debtors are authorized, but not required, to pay, in their sole discretion, all Insurance Obligations that are or become payable prior to the Final Hearing, including, without limitation, all premiums, claims, deductibles, excess, retrospective adjustments, administrative and brokers' fees, and all other obligations arising under the Insurance Programs, including those Insurance Obligations that (i) were due and payable or related to the period before the commencement of these chapter 11 cases, without further Order of the Court, and (ii) are or become due and payable or related to the period after the commencement of these chapter 11 cases; and it is further

ORDERED that, pursuant to section 362(d) of the Bankruptcy Code, to the extent any of the Debtors' employees hold claims under the Debtors' Workers'

NY2:\1886688\08\14FS008!.DOC\76023.0003

Compensation Programs, these employees are authorized, at the Debtors' discretion, to proceed with their workers' compensation claims through and including the collection of any judgment in the appropriate judicial or administrative forum under the Workers' Compensation Programs; provided, that the prosecution of such claims is in accordance with the Workers' Compensation Program and the recoveries are limited to the proceeds available under the Workers' Compensation Program; and it is further

ORDERED that the Banks, including, but not limited to those on the list annexed hereto as Exhibit B, are authorized to honor, process, and pay, to the extent of funds on deposit, any and all prepetition checks or electronic fund transfer requests issued by the Debtors in respect of any Insurance Obligation, whether pre or postpetition; and it is further

ORDERED that any Bank, including, but not limited to those on the list annexed hereto as Exhibit B, may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Commencement Date should be honored pursuant to this Order, and such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein; and it is further

ORDERED that nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with or relating to the Debtors' Insurance Programs; and it is further

ORDERED that, to the extent that any Insurance Program or any related contract or agreement is deemed an executory contract within the meaning of section 365

4

of the Bankruptcy Code, neither this Order nor any payments made in accordance with this Order shall constitute the postpetition assumption of any such Insurance Program, contract, or related agreement pursuant to section 365 of the Bankruptcy Code; and it is further

ORDERED that Bankruptcy Rule 6003(b) has been satisfied; and it is further

ORDERED that notwithstanding any applicability of Rules 6004(h),[1] 7062, or 9014 of the Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rules 4001(d) and 6004(a) are waived; and it is further

ORDERED that the Final Hearing to consider entry of an order granting the relief requested in the Motion on a permanent basis shall be held on _____, 2008 at __:00 a.m. (Eastern Time); and any objections to entry of such order shall be in writing, filed with the Court in accordance with General Order M-242, and served upon (i) counsel to the Debtors; (ii) the U.S. Trustee; (iii) counsel to the agents for the Debtors' prepetition lenders, and (iv) counsel for any statutory committee appointed in these cases, in each case so as to be received no later than 4:00 p.m. (Eastern Time) on _____, 2008; and it is further

---

[1] Bankruptcy Rule 6004(h) is an interim bankruptcy rule adopted pursuant to standing General Order M-308 of the United States Bankruptcy Court for the Southern District of New York, signed on October 11, 2005 by Chief Judge Stuart M. Bernstein.

ORDERED that the Debtors shall serve this Order within three business days of its entry on (i) the U.S. Trustee, (ii) counsel to the agents for the Debtors' prepetition lenders, and (iii) creditors holding the thirty largest unsecured claims against the Debtors (on a consolidated basis); and it is further

ORDERED that the requirement set forth in Local Bankruptcy Rule 9013-1(b) for the filing of a separate memorandum of law in support of the Motion is waived.

Dated: July ___, 2008
    New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

NY2:\1886688\08\14FS008!.DOC\76023.0003

# **EXHIBIT A**

## **(Insurance Programs)**

## Insurance Programs

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium |
|---|---|---|---|---|
| Property (Package) | Federal Insurance Co. | 35870309 | 9/1/07 – 9/1/08 | $703,164 |
| General Liability (Package) | Federal Insurance Co. | 35870309 | 9/1/07 – 9/1/08 | $459,000 |
| Automobile Liability | Federal Insurance Co. | 73542723 | 9/1/07 – 9/1/08 | $52,493 |
| Workers' Compensation | Chubb Indemnity Insurance Co. | 71736929 | 11/30/07 – 11/29/08 | $1,450,020 |
| Workers' Compensation | Ohio Bureau of Workers' Compensation | 1484600 | 7/1/08-7/1/09 | $450,000 |
| Workers' Compensation | Ohio Bureau of Workers' Compensation | 1363904 | 7/1/08-7/1/09 | $130,000 |
| Workers' Compensation | Washington Department of Labor and Industry | 602556732 | 1/1/07-12/31/08 | $60,000 |
| Workers' Compensation | Brick Street Mutual Insurance Company | WC10024488-02 | 3/8/08-3/8/09 | $40,000 |
| Foreign Package | Great Northern Insurance Co. | 35847472 | 9/1/07 – 9/1/08 | $7,500 |
| Umbrella Liability (Lead) | Great American | TUU 777 9518 | 9/1/07 – 9/1/08 | $140,000 |
| Excess Liability | Federal Insurance Co. | 93639209 | 9/1/07 – 9/1/08 | $55,550 |
| Excess Liability | St. Paul Fire & Marine | QI 09002769 | 9/1/07 – 9/1/08 | $38,250 |
| Excess Liability | Zurich American Insurance | AEC 9139313-01 | 9/1/07 – 9/1/08 | $25,250 |
| Differences in Condition | Axis Surplus Insurance | AXS100448 | 9/1/07-9/1/08 | $19,000 |
| National Flood | Hartford Insurance Company of the Midwest | 87024663562007 | 8/19/07-8/19/08 | $2,181 |
| National Flood | Hartford Insurance Company of the Midwest | 87028610082007 | 10/5/07-10/5/08 | $3,278 |

