WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife
Shai Y. Waisman

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
:
**In re**    :    **Chapter 11 Case No.**
:
**STEVE & BARRY'S**    :
**MANHATTAN LLC, et al.,**    :    ___ - _____ (  )
:
Debtors.    :    **(Jointly Administered)**
:
---------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO SECTION 345(b) OF THE BANKRUPTCY CODE FOR AUTHORITY TO IMPLEMENT INVESTMENT GUIDELINES**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Steve & Barry's Manhattan LLC and its debtor affiliates, as debtors and debtors in possession (collectively, "Steve & Barry's" or the "Debtors"), respectfully represent:

**Background**

1.     On the date hereof (the "Commencement Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as Debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

### Steve & Barry's Business

3.      Steve & Barry's is a specialty retailer of apparel and accessories that provides consumers with quality low-priced apparel. Founded in 1985, Steve & Barry's has grown exponentially from an original store in Philadelphia, Pennsylvania to 276 stores located throughout the United States. Many Steve & Barry's retail locations serve economically challenged areas that other retailers have abandoned because of household income levels, population trends or crime rates. During the course of its expansion, Steve & Barry's has diversified its business beyond its original line of university apparel, and its products currently fall broadly into three categories: (i) licensed university apparel and lifestyle brands, (ii) private-label casual clothing and accessories for men, women and children, and (iii) exclusive celebrity branded lines of apparel and accessories.

4.      Steve & Barry's offers quality apparel and accessories at dramatically lower prices than typically found for similar goods from other specialty retailers, and in a more upscale, customer-friendly store design. Steve & Barry's achieves this by operating stores with low occupancy costs, and by relying mostly upon word of mouth and news stories, rather than paid print or other advertising, resulting in significant cost savings. Steve & Barry's keeps its costs low by maintaining overseas offices and purchasing most merchandise directly from their sources without intermediaries. The savings realized through each strategy are then passed on to Steve & Barry's customers in the form of low prices. Almost all items in Steve & Barry's retail locations are priced at $9.98 or less.

5. As of May 31, 2008, Steve & Barry's (including nondebtor affiliates) consolidated assets totaled approximately $693.5 million and recorded consolidated liabilities totaled approximately $638 million. Consolidated revenues for the twelve months ended May 31, 2008, were approximately $656.6 million. Steve & Barry's currently employs, either directly or through its non-debtor affiliates, approximately 8,600 domestic employees and 1,100 international employees. Approximately 7,300 of the domestic employees are part-time hourly employees and 1,300 are full-time salaried employees.

### Jurisdiction and Venue

6. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Investment Policy

7. As described in the Debtors' Cash Management Motion,[1] under the Debtors' prepetition cash management system, the Debtors, on occasion, had excess cash in their master operating account at Cathay Bank (the "Master Operating Account") in an average amount of approximately $100,000. The Debtors' practice was to invest such excess cash from time to time in certain money market accounts at Cathay Bank.

8. As described in the Cash Management Motion, the Debtors seek to modify their cash management system postpetition to enable use of their prepetition secured lenders' cash collateral by, on a daily basis (or as often as practicable), sweeping all available funds from

---

[1] The "Cash Management Motion" refers to the Debtors' Motion Pursuant to Sections 105(a), 345(b), 363(c) and 364(a) of the Bankruptcy Code for (A) Authorization to (i) Continue Using Existing Centralized Cash Management System, as Modified, (ii) Honor Certain Prepetition Obligations Related to the Use of the Cash Management System, and (iii) Maintain Existing Bank Accounts and Business Forms; and (B) An Extension of Time to Comply with Section 345(b) of the Bankruptcy Code, filed contemporaneously herewith.

their deposit accounts and lockboxes into the Master Operating Account. Consequently, the Debtors anticipate that postpetition cash in excess of $100,000 may accumulate in the Master Operating Account. As such, by this motion (the "Motion"), the Debtors seek (i) authority to establish certain investment guidelines pursuant to which the Debtors may invest any excess cash held in the Master Operating Account (the "Investment Guidelines"), a copy of which is attached hereto as Exhibit A, and (ii) to the extent necessary, a waiver of section 345(b) of the Bankruptcy Code.

9. The Investment Guidelines permit investments only in (i) high quality, United States dollar-denominated money market obligations, such as money market obligations that received the highest short-term rating from at least two Nationally Recognized Statistical Rating Organizations ("NRSROs"); (ii) high quality, United States dollar-denominated fixed/variable rate longer-term obligations, such as longer-term obligations that received a long-term debt rating of better than single "A" by at least two NRSROs; and (iii) securities issued or directly and fully guaranteed or insured by United States governmental agencies. The investments permitted by the Investment Guidelines are those that will provide the greatest amount of return for the Debtors while taking into account the safety of the investments.

