WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife
Shai Y. Waisman

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x
                                        :
**In re**                               :        **Chapter 11 Case No.**
                                        :
**STEVE & BARRY'S**                     :
**MANHATTAN LLC, et al.,**              :        ___ - _____ (   )
                                        :
        **Debtors.**                    :        **(Jointly Administered)**
                                        :
--------------------------------------------------------------x

### APPLICATION PURSUANT TO 28 U.S.C. § 156(c) AND LOCAL RULE 5075-1(a) FOR AUTHORIZATION TO (i) EMPLOY AND RETAIN EPIQ BANKRUPTCY SOLUTIONS, LLC AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS, AND (ii) APPOINT EPIQ BANKRUPTCY SOLUTIONS, LLC AS AGENT FOR THE BANKRUPTCY COURT

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

        Steve & Barry's Manhattan LLC and its debtor affiliates, as debtors and debtors

in possession (collectively, "Steve & Barry's" or the "Debtors"), respectfully represent:

### Background

        1.      On the date hereof (the "Commencement Date"), the Debtors each

commenced with this Court a voluntary case under chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code").  The Debtors are authorized to operate their businesses and

manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

**<u>Steve & Barry's Business</u>**

3.      Steve & Barry's is a specialty retailer of apparel and accessories that provides consumers with quality low-priced apparel. Founded in 1985, Steve & Barry's has grown exponentially from an original store in Philadelphia, Pennsylvania to 276 stores located throughout the United States. Many Steve & Barry's retail locations serve economically challenged areas that other retailers have abandoned because of household income levels, population trends or crime rates. During the course of its expansion, Steve & Barry's has diversified its business beyond its original line of university apparel, and its products currently fall broadly into three categories: (i) licensed university apparel and lifestyle brands, (ii) private-label casual clothing and accessories for men, women and children, and (iii) exclusive celebrity branded lines of apparel and accessories.

4.      Steve & Barry's offers quality apparel and accessories at dramatically lower prices than typically found for similar goods from other specialty retailers, and in a more upscale, customer-friendly store design. Steve & Barry's achieves this by operating stores with low occupancy costs, and by relying mostly upon word of mouth and news stories, rather than paid print or other advertising, resulting in significant cost savings. Steve & Barry's keeps its costs low by maintaining overseas offices and purchasing most merchandise directly from their sources without intermediaries. The savings realized through each strategy are then passed on to

Steve & Barry's customers in the form of low prices. Almost all items in Steve & Barry's retail locations are priced at $9.98 or less.

5. As of May 31, 2008, Steve & Barry's (including nondebtor affiliates) consolidated assets totaled approximately $693.5 million and recorded consolidated liabilities totaled approximately $638 million. Consolidated revenues for the twelve months ended May 31, 2008, were approximately $656.6 million. Steve & Barry's currently employs, either directly or through its non-debtor affiliates, approximately 8,600 domestic employees and 1,100 international employees. Approximately 7,300 of the domestic employees are part-time hourly employees and 1,300 are full-time salaried employees.

**Jurisdiction**

6. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

7. By this application (the "Application"), the Debtors seek authorization to employ Epiq Bankruptcy Solutions, LLC. ("Epiq") as the Debtors' claims and noticing agent (the "Agent") in connection with the Debtors' chapter 11 cases pursuant to the terms and conditions of the Standard Bankruptcy Services Agreement, dated June 24, 2008, a copy of which is annexed hereto as Exhibit A (the "Retention Agreement").

## **The Retention of Epiq is Warranted**

8.       Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of the Bankruptcy Court, authorizes the Court to use facilities other than those of the Clerk's Office for the administration of chapter 11 cases. It provides:

> [a]ny court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estates and are not charged to the United States.

28 U.S.C. § 156(c).

9.       Further, Local Rule 5075-1(a) of the Local Rules of the Bankruptcy Procedure for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") provides:

> The Court may direct . . . the use of agents either on or off the Court's premises to file Court records, either by paper or electronic means, to issue notices, to maintain case dockets, to maintain Judge's calendars, and to maintain and disseminate other administrative information where the costs of such facilities or services are paid for by the estate.

Local Rule 5075-1(a).

10.       The Debtors estimate that they have in excess of 190,000 creditors. Noticing, receiving, docketing and maintaining proofs of claims from such a large number of creditors may be unduly time consuming and burdensome for the Clerk of the Court.