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium |
|---|---|---|---|---|
| National Flood | Hartford Insurance Company of the Midwest | 87028610042007 | 10/5/07-10/5/08 | $2,092 |
| National Flood | Hartford Insurance Company of the Midwest | 87028610162007 | 8/19/07-8/19/08 | $2,294 |
| National Flood | Hartford Insurance Company of the Midwest | 87028609942007 | 10/5/07-10/5/08 | $838 |
| National Flood | Hartford Insurance Company of the Midwest | 87028609922007 | 10/5/07-10/5/08 | $838 |
| National Flood | Hartford Insurance Company of the Midwest | 87028609672007 | 10/5/07-10/5/08 | $798 |
| National Flood | Hartford Insurance Company of the Midwest | 87028609452007 | 10/5/07-10/5/08 | $757 |
| National Flood | Hartford Insurance Company of the Midwest | 87028610242007 | 9/27/07-9/27/08 | $2,181 |
| National Flood | Hartford Insurance Company of the Midwest | 87028609862007 | 10/15/07-10/15/08 | $838 |
| National Flood | Hartford Insurance Company of the Midwest | 87023762092007 | 5/6/08-5/6/09 | $1,386 |
| National Flood | Hartford Insurance Company of the Midwest | 87023762192007 | 5/6/08-5/6/09 | $1,860 |
| National Flood | Hartford Insurance Company of the Midwest | 87028609992006 | 9/30/07-9/30/08 | $838 |
| National Flood | Hartford Insurance Company of the Midwest | 87029352852007 | 1/25/08-1/25/09 | $4,058 |
| National Flood | Hartford Insurance Company of the Midwest | 87029352852007 | 1/25/08-1/25/09 | $838 |

2

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium |
|---|---|---|---|---|
| National Flood | Hartford Insurance Company of the Midwest | 99023014392007 | 3/4/08-3/4/09 | $4,506 |
| National Flood | Hartford Insurance Company of the Midwest | 87029352872007 | 1/25/08-1/25/09 | $4,506 |
| National Flood | Hartford Insurance Company of the Midwest | 4500121223438 | 3/5/08-3/6/08 | $1,775 |
| National Flood | Hartford Insurance Company of the Midwest | 87023051872007 | 3/5/08-3/5/09 | $6,025 |
| National Flood | Hartford Insurance Company of the Midwest | 87028822012007 | 9/29/07-9/29/08 | $3,367 |
| National Flood | Hartford Insurance Company of the Midwest | 87028610212007 | 10/5/07-10/5/08 | $2,984 |
| National Flood | Hartford Insurance Company of the Midwest | 327700715559 | 6/12/07-6/12/08 | $4,058 |
| Ocean Cargo | American Home (AIG) | 88769 | 9/1/07-Until Cancelled | $149,153 |
| Excess Property | Commonwealth Insurance Company | US7112 | 9/1/07-9/1/08 | $35,000 |
| Excess Property | Landmark American Insurance | LHD354534 | 9/1/07-9/1/08 | $32,500 |
| Excess Property | Homeland Insurance Company of NY (One Beacon) | YS0496 | 9/1/07-9/1/08 | $168,000 |
| Excess Property | Great American Insurance Company of NY | CPP282777400 | 9/1/07-9/1/08 | $37,000 |
| Excess Property | Commonwealth Insurance Company | US7111 | 9/1/07-9/1/08 | $36,491 |
| Flood-Excess Property | Landmark American Insurance | LHD354603 | 9/1/07-9/1/08 | $25,000 |

NY2:\1886688\08\14FS008!.DOC\76023.0003

| Type of Coverage | Insurer | Policy Number(s) | Policy Term | Annual Premium |
|---|---|---|---|---|
| Flood-Excess Property | Landmark American Insurance | LHD354603 | 9/1/07-9/1/08 | $25,000 |
| Flood-Excess Property | Landmark American Insurance | LHD354604 | 9/1/07-9/1/08 | $49,215 |
| Employment Practice Liability | Illinois National Union | 1860915 | 9/16/07 – 9/1/08 | $149,544 |
| Special Coverage | Vigilant Insurance Co. | 68035146 | 9/5/07 – 9/5/08 | $5,500 |
| Crime Liability | Vigilant Insurance Co. | 82090232 | 9/10/07 – 9/1/08 | $12,000 |
| D&O Side A Coverage | Illinois National | 3014598 | 11/27/07 -5/25/09 | $168,983 |
| D&O | Great American Insurance Co. | DML5592747 | 5/25/08-5/25/09 | $53,000 |
| D&O excess layer | Houston Casualty | 14MGO6A8385 | 5/25/08-5/25/09 | $34,450 |
| D&O excess layer | Ace American | DOX-G23647102001 | 5/25/08-5/25/09 | $31,000 |

NY2:\1886688\08\14FS008!.DOC\76023.0003

# EXHIBIT B

## (Bank Accounts)

| BANK | ACCOUNT NUMBER |
|---|---|
| Cathay Bank<br>800 W. 6th Street<br>Los Angeles, CA 90017<br>Attn: Louise Yeh<br>Fax: (213) 972-4242 | 23506409 |