10. The Investment Guidelines also limit investments in money market funds to those funds that have at least 95% of their assets within the types of investments indicated above. Furthermore, the Investment Guidelines require all investments (other than investments in tax exempt obligations and money market mutual funds) to have maturities of not more than six months, and in the case of repurchase obligations seven days, from the date of acquisition. These maturity limitations further protect the Debtors' investments by insulating them from certain market fluctuations.

**Cause Exists to Approve Investment Guidelines**

11. Section 345 of the Bankruptcy Code governs a debtor's deposit and investment of cash during a chapter 11 case and authorizes deposits or investments of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a) (2000). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) requires the estate to obtain from the entity with which the money is deposited or invested a bond in favor of the United States and secured by the undertaking of an adequate corporate surety, unless the Court for cause orders otherwise. In the alternative, the estate may require the entity to deposit governmental securities pursuant to 31 U.S.C. § 9303 (2000). Section 9303 provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may provide a governmental obligation. 31 U.S.C. § 9303 (2000).

12. Investment of cash in strict compliance with the requirements of section 345(b) of the Bankruptcy Code would, in large cases such as these, be inconsistent with section 345(a), which permits a debtor in possession to make such investments of money of the estate "as will yield the maximum reasonable net return on such money." 11 U.S.C. § 345(a) 2000). Thus, in 1994, to avoid "needlessly handcuff[ing] larger, more sophisticated debtors," Congress amended section 345(b) of the Bankruptcy Code to provide that its strict investment requirements may be waived or modified if the Court so orders "for cause." 140 Cong. Rec. H 10,767 (Oct. 4, 1994), 1994 WL 545773.

13. The Debtors believe that their investments in accordance with the Investment Guidelines provide the protection contemplated by section 345(b) of the Bankruptcy

Code, notwithstanding the absence of a "corporate surety" requirement.  The Investment Guidelines permit the Debtors to invest in those investments that will provide the greatest amount of return for the Debtors but also take into account the safety of the investments.  Further, the Investment Guidelines limit the Debtors from investing too large of a percentage of their total assets with any one issuer or in any one industry.

15. Strict compliance with the requirements of section 345 of the Bankruptcy Code would not be practical in these chapter 11 cases.  As to investments in securities of private entities, any corporate surety that might be obtained to guarantee the safety of an investment would likely not have significantly greater strength than the private and public entities in which the Debtors would invest under the Investment Guidelines.  Moreover, a bond secured by the undertaking of a corporate surety would be prohibitively expensive, if such bond is available at all, and could offset much of the financial gain derived from investing in private as well as federal or federally guaranteed securities.  Also, the yield on investments under the Investment Guidelines will be greater than if the Debtors were restricted to direct investment solely in government securities.

15. While the Investment Guidelines do not require a corporate surety for investments, they do limit the placement of investments with financially strong entities and require ample diversification.  The Debtors believe that as long as their investments are restricted in accordance with the Investment Guidelines, no corporate surety is required to afford protection to creditors.

16. Bankruptcy courts in this and other districts have granted relief similar to that requested herein.  See, e.g., Frontier Airlines Holdings, Inc., Case No. 08-11298 (RDD) (Bankr. S.D.N.Y. May 2, 2008) [Docket No. 43]; Lexington Precision Corp, Case No. 08-11153

(MG) (Bankr. S.D.N.Y. April 22, 2008) [Docket No. 26]; In re WorldCom, Inc., et al., Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. July 22, 2002) [Docket No. 61]; In re Adelphia Business Solutions, Inc., et al., Case No. 02-11389 (REG) (Bankr. S.D.N.Y. March 27, 2002) [Docket No. 29]; In re Global Crossing Ltd., et al., Case No. 02-40188 (REG) (Bankr. S.D.N.Y. Jan. 28, 2002) [Docket No. 52].

### Waiver of Memorandum of Law

17. Pursuant to Local Bankruptcy Rule for the Southern District of New York 9013-1(b), because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

### Notice

18. No trustee, examiner, or creditors' committee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion on (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel to the agents for the Debtors' prepetition lenders, and (iii) those creditors holding the thirty largest unsecured claims against the Debtors' estates (on a consolidated basis). The Debtors submit that no other or further notice need be provided.