11.       The Debtors believe that the retention of Epiq as the Court's outside agent is in the best interests of their estates and parties in interest. As set forth more fully in the Affidavit of Daniel C. McElhinney, attached hereto as Exhibit B (the "McElhinney Affidavit"), Epiq is a nationally recognized specialist in chapter 11 administration and has vast experience in noticing and claims administration in chapter 11 cases in this and other districts, including,

among others: In re Lexington Precision Corp., et al., No. 08-11153 (MG) (Bankr. S.D.N.Y.

April 2, 2008) [Doc. No.24]; In re PRC, et al., No. 08-10239 (JMP) (Bankr. S.D.N.Y. Jan. 25,

2008) [Doc. No. 35]; In re Global Crossing Ltd., et al., No 02-40188 (Bankr. S.D.N.Y. Jan. 29,

2002) [Doc. No. 31]; In re Worldcom, Inc., et al., No. 02-13533 (Bankr. S.D.N.Y. July 25, 2002)

[Doc. No. 102]; and In re Enron Corp., et al., No. 01-16034 (Bankr. S.D.N.Y. Jan 30, 2002)

[Doc. No. 1191].

### Scope of Services

12.     Subject to the Court's approval, Epiq has agreed to provide the following

services among others at the Debtors' request in the Debtors' chapter 11 cases:

(a)     notifying all potential creditors of the filing of the chapter 11
        petition and of the setting of the first meeting of creditors pursuant
        to section 341(a) of the Bankruptcy Code;

(b)     assisting with and maintaining an official copy of the Debtors'
        schedules of assets and liabilities and statements of financial
        affairs (collectively, the "Schedules"), listing the Debtors' known
        creditors and the amounts owed thereto;

(c)     designing, maintaining, and operating in conjunction with the
        Debtors a website, http://chapter11.epiqsystems.com/steve&barrys,
        as a centralized location where the Debtors will provide
        information about the Debtors' cases, including, at the Debtors'
        discretion, certain orders, decisions, claims, or other documents
        filed in these chapter cases;

(d)     maintaining a copy service from which parties may obtain copies
        of relevant documents in these chapter cases;

(e)     notifying all potential creditors of the existence and amount of
        their respective claims as set forth in the Schedules;

(f)     furnishing a form for the filing of proofs of claim, after approval of
        such notice and form by this Court;

(g)     filing with the Clerk, within ten (10) days of service, a copy of the
        proof of claim notice, a list of persons to whom it was mailed (in
        alphabetical order), and the date the notice was mailed;

(h)     docketing all claims received, maintaining the official claims register (the "<u>Claims Register</u>") for the Debtors on behalf of the Clerk, and providing the Clerk with immediate web access to the Claims Register upon request;

(i)     specifying in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, and (iv) the classification of the claim (e.g., secured, unsecured, priority, etc.);

(j)     relocating, by messenger, all of the actual proofs of claim filed with the Court, if necessary to Epiq, not less than weekly;

(k)     recording all transfers of claims and providing any notices of such transfers required by Bankruptcy Rule 3001;

(l)     making changes in the Claims Register pursuant to Court Order;

(m)     upon completion of the docketing process for all claims received to date by the Clerk's office, turning over to the Clerk copies of the Claims Register for the Clerk's review;

(n)     maintaining the official mailing list for each Debtor of all entities that have filed a proof of claim, which list shall be available upon request by a party in interest or the Clerk;

(o)     assisting with, among other things, the solicitation and the calculation of votes and the distribution as required in furtherance of confirmation of plan(s) of reorganization;

(p)     thirty (30) days prior to the close of these cases, submitting and Order dismissing the Agent and terminating the services of the Agent upon completion of its duties and responsibilities and upon the closing of these cases; and

(q)     at the conclusion of these chapter 11 cases, boxing and transporting all original documents in proper format, as specified by the Clerk's Office, to the Federal Records.

## <u>Compensation</u>

13.     The Debtors request authority to compensate and reimburse Epiq in accordance with the payment terms of the Retention Agreement for all services rendered and expenses incurred in connection with the Debtors' chapter 11 cases. The Retention Agreement

also provides for a $25,000 retainer.  Courts in this and other districts have approved similar retainers in other chapter 11 cases, including, among others: In re Lexington Precision Corp., et al., No. 08-11153 (MG) (Bankr. S.D.N.Y. April 2, 2008) [Doc. No. 24]; In re PRC, et al., No. 08-10239 (JMP) (Bankr. S.D.N.Y. Jan. 25, 2008) [Doc. No. 35]; In re Global Crossing Ltd., et al., No 02-40188 (Bankr. S.D.N.Y. Jan. 29, 2002) [Doc. No. 31]; and In re Worldcom, Inc., et al., No. 02-13533 (Bankr. S.D.N.Y. July 25, 2002) [Doc. No. 102].[1]

       14.     The Debtors believe that such compensation rates are reasonable and appropriate for services of this nature and comparable to those other providers charge for similar services.  In an effort to reduce the administrative expenses related to Epiq's retention, the Debtors seek authorization to pay Epiq's fees and expenses in accordance with the provisions of the Retention Agreement without Epiq filing formal fee applications.