19.  No previous request for the relief sought herein by the Debtors has been made to this or any other Court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: July 9, 2008
       New York, New York

/s/ Lori R. Fife
Harvey R. Miller
Lori R. Fife
Shai Y. Waisman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## **EXHIBIT A**

## **INVESTMENT GUIDELINES**

The Debtors generally may invest their cash and cash equivalents in only the following U.S. investments:

(i) securities issued or directly and fully guaranteed or insured by the United States Government or any agency or instrumentality thereof having maturities of not more than six months from the date of acquisition;

(ii) time deposits and certificates of deposit of any domestic commercial bank having capital and surplus in excess of $500,000,000 the holding company of which has a commercial paper rating meeting the requirements specified in clause (iv) below having maturities of not more than six months from the date of acquisition;

(iii) repurchase obligations with a term of not more than seven days for underlying securities of the types described in clauses (i) and (ii) entered into with any bank meeting the qualifications specified in clause (ii) above;

(iv) commercial paper rated at least A-1 or the equivalent thereof by Standard & Poor's ("S&P") or P-1 or the equivalent thereof by Moody's and in either case maturing within six months after the date of acquisition;

(v) tax exempt obligations rated at least A2 or the equivalent thereof by Moody's and A or the equivalent thereof by S&P;

(vi) money market mutual funds;

(vii) commercial paper (other than commercial paper referred to in the preceding clause (iv)) rated at least A-2 or the equivalent thereof by S&P or P-2 or the equivalent thereof by Moody's in an aggregate principal amount not in excess of 25% of the liquid assets of the Debtors and in either case maturing within six months after the date of acquisition; and

(viii) money market funds at least 95% of the assets of which constitute cash equivalents of the kinds described in (i) through (vii) above.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
: 
In re                                                           :       Chapter 11 Case No.
                                                                :
**STEVE & BARRY'S**                                             :
**MANHATTAN LLC, et al.,**                                      :       ___ - _____ (   )
                                                                :
        Debtors.                                                :       (Jointly Administered)
                                                                :
-----------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 345(b) OF THE BANKRUPTCY CODE**
**AUTHORIZING ESTABLISHMENT OF INVESTMENT GUIDELINES**

Upon the motion, dated July 9, 2008 (the "Motion"), of Steve & Barry's Manhattan LLC and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), pursuant to section 345(b) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), for authorization to establish certain investment guidelines (the "Investment Guidelines"), all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the United States Trustee for the Southern District of New York (the "U.S. Trustee"), (ii) counsel to the agents for the Debtors' prepetition lenders, and (iii) those creditors holding the thirty

NY2:\1888454\08\14H5208!.DOC\76023.0003

largest unsecured claims against the Debtors' estates (on a consolidated basis), and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "Hearing"); and the appearances of all interested parties having been noted in the record of the Hearing; and upon the Affidavit of Gary Sugarman Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, sworn to on July 9, 2008, the record of the Hearing, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized to implement the Investment Guidelines and invest and deposit their cash and cash equivalents in accordance therewith in addition to the investments permitted by section 345 of the Bankruptcy Code; and it is further

ORDERED that the Investment Guidelines may be amended by order of the Court from time to time upon motion by the Debtors; and it is further

ORDERED that the Debtors' compliance with the Investment Guidelines shall be deemed to constitute compliance with section 345 of the Bankruptcy Code, and the Debtors are relieved from the obligations under section 345(b) to obtain a bond from

any entity with which money is deposited or invested in accordance with the Investment Guidelines; and it is further

ORDERED that the requirement set forth in Local Bankruptcy Rule 9013-1(b) for the filing of a separate memorandum of law in support of the Motion is waived.

Dated: August ___, 2008
      New York, New York

---------------------------------------------
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

## INVESTMENT GUIDELINES

The Debtors generally may invest their cash and cash equivalents in only the following U.S. investments:

(i) securities issued or directly and fully guaranteed or insured by the United States Government or any agency or instrumentality thereof having maturities of not more than six months from the date of acquisition;

(ii) time deposits and certificates of deposit of any domestic commercial bank having capital and surplus in excess of $500,000,000 the holding company of which has a commercial paper rating meeting the requirements specified in clause (iv) below having maturities of not more than six months from the date of acquisition;

(iii) repurchase obligations with a term of not more than seven days for underlying securities of the types described in clauses (i) and (ii) entered into with any bank meeting the qualifications specified in clause (ii) above;

(iv) commercial paper rated at least A-1 or the equivalent thereof by Standard & Poor's ("S&P") or P-1 or the equivalent thereof by Moody's and in either case maturing within six months after the date of acquisition;

(v) tax exempt obligations rated at least A2 or the equivalent thereof by Moody's and A or the equivalent thereof by S&P;

(vi) money market mutual funds;

(vii) commercial paper (other than commercial paper referred to in the preceding clause (iv)) rated at least A-2 or the equivalent thereof by S&P or P-2 or the equivalent thereof by Moody's in an aggregate principal amount not in excess of 25% of the liquid assets of the Debtors and in either case maturing within six months after the date of acquisition; and

(viii) money market funds at least 95% of the assets of which constitute cash equivalents of the kinds described in (i) through (vii) above.