       15.     Epiq has acknowledged that it will perform its duties if the Debtors retain Epiq in the Debtors' chapter 11 cases regardless of payment and to the extent that Epiq requires redress, Epiq will seek appropriate relief from the Court.  Epiq will continue to perform the services as the Retention Agreement contemplates in the event the Debtors' chapter 11 cases are converted to chapter 7 cases.  In the event that Epiq's services are terminated, Epiq shall perform its duties until the occurrence of a complete transition with the Clerk's Office or any successor claims/noticing agent.

### Epiq's Disinterestedness

       16.     The Debtors have been advised that, except as set forth more fully in the McElhinney Affidavit, based on the results of the search performed to date (i) Epiq has no

---

[1] Because of the voluminous nature of the unreported orders cited herein, they are not annexed to this Motion.  Copies of these orders are available upon request of the Debtors' counsel, including at the hearing to consider the Motion.

connection with the Debtors, their creditors or other parties in interest in these cases, and (ii) Epiq does not hold or represent any interest adverse to the Debtors' estates.

17.     To the best of the Debtors' knowledge Epiq is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.  Epiq has represented to the Debtors that Epiq will not represent any entities or individuals other than the Debtors in these chapter 11 cases or in connection with any matters that would be adverse to the interests of the Debtors.

18.     As set forth in the McElhinney Affidavit, Debtors owe no amount to Epiq.

19.     Epiq has advised the Debtors that Epiq will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new facts or circumstances are discovered, Epiq will supplement its disclosure to the Court.

20.     Epiq has also advised the Debtors that, Epiq has agreed not to share with any person or firm, other than its own affiliates, partners, and employees, the compensation to be paid for professional services rendered in connection with these cases.

21.     Because the claims-related services are necessary in these cases, the Debtors believe that the employment of Epiq for the services set forth above is appropriate and in the best interests of the Debtors' estates.  The Debtors request, therefore, authority to employ and retain Epiq on the terms and conditions set forth therein.

**Notice**

22.     No trustee, examiner, or creditors' committee has been appointed in these chapter 11 cases.  The  Debtors have served notice of this Motion on (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel to the agents for the Debtors' prepetition lenders, and (iii) those creditors holding the thirty largest unsecured claims against

the Debtors' estates (on a consolidated basis).  The Debtors submit that no other or further notice

need be provided.

23.     No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  July 9, 2008
        New York, New York

Steve & Barry's Manhattan LLC
(for itself and on behalf of its affiliated
Debtors and Debtors in Possession)


By: /s/ Barry Prevor
    Barry Prevor
    Chairman and Secretary

**EXHIBIT A**
**Retention Agreement**

## EPIQ BANKRUPTCY SOLUTIONS, LLC

### STANDARD BANKRUPTCY SERVICES AGREEMENT

Between Epiq Bankruptcy Solutions, LLC (formerly known as Bankruptcy Services LLC), a New York limited liability company ("Epiq") and Steve & Barry's Manhattan LLC and related debtors (the "Customer" or "Debtor"), dated as of June 24, 2008.

In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### General Terms and Conditions

1. <u>Services.</u>

In accordance with the charges, terms and conditions contained in this Agreement and in the schedule attached hereto (the "Agreement"), Epiq agrees to furnish Customer with computerized bankruptcy support services and bankruptcy administrative services according to the pricing schedule annexed hereto (the "Schedule"). This Schedule sets forth individual unit pricing for services provided by Epiq. The price listed for each service represents a bona fide proposal for that service and the Customer may accept separate Service components or may accept the Services listed in their entirety. Services will be provided when requested by the Customer. Services are mutually exclusive and are deemed delivered and accepted when provided by Epiq.

2. <u>Term.</u>

This Agreement shall become effective on the later of (i) the date of its acceptance by Epiq and (ii) the date of entry of an order by the Bankruptcy Court approving this Agreement (or such earlier date set by the Bankruptcy Court). **The Agreement shall remain in effect until terminated by the Customer on one (1) month's prior written notice received by Epiq and entry of an order of the Court discharging Epiq as claims agent or by Epiq upon three (3) month's prior written notice received by the Customer and entry of an order of the Court discharging Epiq as claims agent.**

3. <u>Charges.</u>

3.1  For services and materials furnished by Epiq under this Agreement, Customer shall pay the charges set forth in the schedule annexed hereto attached hereto and made a part of this Agreement. Epiq will bill Customer monthly. All invoices shall be due and payable within thirty (30) days following receipt.

3.2  Epiq reserves the right to reasonably increase its prices, charges and rates annually on January 2nd of each year. However, if such increases exceed 5%, Epiq will be required to give sixty (60) days prior written notice to Customer. Customer reserves the right to terminate under Section 2 hereof on one (1) month's written notice based on any per annum increase in excess of 5%.

3.3  Customer agrees to pay Epiq for all materials necessary for Epiq's performance under this Agreement, other than computer hardware and software, and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, postage and related items.



3.4 In addition to all charges for services and materials hereunder, Customer shall pay to Epiq all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by Epiq or paid by Epiq to taxing authorities. This provision, includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income.

3.5 In addition to all other charges for services and materials hereunder, Customer shall pay to Epiq any actual charges related to, arising out of or as a result of any Customer error or omission, as mutually agreed by Epiq and Customer. Such charges shall include but not be limited to re-runs and any additional clerical work billed according to the pricing schedule annexed hereto, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the schedule annexed hereto.

3.6 Where the Customer requires measures that are unusual and beyond normal business practice of Epiq such as but not limited to CPA audit, errors and omissions insurance, or off premises storage of data, the cost of such measures, if provided by Epiq, shall be charged to the Customer at a competitive rate mutually agreed upon by the parties.

3.7 In the event of termination due to Customer's default, Customer shall be liable for all amounts then owing.

3.8 Upon the Court's approval of the Agreement, Customer shall pay Epiq a retainer in the amount of $25,000 to be applied against Epiq's final invoice for the services provided herein. Any excess amount of the retainer shall be refunded to the Customer within thirty (30) days following Epiq's receipt of payment of its final invoice.

4. Confidentiality.

All of Customer's data given to Epiq will be safeguarded by Epiq to the same extent that Epiq safeguards data relating to its own business; provided, however, that if data is publicly available, was already in Epiq's possession or known to it, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for disclosure.

5. Title to Property.

Epiq reserves all property rights in and to all materials, concepts, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by the Customer ("Property"). Charges paid by Customer do not vest in Customer any rights to the Property, it being expressly understood that the Property is made available to Customer under this Agreement solely for Customer's use during and in connection with each use of the Epiq equipment and services. Customer agrees not to copy or permit others to copy any of the Property.

6. Disposition of Data.

Any data, programs, storage media or other materials furnished by the Customer to Epiq in connection with this Agreement may be retained by Epiq until the services provided herein are paid for, or until this Agreement is terminated with the services provided herein having been paid for in full. Customer shall remain liable for all charges imposed under this Agreement as a result of data or physical media maintained by Epiq. Epiq shall dispose of the data and media in the manner requested by Customer. Customer agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of the data or media. After giving Customer thirty (30) days advance notice, Epiq reserves the right to dispose of data or media maintained by Epiq for Customer if Customer has not utilized the services provided herein for a period of at least ninety (90) days or if Customer has not paid all charges due to Epiq.

7. Limitation of Liability, Warranty and Indemnity.

7.1 Except as provided herein, Epiq's liability to Customer or any person claiming through or under Customer for any claim, loss, damage, expense of any kind, or for any lost profits, loss of business or other consequential damages even if Epiq has been advised of the possibility of such damages, whether direct or indirect and unless due to gross



negligence or willful misconduct of Epiq shall be limited to the total amount billed or billable to Customer for the portion of the particular work which gave rise to the loss or damage. In no event shall Epiq be liable to Customer for any special or consequential damages (including loss of anticipated profits) incurred by Customer in connection with or arising out of the services provided for in this Agreement.

7.2 Customer is responsible for the accuracy of the programs and data it submits for processing to Epiq and for the output. Customer agrees to initiate and maintain backup files that would allow Customer to regenerate or duplicate all programs and data submitted by Customer to Epiq.

7.3 **Customer agrees that except as set forth in the paragraph 7.1 above, Epiq makes no representations or warranties, express or implied, including but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.**

7.4 The Customer shall indemnify and hold Epiq, its affiliates and each of their respective officers, members, directors, agents, consultants and employees (each an "Indemnified Person") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person. The Customer shall notify Epiq in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which the Customer is aware with respect to the services provided by Epiq under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of the Customer and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

8. Bank Accounts

At the Customer's request, Epiq shall be authorized to establish accounts with financial institutions in the name of and as agent for the Customer. To the extent certain financial products are provided to the Customer pursuant to Epiq's agreement with certain financial institutions, Epiq may receive compensation from such financial institutions for the services Epiq provides pursuant to such agreement.

9. Confidential On-Line Workspace

Epiq shall be authorized to: (a) establish a confidential on-line workspace with IntraLinks in connection with the provision of its services to the Customer pursuant to this Agreement; and (b) with the consent of the Customer and/or its designees, publish documents and other information to such confidential workspace. By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

10. General

10.1 No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

10.2 This Agreement may not be assigned by Customer without the express written consent of Epiq, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Customer, and shall not be made available to any other persons.

10.3 This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.



10.4 The parties agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

10.5 Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by certified mail, postage prepaid, and addressed as follows:

       If to Epiq:

              Epiq Bankruptcy Solutions, LLC
              757 Third Avenue, Third Floor
              New York, New York 10017
              Attn: Ron Jacobs

       If to Customer:

              Steve & Barry's Manhattan LLC
              Attn: office of General Counsel
              12 Harbour Park Drive
              Port Washington, NY 11050

       With a copy to:

              Shai Waisman, Esq.
              Weil Gotshal & Manges LLP
              767 Fifth Avenue
              New York, NY 10153

10.6 This Agreement shall be subject to approval of the United States Bankruptcy Court for the District of

_____ .

IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

EPIQ BANKRUPTCY SOLUTIONS, LLC

_[signature]_

Name:    Daniel C. McElhinney
Title:     Sr. Vice President, Director of Operations

STEVE & BARRY'S MANHATTAN LLC AND RELATED DEBTORS

By: _[signature]_

Name: _Barry Prevor_

Title: _CHAIRMAN_



# Pricing

Case Management Services:

| Title | Rate Range | Average Rate |
|---|---|---|
| Clerk | $40 - $60 per hour | $ 50.00 |
| Case Manager (Level 1) | $125 - $175 per hour | $142.50 |
| IT Programming Consultant | $140 - $190 per hour | $165.00 |
| Case Manager (Level 2) | $185 - $220 per hour | $202.50 |
| Senior Case Manager | $225 - $275 per hour | $247.50 |
| Senior Consultant | TBD | TBD* |

The level of Senior Consultant activity will vary by engagement. If such services are required, the usual average rate is $295 per hour. Any fees for time billed by Dan McElhinney during the first 6 months of this case will be waived. Please note that any additional professional services not specifically covered by this proposal will be charged at hourly rates, including any outsourced data input services performed under our supervision and control. Outside vendors may charge a premium for weekend and overtime work.

Claims Management Services:

| | |
|---|---|
| Database and System Access (No restriction on number of users) | $ .10 per record per month |
| Data Transfer | $ .10 per creditor |
| Manual Claims Input | $ .25 per claim plus hourly rates |
| Document Storage | Waived |



# Pricing

Printing, Mailing and Noticing:

| | |
|---|---|
| Set up | Waived |
| Printing | $ .10 per image and/or page including the envelope face) |
| Collate, fold and/or insert | $ .10 each piece |
| Postage and overnight delivery | At cost |
| Electronic noticing | $ .02 per page |
| Legal notice publishing | Quote prior to publishing |
| Claim acknowledgement card | $ .25 per notice |
| Fax | $ .15 per page |

Document Management/Imaging:

| | |
|---|---|
| Electronic imaging (scanning/bar coding) | $ .30 per image |
| Additional OCR capture | $ .10 per image |
| CD burning (mass document storage) | Varies upon requirements |
| Stand Alone Case Website Construction | $150.00 per hour |
| Hosting Case Specific Site | $200.00 per month |
| Case Data Web Traffic | Waived |

Confidential Document Management:

| | |
|---|---|
| Standard Confidential on-line workspace | $1.30 per page per 6 months |

Voting Tabulation and Reports:

| | |
|---|---|
| Set-up, tabulation and vote verification | Applicable consulting fees only |
| Printing and mailing of ballots | Subject to unit pricing for mailing and noticing above |
| Solicitation and Notification of Public Securities Holders | Varies upon requirements |



# Pricing

Please note that Epiq will coordinate outside services for notice publication, printing and scanning upon request. Reimbursable expenses including travel, envelopes and courier services are billed at cost. Postage is payable in advance of any mailings.

Disbursements:

Transaction fees:

| | |
|---|---|
| Per check or Form 1099 | $1.50 each |
| Per record to transfer agent | $ .25 each |

████████████████████████████████████████████████

# EXHIBIT B

**Affidavit of Daniel C. McElhinney**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                           :

In re                          :        **Chapter 11 Case No.**
                                           :

**STEVE & BARRY'S**            :
**MANHATTAN LLC, <u>et</u> <u>al.</u>,**  :      ___ - _____ (  )
                                           :

          **Debtors.**          :        **(Jointly Administered)**
                                           :
-----------------------------------------------------------------x

### AFFIDAVIT OF DANIEL C. MCELHINNEY IN SUPPORT OF THE APPLICATION TO EMPLOY AND RETAIN EPIQ BANKRUPTCY SOLUTIONS, LLC <u>AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS</u>

STATE OF NEW YORK    )
                         )      ss:
COUNTY OF NEW YORK  )

        Daniel C. McElhinney, being duly sworn, deposes and says:

        1.        I am Senior Vice President and Director of Operations of Epiq Bankruptcy Solutions, LLC ("<u>Epiq</u>"), which provides chapter 11 claims management, noticing, case administration and related services.  I submit this affidavit in support of the application (the "<u>Application</u>") of Steve & Barry's Manhattan LLC and its debtor affiliates, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), to employ and retain Epiq as claims and noticing agent in these chapter 11 cases (the "<u>Agent</u>").

        2.        The Application and that certain Standard Bankruptcy Services Agreement, dated as of June 24, 2008, attached to the Application as <u>Exhibit A</u> (the "<u>Retention Agreement</u>") and incorporated herein by reference, describe the services Epiq proposes to render as Agent.

        3.        Epiq specializes in providing claims management, noticing, case administration and related services to chapter 11 debtors in connection with the administration,

reconciliation and negotiation of claims and solicitation of votes to accept or reject plans of reorganization. Epiq specializes and has expertise in serving as outside claims agent to United States bankruptcy courts with respect to all aspects of claims administration, including docketing and storage of claims, maintenance of claims registers and related noticing services. Epiq has provided identical or substantially similar services to chapter 11 debtors in other cases, including, among others: In re Lexington Precision Corp., et al., No. 08-11153 (MG) (Bankr. S.D.N.Y. April 2, 2008) [Doc. No. 24]; In re PRC, et al., No. 08-10239 (JMP) (Bankr. S.D.N.Y. Jan. 25, 2008) [Doc. No. 35]; In re Global Crossing Ltd., et al., No 02-40188 (Bankr. S.D.N.Y. Jan. 29, 2002) [Doc. No. 31]; In re Worldcom, Inc., et al., No. 02-13533 (Bankr. S.D.N.Y. July 25, 2002) [Doc. No. 102]; and In re Enron Corp., et al., No. 01-16034 (Bankr. S.D.N.Y. Jan 30, 2002) [Doc. No. 1191]. Accordingly, I believe Epiq is well qualified to act as Agent for these cases.

4.     Epiq does not have or represent any interest materially adverse to the interests of the Debtors by reason of any direct or indirect relationship to, or connection with, any class of creditors of the Debtors, or for any other reason. Epiq has no connection with the Debtors, their creditors or other parties in interest in these cases. Further, Epiq does not hold or represent any interest adverse to the Debtors' estates.

5.     To the best of my knowledge, Epiq is a "disinterested person" as that term is defined in section 101(14) of Title 11 of the United States Code (as amended, the "Bankruptcy Code"), as modified by section 1107(b) of the Bankruptcy Code.

6.     Epiq will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new facts or circumstances are discovered, Epiq will supplement its disclosure to the Court.

7.     Epiq has not been retained to assist any entity or person other than the Debtors on matters relating to these chapter 11 cases.  If Epiq's proposed retention is approved by this Court, Epiq will not accept any engagement or perform any service for any entity or person other than the Debtors in these chapter 11 cases.  Epiq may, however, provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, provided that such services do not relate to the Debtors or their chapter 11 cases.  In addition, Epiq may utilize services provided by vendors that may be creditors or parties in interest of the Debtors.

8.     To date, there are no outstanding amounts owed by the Debtors to Epiq.

9.     As compensation for Epiq's services, Epiq will charge the rates set forth on the <u>Pricing Schedule</u> attached to the Retention Agreement.  These rates are at least as favorable as those Epiq charges to other chapter 11 debtors for similar services.  Epiq will comply with all requests of the office of the clerk of the bankruptcy court and follow the guidelines the Judicial Conference of the United States promulgated for the implementation of 28 U.S.C. § 156(c).  Epiq proposes to be paid by the Debtors in the ordinary course of their business without further application to this Court.

10.     Epiq will not share with any person or firm, other than Epiq's own affiliates, partners, and employees, the compensation to be paid for professional services rendered in connection with this case.

11.     Epiq will comply with all of its obligations and responsibilities under the Protocol for the Employment of Claims Agents, dated May 8, 2006, issued by the Clerk of the Court.  To that end, I am informed by counsel that proposals from three court-approved claims

agents (including Epiq) were obtained and reviewed by the Debtors prior to selection of Epiq to serve as claims and noticing agent in these cases.

12.     Epiq will perform its duties if it is retained in the Debtors' chapter 11 case regardless of payment. To the extent that Epiq requires redress, it will seek appropriate relief from the Court. Epiq will continue to perform the services as the Retention Agreement contemplates in the event the Debtors' chapter 11 cases are converted to chapter 7 cases. In the event that Epiq's services are terminated, Epiq shall perform its duties until the occurrence of a complete transition with the Clerk's Office or any successor claims/noticing agent.

Name:  Daniel C. McElhinney
Title:  Senior Vice President

Sworn to and subscribed before me, a notary public for the State of New York, County of New York, this 8th day of July, 2008.

Notary Public
Notary Public, State of New York
No. 01 MA 6 14899
Qualified in New York County
Commission Expires July 3, 2010

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                           :

In re                              :        **Chapter 11 Case No.**
                                           :

**STEVE & BARRY'S**                  :
**MANHATTAN LLC, et al.,**      :     ___ - _____ (  )
                                           :

            **Debtors.**           :        **(Jointly Administered)**
                                           :
------------------------------------------------------------x

**ORDER PURSUANT TO 28 U.S.C. § 156(c) AND LOCAL RULE 5075-1(a)**
**(i) AUTHORIZING THE EMPLOYMENT OF EPIQ BANKRUPTCY SOLUTIONS, LLC**
**AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS, AND (ii) APPOINTING**
**EPIQ BANKRUPTCY SOLUTIONS, LLC AS AGENT OF THE BANKRUPTCY COURT**

                Upon the application dated July 9, 2008 (the "Application") of Steve & Barry's

Manhattan LLC and its debtor affiliates, as debtors and debtors in possession (the "Debtors"),

pursuant to section 156(c) of title 28 of the United States Code, for authority to employ Epiq

Bankruptcy Solutions, LLC ("Epiq") as noticing and claims agent, as more fully set forth in the

Application; and upon consideration of Affidavit of Daniel C. McElhinney in Support of the

Application to Employ and Retain Epiq Bankruptcy Solutions, LLC as Claims and Noticing

Agent for the Debtors, annexed to the Application as Exhibit B; and the Debtors having

estimated that in excess of 190,000 creditors and other parties in interest exist in these chapter 11

cases, many of which the Debtors expect to file proofs of claim; and it appearing that noticing,

receiving, docketing and maintaining proofs of claim in this volume will be unduly time

consuming and burdensome for the Clerk; and the Court being authorized under 28 U.S.C.

§ 156(c) and Local Rule 5075-1(a) of the Local Rules of the United States Bankruptcy Court for

the Southern District of New York to utilize, at the Debtors' expense, outside agents and

facilities to provide notices to parties in title 11 cases and to receive, docket, maintain, photocopy

and transmit proofs of claim; and the Court being satisfied that Epiq has the capability and experience to provide such services and that Epiq does not hold an interest adverse to the Debtors or the Debtors' estates with respect to the matters upon which Epiq is to be engaged; and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided to (i) the United States Trustee for the Southern District of New York, (ii) counsel to the agents for the Debtors' prepetition lenders, and (iii) those creditors holding the thirty largest unsecured claims against the Debtors' estates (on a consolidated basis), and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Application (the "Hearing"); and the appearances of all interested parties having been noted in the record of the Hearing; and upon the Affidavit of Gary Sugarman Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, sworn to on July 9, 2008, the record of the Hearing, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Application is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is hereby granted; and it is further

ORDERED that the Debtors are authorized to retain and employ Epiq, effective as of the commencement of these chapter 11 cases, to perform the noticing and other services described in the Application and to receive, maintain, record, and otherwise administer the proofs of claim filed in these chapter 11 cases; and it is further

ORDERED that Epiq is appointed as agent for the Clerk and custodian of court records and, as such, is designated as the authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate thereof on a monthly basis unless otherwise directed by the Clerk; and it is further

ORDERED that Epiq is authorized and directed to perform all related tasks to process the proofs of claim and maintain a claims register including, without limitation:

(a)     notifying all potential creditors of the filing of the chapter 11 petition and of the setting of the first meeting of creditors pursuant to section 341(a) of the Bankruptcy Code;

(b)     assisting with and maintaining an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c)     designing, maintaining, and operating in conjunction with the Debtors a website, http://chapter11.epiqsystems.com/steve&barrys, as a centralized location where the Debtors will provide information about the Debtors' cases, including, at the Debtors' discretion, certain orders, decisions, claims, or other documents filed in these chapter 11 cases;

(d)     maintaining a copy service from which parties may obtain copies of relevant documents in these chapter 11 cases;

(e)     notifying all potential creditors of the existence and amount of their respective claims as set forth in the Schedules;

(f)     furnishing a form for the filing of proofs of claim, after approval of such notice and form by this Court;

(g)      filing with the Clerk, within ten (10) days of service, a copy of the proof of claim notice, a list of persons to whom it was mailed (in alphabetical order), and the date the notice was mailed;

(h)      docketing all claims received, maintaining the official claims register (the "Claims Register") for the Debtors on behalf of the Clerk, and providing the Clerk with immediate web access to the Claims Register upon request;

(i)      specifying in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, and (iv) the classification of the claim (e.g., secured, unsecured, priority, etc.);

(j)      relocating, by messenger, all of the actual proofs of claim filed with the Court, if necessary to Epiq, not less than weekly;

(k)      recording all transfers of claims and providing any notices of such transfers required by Bankruptcy Rule 3001;

(l)      making changes in the Claims Register pursuant to Court Order;

(m)      upon completion of the docketing process for all claims received to date by the Clerk's office, turning over to the Clerk copies of the Claims Register for the Clerk's review;

(n)      maintaining the official mailing list for each Debtor of all entities that have filed a proof of claim, which list shall be available upon request by a party in interest or the Clerk;

(o)      assisting with, among other things, the solicitation and the calculation of votes and the distribution as required in furtherance of confirmation of plan(s) of reorganization;

(p)      thirty (30) days prior to the close of these cases, submitting and Order dismissing the Agent and terminating the services of the Agent upon completion of its duties and responsibilities and upon the closing of these cases; and

(q)      at the conclusion of these chapter 11 cases, boxing and transporting all original documents in proper format, as specified by the Clerk's Office, to the Federal Records.

ORDERED that Epiq is authorized to take such other action as is reasonably

necessary to comply with all duties set forth in the Application and this Order; and it is further

ORDERED that the Debtors are authorized to compensate Epiq on a monthly basis, in accordance with the Standard Bankruptcy Services Agreement, dated June 24, 2008, annexed to the Application as <u>Exhibit A</u>, upon receipt of reasonably detailed invoices setting forth the services Epiq provided in the prior month and the rates charged for each service, and to reimburse Epiq for all reasonable and necessary expenses Epiq may incur upon the presentation of appropriate documentation and without the necessity for Epiq to file an application for reimbursement with the Court; and it is further

ORDERED if these cases convert to cases under chapter 7, Epiq will continue to be paid for its services until the claims filed in these chapter 11 cases have been completely processed; if claims agent representation is necessary in the converted chapter 7 cases, Epiq will continue to be paid in accordance with 28 U.S.C. §156(c) under the terms set out herein; and it is further

ORDERED that in the event Epiq is unable to provide the services set out in this Order, Epiq will immediately notify the Clerk and the Debtors' attorneys and cause all original proofs of claim and computer information to be turned over to another claims agent with the advice and consent of the Clerk and Debtors' attorneys.

Dated: July __, 2008
        New York, New York

                              _____
                              UNITED STATES BANKRUPTCY JUDGE