WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller
Lori R. Fife
Shai Y. Waisman

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                       :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **STEVE & BARRY'S** | : | |
| **MANHATTAN LLC, et al.,** | : | **___ - _____ (   )** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-----------------------------------------------------------------x

## DEBTORS' MOTION TO (A) (i) AUTHORIZE USE OF CASH COLLATERAL, (ii) GRANT ADEQUATE PROTECTION, AND (iii) MODIFY THE AUTOMATIC STAY, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

        Steve & Barry's Manhattan LLC and its debtor affiliates, as debtors and debtors

in possession (collectively, "Steve & Barry's" or the "Debtors"), respectfully represent:

### SUMMARY OF RELIEF REQUESTED

        1.      By this motion, the Debtors request (a) pursuant to sections 105, 361, 362,

363, and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), (i)

authority to use Cash Collateral,[1] (ii) authority to grant adequate protection to the Prepetition

---

[1] Unless stated otherwise, all capitalized terms not defined in this summary shall have the meaning ascribed to such term in the proposed Interim Order annexed hereto.

Parties (as defined below), and (iii) modification of the automatic stay for the limited purposes provided in the proposed Interim Order, and (b) the scheduling of a final hearing (the "Final Hearing") thereon. In accordance with Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), below is a summary[2] of the terms of the proposed use of Cash Collateral (as defined below):

## Cash Collateral

(i)   Parties with Interest in Cash Collateral. The parties with interest in Cash Collateral are (i) General Electric Capital Corporation, as agent, letter of credit issuer and lender (the "Prepetition Revolver Agent"), National City Bank, as letter of credit issuer, National City Business Credit, Inc., as co-agent, and GE Capital Markets, Inc., as lead arranger, any other lenders under that certain Credit Agreement, dated as of February 1, 2008, and Prepetition Junior Participants, and (ii) PrenSB, LLC, as agent and lender (the "Prepetition Term Loan Agent", and together with the Prepetition Revolver Agent, the "Prepetition Agents"), and any other lenders under that certain Term Loan Credit Agreement, dated as of February 1, 2008. Motion, ¶¶ 10-13; Interim Order ¶ E.

(ii)  Use of Cash Collateral. The Debtors shall use Cash Collateral to pay expenses of the operation of their businesses in accordance with the Budget (as defined below), up to amounts not to exceed 110% of the amounts set forth in the Budget on a cumulative, aggregate rolling basis measured weekly. Interim Order, ¶¶ 3, 11(b).

(iii) Termination Date. Use of Cash Collateral will end on the earliest of (i) expiration of the Remedies Notice Period, (ii) 11:59 p.m. (Easter time) on August 1, 2008, or (ii) the Closing Date of a GC Sale or a Full Chain Liquidation. Immediately upon the occurrence and during the continuation of an Event of Default, the Prepetition Agents may declare a termination, reduction or restriction of the ability of the Debtors to use any Cash Collateral. During the five business days after any such declaration (the "Remedies Notice Period"), the Debtors may use Cash Collateral solely to meet payroll obligations and pay expenses critical to the preservation of the Debtors and their estates as agreed by the Prepetition Agents, each in its sole discretion. Interim Order, ¶¶ 3, 15.

---

[2] To the extent anything in this summary is inconsistent with the proposed Interim Order, annexed hereto, the proposed Interim Order shall control.

(iv)    <u>Events of Default</u>.  The occurrence of any of the following events, unless waived by the Prepetition Agents in writing, shall constitute an event of default:

(a)  the failure by the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under the Interim Order;

(b)  the obtaining of credit or the incurring of indebtedness that is (i) secured by a security interest, mortgage or other lien on all or any portion of the Collateral which is equal or senior to any security interest, mortgage or other lien of the Prepetition Agents and the Prepetition Lenders, or (ii) entitled to priority administrative status which is equal or senior to that granted to the Prepetition Agents and Prepetition Lenders herein;

(c)  the institution of a Challenge pursuant to paragraph 18 of the Interim Order after a party in interest has been granted standing, upon notice and hearing, by order of the Court, which Challenge has not been withdrawn or dismissed within five (5) business days of the commencement of such Challenge;

(d)  any lien or security interest purported to be created under the Prepetition Documents shall cease to be, or shall be asserted by any Debtor not to be, a valid and perfected lien on or security interest in any Collateral, with the priority required by the Prepetition Documents or in the Interim Order;

(e)  the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral, or (ii) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtors;

(f)  any of the Debtors' return of goods constituting Collateral pursuant to section 546(h) of the Bankruptcy Code;

(g)  reversal, vacatur, or modification (without the express prior written consent of the Prepetition Agents, each in its sole discretion) of the Interim Order;

(h)  dismissal of the chapter 11 cases or conversion of the chapter 11 cases to chapter 7 cases, or appointment of a chapter 11 trustee or examiner with enlarged powers or other responsible person;

(i)   any material misrepresentation of fact made after the Commencement Date by any of the Debtors or their agents to the Prepetition Agents or Prepetition Lenders, or to agents for the Prepetition Agents or Prepetition Lenders, about the financial condition of the Debtors, or any of them, the nature, extent, location or quality of any Collateral, or the disposition or use of any Collateral, including Cash Collateral;

(j)   a default by any of the Debtors in reporting financial information as and when required herein or under the Prepetition Documents or the Interim Order, and the continuance of such default for a period of one (1) business day following written notice by the applicable Prepetition Agent to the Debtors of such default;

(k)   the sale of any portion of any of the Debtors' assets outside the ordinary course of business without the prior written consent of the Prepetition Revolver Agent and, subject to and consistent with the Intercreditor Agreement, the Prepetition Term Loan Agent;

(l)   the Debtors' failure to perform the obligations (the "Sale Trigger Events") as set forth and when required by Exhibit B attached to the Interim Order;

(m)  the failure to comply with Prepetition Revolver Documents or Prepetition Term Loan Documents, other than as otherwise modified herein or as prohibited by the Bankruptcy Code;

(n)   the filing of any motion for reconsideration of the Interim Order, which motion has not been withdrawn or dismissed within five (5) business days after the filing of any such motion;

(o)   the failure to maintain cash receipts in an amount of at least 90% of the amount set forth in the Budget on a cumulative, aggregate rolling basis measured weekly; or

(p)   the failure to maintain Inventory levels at the amount set forth in the Budget on a cumulative, aggregate rolling basis measured weekly (subject to a $10 million variance).

Interim Order ¶ 14.

(v)   Adequate Protection.

a.   The Prepetition Revolver Agent, for the benefit of itself, the Prepetition Revolver Lenders, and the Prepetition Junior Participants, shall receive (i) (a) payments of interest, fees and other amounts due under the Prepetition Revolver Documents, (b) ongoing payment of reasonable fees, costs and expenses of the Prepetition Revolver Agent and Prepetition Revolver Lenders, and (c) payment of all cash on hand

as of close of business on Friday of each week in excess of $2.5 million at or before 12:00 p.m. (Eastern time) on Monday of each week (collectively, the "Revolver Adequate Protection Payments"), (ii) additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected security interests and liens on any and all Collateral (the "Revolver Adequate Protection Liens"), which shall be junior, *inter alia*, to the Prepetition Revolver Liens, (iii) to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative claim in each of the chapter 11 cases (the "Revolver Adequate Protection Superpriority Claim") and (iv) the establishment of an account into which by a certain date the Debtors will deposit $250,000 as security for any reimbursement, indemnification or similar continuing obligations of the Debtors in favor of the Prepetition Revolver Agent and the Prepetition Revolver Lenders under the Prepetition Revolver Documents (the "Prepetition Revolver Indemnity Account"). Interim Order, ¶¶ F, 5-8.

b.   The Prepetition Term Loan Agent, on behalf of itself and the Prepetition Term Loan Lenders, shall receive (i) ongoing payment of reasonable fees, costs and expenses of legal and other professionals retained by the Prepetition Term Loan Agent and Prepetition Term Loan Lenders (the "Term Loan Adequate Protection Payments"), (ii) additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected security interests and liens on any and all Collateral ("Term Loan Adequate Protection Liens"), which shall be junior to, *inter alia*, the Prepetition Revolver Liens and the Revolver Adequate Protection Liens, (iii) to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative claim in each of the chapter 11 cases (the "Term Loan Adequate Protection Superpriority Claim"), which shall be junior, *inter alia*, to the Revolver Adequate Protection Superpriority Claim, and (iv) the establishment of an account into which, upon the indefeasible payment in full of the Prepetition Revolver Obligations, the Debtors will deposit $250,000 as security for any reimbursement, indemnification or similar continuing obligations of the Debtors in favor of the Prepetition Term Loan Agrent and the Prepetition Term Loan Lenders under the Prepetition Term Loan Documents (the "Prepetition Term Loan Indemnity Account"). Interim Order, ¶¶ F, 5-8.

(vi)   Carve Out.   Carve Out means the following amounts: (i) statutory fees payable to the United States Trustee, (ii) the allowed wind-down expenses and expenses of a chapter 7 trustee appointed in any of the chapter 11 cases in an aggregate amount not to exceed $50,000, and (iii) $2,500,000 less the allowed and paid professional fees and disbursements incurred by the Debtors and any statutory committee for any professional retained by

final order of the Court.  Interim Order, ¶ 16.  The Revolver Adequate Protection Liens, the Term Loan Adequate Protection Liens, the Revolver Adequate Protection Superpriority Claim, and the Term Loan Adequate Protection Superpriority Claims are junior to the Carve Out.  Interim Order ¶¶ 5(c), 6(c).

(vii)   <u>Determination of the Validity, Enforceability, Priority, and Amount of the Prepetition Obligations</u>.  Subject to the right of any other party to challenge within a specified time period, *inter alia*, the amount and the validity of liens securing the Prepetition Obligations, the Interim Order contains acknowledgments by the Debtors as to the validity, enforceability, priority and amount of the Prepetition Obligations.  Interim Order, ¶ E(viii).

(viii)  <u>Releases</u>.  Subject to the right of any other party to challenge the releases within a specified time period, the Interim Order contains an acknowledgment by the Debtors that they do not have clams, objections, challenges, causes of actions, and/or choses in action against any of the Prepetition Agents or Prepetition Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to their respective loans to the Debtors.  Interim Order, ¶ E(viii).

(ix)    <u>Section 506(c)</u>.  Subject to the entry of the Final Order, no costs or expenses of administration shall be charged against any Prepetition Party or any of their respective claims or the Collateral, or otherwise, without the prior written consent of the applicable Prepetition Party.  Motion, ¶ 22; Interim Order, ¶¶ G, 20.

## Background

2.      On the date hereof (the "<u>Commencement Date</u>"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

## Steve and Barry's Business

4.      Steve & Barry's is a specialty retailer of apparel and accessories that provides consumers with quality low-priced apparel.  Founded in 1985, Steve & Barry's has grown exponentially from an original store in Philadelphia, Pennsylvania to 276 stores located throughout the United States.   Many Steve & Barry's retail locations serve economically challenged areas that other retailers have abandoned because of household income levels, population trends or crime rates.  During the course of its expansion, Steve & Barry's has diversified its business beyond its original line of university apparel, and its products currently fall broadly into three categories: (i) licensed university apparel and lifestyle brands, (ii) private-label casual clothing and accessories for men, women and children, and (iii) exclusive celebrity branded lines of apparel and accessories.

5.      Steve & Barry's offers quality apparel and accessories at dramatically lower prices than typically found for similar goods from other specialty retailers, and in a more upscale, customer-friendly store design.  Steve & Barry's achieves this by operating stores with low occupancy costs, and by relying mostly upon word of mouth and news stories, rather than paid print or other advertising, resulting in significant cost savings.  Steve & Barry's keeps its costs low by maintaining overseas offices and purchasing most merchandise directly from their sources without intermediaries.  The savings realized through each strategy are then passed on to Steve & Barry's customers in the form of low prices.  Almost all items in Steve & Barry's retail locations are priced at $9.98 or less.

6.      As of May 31, 2008, Steve & Barry's (including nondebtor affiliates) consolidated assets totaled approximately $693.5 million and recorded consolidated liabilities totaled approximately $638 million.   Consolidated revenues for the twelve months ended May

31, 2008, were approximately $656.6 million.  Steve & Barry's currently employs, either directly or through its non-debtor affiliates, approximately 8,600 domestic employees and 1,100 international employees.  Approximately 7,300 of the domestic employees are part-time hourly employees and 1,300 are full-time salaried employees.

## Jurisdiction and Venue

7.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

8.      By this Motion, Debtors request (a) pursuant to sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, (i) authority to use Cash Collateral, (ii) authority to grant adequate protection to the Prepetition Parties, and (iii) modification of the automatic stay for the limited purposes provided for in the proposed Interim Order, and (b) scheduling of the Final Hearing pursuant to Bankruptcy Rule 4001.

## Prepetition Funding of the Debtors' Operations

**A.      Prepetition Revolver Agreement**

9.      The Debtors are borrowers (the "Borrowers") under a Credit Agreement, dated as of February 1, 2008 (the "Prepetition Revolver Agreement"), with General Electric Capital Corporation ("GECC"), as agent, letters of credit issuer and lender (the "Prepetition Revolver Agent"), National City Bank, as letters of credit issuer, National City Business Credit, Inc. ("NCBC"), as co-agent, GE Capital Markets, Inc., as lead arranger, and any other lenders party thereto (collectively, the "Prepetition Revolver Lenders").  The Prepetition Revolver Agreement provides for a revolving credit facility (including a swing line facility and letters of credit) (the "Revolving Credit Facility") in the maximum aggregate amount of $197 million,

with a sublimit for letters of credit of $35 million.  Pursuant to a Junior Participation Agreement, dated as of June 20, 2008, among the GECC, as agent and as seller, NCBC, as seller, and Mr. Steven Shore and Mr. Barry Prevor, as buyers (the "Prepetition Junior Participants"), the Prepetition Junior Participants purchased a junior participation in the Revolving Credit Facility in the aggregate amount of $5 million (the "Prepetition Participation Agreement").

10.     Pursuant to a Security Agreement, dated as of February 1, 2008, the Borrowers granted to the Prepetition Revolver Agent, on behalf of Prepetition Revolver Lenders, first priority liens on, and security interests in, substantially all of the Borrowers' assets, including, among other things, all Accounts (including all Tenant Allowances), Goods (including Inventory, Equipment and Fixtures), General Intangibles, Instruments, Investment Property, Deposit Accounts, commercial tort claims, and proceeds and products of the foregoing (each as defined in the Security Agreement).

**B.     Term Loan and Security Agreement**

11.     The Borrowers also are parties to a Term Loan Credit Agreement, dated as of February 1, 2008 (the "Term Loan Agreement"), with PrenSB, LLC ("PrenSB"), as agent and lender (the "Prepetition Term Loan Agent", and together with the Prepetition Revolver Agent, the "Prepetition Agents"), and any other lenders party thereto (collectively, the "Term Loan Agreement Lenders," and together with the Prepetition Revolver Lenders, the "Prepetition Lenders").  The Term Loan Agreement provides for a term loan in the original principal amount of $30 million.

12.     Pursuant to a Security Agreement, dated as of February 1, 2008, the Borrowers granted to the Prepetition Term Loan Agent, on behalf of the Term Loan Agreement Lenders, second priority liens on, and security interests in, substantially all of the Borrowers'

assets, including, among other things, all Accounts (including all Tenant Allowances), Goods (including Inventory, Equipment and Fixtures), General Intangibles, Instruments, Investment Property, Deposit Accounts, commercial tort claims, and proceeds and products of the foregoing (as defined in the Term Loan Agreement).

## C.    Amounts Outstanding Under the Prepetition Credit Agreements

13.    As of July 9, 2008, the outstanding principal amount of all loans under the Prepetition Revolver Agreement was approximately $135 million.   As of July 9, 2008, approximately $30 million was outstanding under the Term Loan Agreement.  The borrowings under the Prepetition Revolver Agreement and the Term Loan Agreement (collectively, the "Prepetition Credit Agreements") to fund general working capital requirements.  The Debtors believe that, as of the Commencement Date, the value of the assets encumbered by the Prepetition Senior Lenders' liens exceeds the aggregate amount of the obligations owed under the Prepetition Credit Agreements.

### The Debtors' Prepetition Cash Management System

14.    The Debtors utilize a centralized cash management system (the "Cash Management System") to collect and transfer the funds generated by the collective operations of the Debtors and to disburse funds to satisfy their obligations.  At present, all cash, checks, credit card receivables and all Tenant Allowances (as defined in the Cash Management Motion[3]), are deposited into deposit or lockbox accounts at various banks (the "Collection Accounts").  The

---

[3] Contemporaneously herewith the Debtors filed the Debtors' Motion Pursuant to Sections 105(A), 345(B), 363(B), 363(C) and 364(A) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 for (A) Authorization to (i) Continue Using Existing Centralized Cash Management System, (ii) Honor Certain Prepetition Obligations Related to the Use of the Cash Management System, and (iii) Maintain Existing Bank Accounts and Business Forms; and (B) An Extension of Time to Comply With Section 345(B) of the Bankruptcy Code (the "Cash Management Motion").

funds received into the Collection Accounts are automatically swept either on a daily basis or every one or two weeks, depending on the bank account, into a concentration account maintained at DeutscheBank Trust Company Americas in New York City in the name of the Prepetition Revolver Agent (the "Concentration Account").  The Prepetition Revolver Agent then credits these funds against the Revolver, pursuant to the terms of the Prepetition Revolver Facility.

15.     On a daily basis, the Debtors calculate the funds needed to pay their disbursements and notify the Prepetition Revolver Agent of such amount.  Pursuant to the terms of the Revolver, the Prepetition Revolver Agent, subject to availability, wires the requested funds to the Debtors' master operating account (the "Master Operating Account") at Cathay Bank.  The Debtors then make disbursements either directly from the Master Operating Account or by transferring funds to separate accounts, from which disbursements are made.

16.     Subject to authorization to use Cash Collateral, the Debtors seek relief in the Cash Management Motion to continue using their Cash Management System as modified to enable the Debtors to use Cash Collateral.  Accordingly, in the Cash Management Motion, consistent with the Prepetition Parties' consent to the use of Cash Collateral, the Debtors have requested that all available funds currently in the Collection Accounts on or after the Commencement Date be automatically transferred on a daily basis (or as often as practicable) into the Master Operating Account to be used in accordance with the orders granting this Motion. See Interim Order ¶¶ 11(a), 12.

### The Proposed Use of Cash Collateral

17.     The Debtors have sought to obtain postpetition financing, but were unsuccessful in obtaining postpetition financing on acceptable terms.  Currently, the Debtors lack sufficient unencumbered funds with which to operate their businesses on an ongoing basis.  As a

result, the Debtors have determined that they have no choice but to sell all or substantially all of their assets to a third party and use the proceeds to satisfy the liens that encumber such assets and wind up their chapter 11 cases (the "Sale Process"). Consequently herewith, the Debtors have filed a motion to establish procedures in connection with the sale of all or substantially all of their assets (the "Bidding Procedures Motion"). The Debtors have an urgent and immediate need for cash to continue to operate pending the Sale Process. Absent authorization from the Court to use the Cash Collateral, the Debtors will have to seize operations immediately and, as a result, will be immediately and irreparably harmed. The Debtors' ability to maintain business relationships with, among others, their customers and vendors and to meet payroll and other operating expenses is essential to the Debtors' Sales Process and the value of their businesses. In the absence of the use of the Cash Collateral, the continued operation of the Debtors' businesses even for a limited period of time would not be possible.

18.    For the above reasons, the Debtors have determined, in the exercise of their sound business judgment, that they require the use of Cash Collateral for the maintenance and preservation of their property, the operation of their businesses, the payment of expenses attendant thereto, and the costs and expenses of administering these chapter 11 cases. The Debtors hereby request authority to use Cash Collateral for working capital and capital expenditures, other general operating purposes, and to pay the costs and expenses of administering these chapter 11 cases, all in compliance with a cash collateral budget (the "Budget"), which is annexed hereto as Exhibit A.

19.    After an extensive negotiation, the Prepetition Agents, the Prepetition Lenders, and the Prepetition Junior Participants (collectively, the "Prepetition Parties") have

consented to the use of the Cash Collateral pursuant to the terms and conditions outlined in the proposed order annexed hereto (the "Interim Order").

## Proposed Adequate Protection

20. In order to protect the Prepetition Parties from any diminution in value of their respective interests in the Cash Collateral, the Debtors propose to provide adequate protection to the Prepetition Parties (the "Proposed Adequate Protection").

21. As Proposed Adequate Protection, the Prepetition Revolver Agent, for the benefit of itself, the Prepetition Revolver Lenders, and the Prepetition Junior Participants, shall receive, first, payments of interest, fees and other amounts due under the Prepetition Revolver Documents, ongoing payment of reasonable fees, costs and expenses of the Prepetition Revolver Agent and Prepetition Revolver Lenders, and payment of all cash on hand as of close of business on Friday of each week in excess of $2.5 million at or before 12:00 p.m. (Eastern time) on Monday of each week (collectively, the "Revolver Adequate Protection Payments"). Second, the Prepetition Revolver Agent shall receive additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected security interests and liens on any and all Collateral (the "Revolver Adequate Protection Liens"), which shall be junior to the Carve-Out, the Prepetition Revolver Liens, and the Permitted Prior Liens, and senior to all other security interests, in, liens on, or claims against any of the Collateral. Third, the Prepetition Revolver Agent shall receive, to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative claim in each of the chapter 11 cases (the "Revolver Adequate Protection Superpriority Claim"). And fourth, the Debtors will establish an account into which by a certain date they will deposit $250,000 as security for any reimbursement, indemnification or similar continuing obligations of the Debtors in favor of the

Prepetition Revolver Agent and the Prepetition Revolver Lenders under the Prepetition Revolver Documents (the "Prepetition Revolver Indemnity Account").

22.     As Proposed Adequate Protection, the Prepetition Term Loan Agent, on behalf of itself and the Prepetition Term Loan Lenders, shall receive, first, ongoing payment of reasonable fees, costs and expenses of legal and other professionals retained by the Prepetition Term Loan Agent and Prepetition Term Loan Lenders (the "Term Loan Adequate Protection Payments").  Second, the Prepetition Term Loan Agent shall receive additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected security interests and liens on any and all Collateral ("Term Loan Adequate Protection Liens"), which shall be junior to the Carve Out, the Prepetition Revolver Liens, the Revolver Adequate Protection Liens, the Prepetition Term Loan Liens, and the Permitted Prior Liens.  Third, the Prepetition Term Agent shall receive, to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative claim in each of the chapter 11 cases (the "Term Loan Adequate Protection Superpriority Claim"), which shall be junior to the Carve Out and the Revolver Adequate Protection Superpriority Claim.  And fourth, the Debtors will establish an account into which, upon the indefeasible payment in full of the Prepetition Revolver Obligations, they will deposit $250,000 as security for any reimbursement, indemnification or similar continuing obligations of the Debtors in favor of the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders under the Prepetition Term Loan Documents (the "Prepetition Term Loan Indemnity Account").

23.     The other material terms of the use of Cash Collateral are summarized in paragraph 1 of this Motion.

## Extraordinary Provisions Under General Order No. M-274

24.     The following are terms of the proposed use of Cash Collateral that are considered to be "Extraordinary Provisions" under the General Order M-274 of the United States Bankruptcy Court for the Southern District of New York:

- Section 506(c) Waiver.  Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against any Prepetition Party or any of their respective claims or the Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the applicable Prepetition Party, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.   Interim Order ¶ 20.

- Event of Default (Initiation of a Challenge).  The institution of a contested matter or adversary proceeding raising an objection or challenge to the validity, allowability, priority, fully secured status or amount of the Prepetition Obligations owed to the Prepetition Agents or Prepetition Lenders, including, without limitation, the bringing of any claim against the Prepetition Parties in the nature of setoff, counterclaim or defense to the applicable Prepetition Obligations constitutes an even of default, unless waived by the Prepetition Agents or withdrawn or dismissed within five business days.  Interim Order ¶ 14(c).

- Event of Default (Making of a Motion).  The filing by the Debtors or any statutory committee appointed in these chapter 11 cases of any motion for reconsideration of the Interim Order constitutes an event of default, unless waived by the Prepetition Agents or withdrawn or dismissed within five business days. Interim Order ¶ 14(n).

## The Proposed Use of Cash Collateral Should Be Approved

### A.     The Use of Cash Collateral is Warranted and Should Be Approved

25.     Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).

26.     As set forth above, the Debtors' ability to maintain business relationships with their customers and vendors and to meet payroll and other critical operating expenses is

essential to the Debtors' Sales Process and the value of their businesses.  Indeed, absent use of the Cash Collateral, the Debtors' businesses will be brought to an immediate halt, with disastrous consequences for the Debtors and their estates and creditors.  Use of the Cash Collateral is therefore of the utmost importance to the preservation and maintenance of the value of the Debtors and essential to the sales effort.   Moreover, the Prepetition Parties have consented to the use of their Cash Collateral upon the terms set forth in the proposed Interim Order and outlined in this Motion.

**B.      The Proposed Adequate Protection Should Be Approved**

27.      Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used . . . by the [debtor in possession], the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).  "The concept of 'adequate protection' is not defined in the [Bankruptcy] Code except by the implications of the examples of adequate protection listed in § 361."  In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986). Section 361 of the Bankruptcy Code contains a non-exhaustive list of acceptable forms of adequate protection, including a cash payment or periodic cash payments, additional liens, replacement liens, and the "indubitable equivalent of such entity's interest in such property."  11 U.S.C. § 361.

28.      The determination of adequate protection is a "fact-specific inquiry."  In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("Its application is left to the vagaries of each case….") (citation omitted).  The focus of the adequate protection requirement is to preserve the secured creditor's position at the time of the bankruptcy filing and protect the secured creditor from diminution in the value of its collateral during the reorganization process.

Id. at 288 (citation omitted); Beker, 58 B.R. at 736.  See In re WorldCom, Inc., 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004) ("The legislative history for section 361 of the Bankruptcy Code, which sets forth how adequate protection may be provided under section 363, makes clear that the purpose is to insure that the secured creditor receives the value for which the creditor bargained for prior to the debtor's bankruptcy.").  "However, neither the legislative history nor the Bankruptcy Code require the Court to protect a creditor beyond what was bargained for by the parties."  Id. at 619.  See Beker, 58 B.R. at 741 ("Adequate protection, not absolute protection, is the statutory standard.").

29.     The Debtors believe that the Prepetition Parties are oversecured and the surplus of the Collateral's value in excess of the amount outstanding under the Prepetition Credit Agreements constitutes more than sufficient adequate protection for the use of Cash Collateral. Moreover, the Debtors anticipate that the Sales Process will take approximately 30 days.  It is unlikely that there will be any diminution in value of the interests of the Prepetition Parties in the Cash Collateral during this short period of time.  Nonetheless, because the Debtors will be using Cash Collateral, the Debtors believe that it is cost effective and in the best interests of their estates, creditors and shareholders that they reach a consensual rather than a litigated resolution regarding the use of Cash Collateral and provide the Prepetition Parties the Proposed Adequate Protection.  The Proposed Adequate Protection will sufficiently protect the Prepetition Parties' interests in the Cash Collateral.  The Prepetition Parties have consented to the use of their Cash Collateral upon the terms set forth in the proposed Interim Order and outlined in this Motion. Accordingly, the Proposed Adequate Protection is fair and reasonable and sufficient to satisfy the requirement of section 363(c)(2) of the Bankruptcy Code.

## The Interim Approval Should Be Granted

30.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 15 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

31.     Pursuant to Bankruptcy Rules 4001(b), the Debtors request that the Court conduct an expedited preliminary hearing on the Motion and (a) authorize the Debtors to use the Cash Collateral of the Prepetition Parties in order to (i) maintain and finance the ongoing operations of the Debtors, and (ii) avoid immediate and irreparable harm and prejudice to the Debtors' estates and all parties in interest, and (b) schedule a Final Hearing on the relief requested herein.

32.     Absent authorization from the Court to use Cash Collateral on an interim basis pending a Final Hearing, the Debtors will be immediately and irreparably harmed.  As set forth above, the Debtors' ability to use Cash Collateral is critical to the orderly resolution of these chapter 11 cases.  Without immediate liquidity provided by the use of Cash Collateral, the Debtors will simply be unable to conduct normal business operations pending the Sales Process, and their estates, creditors, and equity holders will be immediately and irreparably harmed.

## Waiver of Memorandum of Law

33.     Pursuant to Local Bankruptcy Rule for the Southern District of New York 9013-1(b), because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

## <u>Notice</u>

34.     No trustee, examiner, or statutory creditors' committee has been appointed in these chapter 11 cases.  Notice of this Motion has been provided to (i) the United States Trustee for the Southern District of New York, (ii) counsel to the agents for the Debtors' prepetition lenders, and (iii) those creditors holding the thirty largest unsecured claims against the Debtors' estates (on a consolidated basis).  The Debtors submit that no other or further notice need be provided.

35.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: July 9, 2008
New York, New York

/s/ Lori R. Fife
Harvey R. Miller
Lori R. Fife
Shai Y. Waisman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

## <u>EXHIBIT A</u>

Budget

**Steve & Barry's**
**Daily Cash Flow Forecast - In Court**
*($ in thousands)*

| | Wed 7/9/08 | Thurs 7/10/08 | Fri 7/11/08 | Week Ending 7/18/08 | Week Ending 7/25/08 | Week Ending 8/1/08 |
|---|---|---|---|---|---|---|
| Store Count: | 276 | 276 | 276 | 276 | 276 | 276 |
| **RECEIPTS** | | | | | | |
| Sales Receipts, gross | 2,400 | 1,200 | 1,000 | 10,518 | 8,943 | 9,230 |
| Tax Refund | - | - | - | - | - | - |
| **Total Receipts** | 2,400 | 1,200 | 1,000 | 10,518 | 8,943 | 9,230 |
| **DISBURSEMENTS** | | | | | | |
| Store-related Expenses: | | | | | | |
| Salaries & Payroll Taxes | - | - | - | 4,402 | - | 4,402 |
| Employee Benefits | - | - | - | 154 | - | 154 |
| Rent | - | - | - | - | - | - |
| Utilities & Telephone | 127 | 127 | 127 | 635 | 635 | 611 |
| Bank Charges | 16 | 18 | 26 | 122 | 104 | 110 |
| Other Store Expenses | 125 | 125 | 125 | 623 | 623 | 618 |
| Liquidator Reimbursement | - | - | - | - | - | - |
| Subtotal | 267 | 269 | 277 | 5,936 | 1,362 | 5,896 |
| Corporate Expenses: | | | | | | |
| Salaries & Payroll Taxes | - | - | - | 1,057 | - | 1,057 |
| Payroll Fees | - | - | - | 60 | - | 59 |
| Employee Benefits | - | - | - | 159 | - | 159 |
| Rent | - | - | - | - | - | - |
| Utilities & Telephone | - | - | - | 19 | 19 | 19 |
| Bank Charges | 6 | 6 | 6 | 21 | 18 | 18 |
| Insurance | - | - | - | - | - | 472 |
| Royalty Payments | - | - | - | - | - | 255 |
| Other Corporate Expenses | 93 | 93 | 93 | 463 | 463 | 450 |
| Subtotal | 98 | 98 | 98 | 1,779 | 500 | 2,490 |
| DC Expense: | | | | | | |
| Salaries & Payroll Taxes (Inc. Benefits) | - | - | - | 331 | - | 331 |
| Rent | - | - | - | - | - | - |
| Utilities & Telephone | - | - | - | 21 | 21 | 21 |
| Other Expenses | 7 | 7 | 7 | 36 | 36 | 36 |
| Subtotal | 7 | 7 | 7 | 388 | 57 | 388 |
| Overseas Offices | - | 234 | - | 38 | 283 | 961 |
| Inventory Purchases | - | - | - | - | - | - |
| Domestic Freight | 15 | 15 | 15 | 76 | 76 | 76 |
| **Total Operating Disbursements** | 388 | 623 | 398 | 8,217 | 2,278 | 9,811 |
| Non-Operating Disbursements | | | | | | |
| Taxes / Sales Taxes | - | - | 24 | 24 | 2,332 | - |
| Interest Expense/Fees | - | - | - | - | - | 1,676 |
| Capital Lease Payments | - | - | - | - | - | 355 |
| Capital Expenditures | 15 | 15 | 15 | 75 | 59 | 59 |
| **Total Non-Operating Disbursements** | 15 | 15 | 39 | 99 | 2,391 | 2,091 |
| Restructuring-Related Items | | | | | | |
| Critical Vendor Payments | - | - | - | - | - | - |
| Corporate Restructuring | - | - | - | - | - | - |
| Severance & Vacation Payout | - | - | - | - | - | - |
| Professional Fees | - | - | - | - | - | 2,500 |
| **Total Bankruptcy Disbursements** | 0 | 0 | 0 | 0 | 0 | 2,500 |
| **Total Disbursements** | 403 | 638 | 437 | 8,316 | 4,669 | 14,402 |
| **Float** | 36 | (46) | 79 | (1,579) | 678 | (1,441) |
| **NET CASH FLOW** | 1,961 | 608 | 485 | 3,781 | 3,596 | (3,730) |
| **Loan Balance** | | | | | | |
| Beginning Loan Balance | 165,910 | 165,910 | 165,910 | 164,756 | 160,976 | 157,379 |
| Paydown | - | - | (1,154) | (3,781) | (3,596) | - |
| Draw | - | - | - | - | - | - |
| Ending Loan Balance | 165,910 | 165,910 | 164,756 | 160,976 | 157,379 | 157,379 |
| **Cash Collateral** | | | | | | |
| Beginning Cash Balance | 600 | 2,561 | 3,169 | 2,500 | 2,500 | 2,500 |
| Net Cash Flow | 1,961 | 608 | 485 | 3,781 | 3,596 | (3,730) |
| Loan Borrowing/(Paydown) | - | - | (1,154) | (3,781) | (3,596) | - |
| Ending Cash Balance | 2,561 | 3,169 | 2,500 | 2,500 | 2,500 | (1,230) |
| Loan Balance | 165,910 | 165,910 | 164,756 | 160,976 | 157,379 | 157,379 |

7/9/2008 12:17 PM

**Steve & Barry's**
**Daily Availability Roll-forward**

*($ in thousands)*

| | Wed 7/9/08 | Thurs 7/10/08 | Fri 7/11/08 | Week Ending 7/18/08 | Week Ending 7/25/08 | Week Ending 8/1/08 |
|---|---|---|---|---|---|---|
| Beginning Stock Ledger Inventory Balance | 236,170 | 235,463 | 234,679 | 233,534 | 228,074 | 221,169 |
| Purchases | - | - | - | - | - | - |
| COGS | (707) | (784) | (1,145) | (5,460) | (6,905) | (7,268) |
| Ending Stock Ledger Inventory Balance | 235,463 | 234,679 | 233,534 | 228,074 | 221,169 | 213,902 |
| | | | | | | |
| Ending Inventory | 235,463 | 234,679 | 233,534 | 228,074 | 221,169 | 213,902 |
| Ineligible Inventory | (7,663) | (7,663) | (7,663) | (7,663) | (7,663) | (7,663) |
| Eligible Inventory | 227,800 | 227,016 | 225,871 | 220,411 | 213,507 | 206,239 |
| | | | | | | |
| Eligible Intransit (excludes inv received above) | - | - | - | - | - | - |
| Shrink Reserve | (4,773) | (4,801) | (4,842) | (5,048) | (5,224) | (5,409) |
| Total Inventory | 223,028 | 222,215 | 221,030 | 215,363 | 208,283 | 200,830 |
| NOLV | 77.0% | 77.0% | 77.0% | 77.0% | 77.0% | 78.1% |
| Net Orderly Liquidation Value of Inventory | 171,731 | 171,106 | 170,193 | 165,830 | 160,378 | 156,848 |
| Advance Rate | 90.0% | 90.0% | 90.0% | 90.0% | 90.0% | 90.0% |
| Available Inventory | 154,558 | 153,995 | 153,173 | 149,247 | 144,340 | 141,163 |
| | | | | | | |
| Eligible Credit Card Receivables | 401 | 401 | 401 | 401 | 401 | 401 |
| Advance Rate | 90.0% | 90.0% | 90.0% | 90.0% | 90.0% | 90.0% |
| Available Credit Card Receivables | 361 | 361 | 361 | 361 | 361 | 361 |
| **Borrowing Base Before Reserves** | **154,919** | **154,356** | **153,534** | **149,608** | **144,701** | **141,524** |
| Reserves: | | | | | | |
| Rent Reserve | (1,723) | (1,723) | (1,723) | (1,723) | (1,723) | (1,723) |
| Texas Ad Taxes Reserve | (153) | (153) | (153) | (153) | (153) | (153) |
| Insurance Reserve | (629) | (629) | (629) | (629) | (629) | (629) |
| Royalties Reserve | (1,700) | (1,700) | (1,700) | (1,700) | (1,700) | (1,700) |
| Freight & Duty | (636) | (636) | (636) | (636) | (636) | (636) |
| Gift Cards (50%) | (1,017) | (1,017) | (1,017) | (1,017) | (1,017) | (1,017) |
| Return Reserve | (736) | (736) | (736) | (736) | (736) | (736) |
| Second Lien Deficiency Amount | (9,372) | (9,447) | (9,557) | (10,080) | (10,735) | (11,158) |
| Other | - | - | - | - | - | - |
| Total Reserves | (15,967) | (16,042) | (16,151) | (16,675) | (17,329) | (17,753) |
| Total Borrowing Base | 138,952 | 138,314 | 137,383 | 132,933 | 127,372 | 123,771 |
| Maximum Amount | 197,000 | 197,000 | 197,000 | 197,000 | 197,000 | 197,000 |
| Lesser of A or B | 138,952 | 138,314 | 137,383 | 132,933 | 127,372 | 123,771 |
| | | | | | | |
| Plus Second Lien Loan | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| Borrowing Base with Second Lien Loan | 168,952 | 168,314 | 167,383 | 162,933 | 157,372 | 153,771 |
| | | | | | | |
| Revolving Loan | 135,910 | 135,910 | 134,756 | 130,976 | 127,379 | 127,379 |
| Second Lien Loan | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| Minimum Borrowing Availability | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| | 195,910 | 195,910 | 194,756 | 190,976 | 187,379 | 187,379 |
| **Borrowing Availability** | **(26,958)** | **(27,596)** | **(27,373)** | **(28,043)** | **(30,008)** | **(33,608)** |
| | | | | | | |
| **Loan Balance** | **165,910** | **165,910** | **164,756** | **160,976** | **157,379** | **157,379** |
| | | | | | | |
| **Second Lien Availability Calculation** | | | | | | |
| | | | | | | |
| Eligible Inventory | 223,028 | 222,215 | 221,030 | 215,363 | 208,283 | 200,830 |
| NOLV | 77.0% | 77.0% | 77.0% | 77.0% | 77.0% | 78.1% |
| Net Orderly Liquidation Value of Inventory | 171,731 | 171,106 | 170,193 | 165,830 | 160,378 | 156,848 |
| Advance Rate | 12.0% | 12.0% | 12.0% | 12.0% | 12.0% | 12.0% |
| Available Inventory | 20,608 | 20,533 | 20,423 | 19,900 | 19,245 | 18,822 |
| | | | | | | |
| Eligible Credit Card Receivables | 401 | 401 | 401 | 401 | 401 | 401 |
| Advance Rate | 5.0% | 5.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| Available Credit Card Receivables | 20 | 20 | 20 | 20 | 20 | 20 |
| | | | | | | |
| Second Lien Loan Availability | 20,608 | 20,553 | 20,443 | 19,920 | 19,265 | 18,842 |
| Second Lien Loan Outstanding | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| **Second Lien Deficiency Reserve Amount** | **(9,372)** | **(9,447)** | **(9,557)** | **(10,080)** | **(10,735)** | **(11,158)** |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------

|  |  |
|---|---|
| In re | ) |
| | ) |
| **STEVE & BARRY'S** | ) |
| **MANHATTAN LLC, et al.,** | ) |
| | ) |
| Debtors. | ) |

**Chapter 11 Case No.**

**08-_____ (___)**

**(Jointly Administered)**

----------------------------------------------------------------

### INTERIM ORDER (i) AUTHORIZING USE OF CASH COLLATERAL, (ii) GRANTING ADEQUATE PROTECTION, (iii) MODIFYING THE AUTOMATIC STAY, AND (iv) SCHEDULING A FINAL HEARING

THIS MATTER having come before the Court upon the motion (the "Motion") of S&B

Industries Inc. ("S&B"), and its direct and indirect subsidiaries, each as a debtor and debtor in

possession (collectively the "Debtors" or "Debtors in Possession")[1] in the above-captioned

chapter 11 cases (collectively, with any successor cases, the "Cases"), pursuant to sections 105,

361, 362, 363, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as

amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-3 of the Local Bankruptcy

---

[1] The other Borrowers are: 4004 Incorporated; 4004 LLC; Baller Brands LLC; Favored Brands LLC; Pro Air LLC; S&B Retail China LLC; S&B Retail India LLC; Star Band LLC; Steel Bolt Construction LLC; Stellar Brands LLC; Steve & Barry's Alabama LLC; Steve & Barry's Arizona LLC; Steve & Barry's Arkansas LLC; Steve & Barry's California LLC; Steve & Barry's Colorado LLC; Steve & Barry's Connecticut LLC; Steve & Barry's CP LLC; Steve & Barry's Florida LLC; Steve & Barry's Georgia LLC; Steve & Barry's GLC LLC; Steve & Barry's Hawaii LLC; Steve & Barry's Idaho LLC; Steve & Barry's Illinois LLC; Steve & Barry's Indiana LLC; Steve & Barry's International LLC; Steve & Barry's Iowa LLC; Steve & Barry's Kansas LLC; Steve & Barry's Kentucky LLC; Steve & Barry's LLC; Steve & Barry's Louisiana LLC; Steve & Barry's Maine LLC; Steve & Barry's Manhattan LLC; Steve & Barry's Maryland LLC; Steve & Barry's Massachusetts LLC; Steve & Barry's Michigan LLC; Steve & Barry's Midwest LLC; Steve & Barry's Minnesota LLC; Steve & Barry's Mississippi LLC; Steve & Barry's Missouri LLC; Steve & Barry's Nebraska LLC; Steve & Barry's Nevada LLC; Steve & Barry's New Jersey LLC; Steve & Barry's New Mexico LLC; Steve & Barry's New York LLC; Steve & Barry's North Carolina LLC; Steve & Barry's Oakland LLC; Steve & Barry's Ohio LLC; Steve & Barry's Oklahoma LLC; Steve & Barry's Pennsylvania LLC; Steve & Barry's South Carolina LLC; Steve & Barry's South Michigan LLC; Steve & Barry's Tennessee LLC; Steve & Barry's Texas LLC; Steve & Barry's Utah LLC; Steve & Barry's Virginia LLC; Steve & Barry's Washington LLC; Steve & Barry's West Virginia LLC; Steve & Barry's Wisconsin LLC; Stone Barn LLC; Stone Barn Trading LLC; Striking Brands LLC; Swift Building LLC; and Symbolic Brands LLC.

Rules for the Southern District of New York and General Order M-274, seeking entry of an interim order (this "Interim Order") *inter alia*:

       (i)      authorizing the Debtors' use of "cash collateral" (as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral") of the Prepetition Agents and Prepetition Lenders (each as defined herein);

       (ii)     providing adequate protection to the Prepetition Agents, Prepetition Lenders and Prepetition Junior Participants for any diminution in value of their respective interests in the Prepetition Collateral (as defined herein), including the Cash Collateral;

       (iii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order; and

       (iv)    scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion and the entry of a Final Order (as defined herein), and approving the form of notice with respect to the Final Hearing.

The Court having considered the Motion, the Affidavit of Gary Sugarman Pursuant to Rule 1007-2 of the Local Rules of Bankruptcy Procedure for the Southern District of New York in Support of First Day Motions and Applications, sworn to on July 9, 2008, the exhibits attached thereto, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on July __, 2008 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014; and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that

granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A. *Petition Date*: On July 9, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court") commencing these Cases.

B. *Debtors in Possession*. The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases.

C. *Jurisdiction and Venue*. This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D. *Statutory Committee*. As of the date hereof, the United States Trustee (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a "Statutory Committee").

E. *Debtors' Stipulations*. After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraph 18

herein, the Debtors and Debtors in Possession admit, stipulate, acknowledge and agree that (collectively, paragraphs E(i) through E(x) below are referred to herein as the "Debtors' Stipulations"):

(i)     *Prepetition Revolver Facility.*  Pursuant to that certain Credit Agreement dated as of February 1, 2008 (as may be amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition Revolver Agreement"), among the Borrowers, General Electric Capital Corporation, as Agent, L/C Issuer and Lender (the "Prepetition Revolver Agent"), National City Bank, as L/C Issuer, National City Business Credit, Inc. as Co-Agent and GE Capital Markets, Inc., as Lead Arranger, and the lenders that are parties thereto from time to time (collectively, together with the Prepetition Revolver Agent, the "Prepetition Revolver Lenders"), the Prepetition Revolver Lenders provided credit and letter of credit facilities to the Borrowers and provided other financial accommodations to or for the benefit of the Borrowers (collectively, the "Prepetition Revolver Facility").  The Prepetition Revolver Facility is subject to those certain Forbearance Agreements dated June 20, 2008 and July 2, 2008, respectively (together with the Prepetition Revolver Agreement and all other loan and security documents executed in connection therewith, the "Prepetition Revolver Documents").

(ii)     *Prepetition Obligations.*  The Prepetition Revolver Facility provided the Borrowers with up to $197,000,000 in aggregate maximum principal amount of revolving commitments, including letter of credit and swingline loan commitments, with a sublimit for letters of credit of $35,000,000.  As of the Petition Date, the approximate outstanding principal, interest and overadvance fees owing under the Prepetition Revolver Agreement, including the Prepetition Participation Obligations (as defined herein), was $135,910,217.91 (collectively, together with any amounts paid, incurred or accrued prior to the Petition Date in accordance with

the Prepetition Revolver Documents, principal, accrued and unpaid interest, any fees, expenses, and disbursements (including, without limitation, attorneys' fees, consultant fees, and related expenses and disbursements), indemnification obligations and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof, the "Prepetition Revolver Obligations").  The Prepetition Revolver Obligations are guaranteed by each of the Borrowers.

(iii)    *Prepetition Participation Agreement.*  Pursuant to that certain Junior Participation Agreement dated as of June 20, 2008 (as may be amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition Participation Agreement"), among the Prepetition Revolver Agent, as Agent and as Seller, National City Business Credit, Inc., as Seller, and Mr. Steven Shore and Mr. Barry Prevor (together, the "Prepetition Junior Participants"), the Prepetition Junior Participants purchased a junior participation in the Prepetition Revolver Facility in the aggregate principal amount of $5,000,000.  As of the Petition Date, the outstanding principal amount of all loans under the Prepetition Participation Agreement was $5,000,000 (together with any amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Participation Agreement, principal, accrued and unpaid interest, any fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses and disbursements), indemnification obligations and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof, the "Prepetition Participation Obligations").

(iv)    *Prepetition Term Loan Agreement.*  Pursuant to that certain Term Loan Credit Agreement dated as of February 1, 2008 (as may be amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition Term Loan Agreement"), among

the Borrowers, and PrenSB, LLC, as Agent and Lender (the "Prepetition Term Loan Agent", and together with the Prepetition Revolver Agent, the "Prepetition Agents"), and the lenders that are parties thereto from time to time (collectively, together with the Prepetition Term Loan Agent, the "Prepetition Term Loan Lenders", and together with the Prepetition Revolver Lenders, the "Prepetition Lenders"), the Prepetition Term Loan Lenders provided a term loan to the Borrowers (the "Prepetition Term Loan").  The Prepetition Term Loan is subject to that certain Forbearance Agreement dated June 20, 2008 (together with the Prepetition Term Loan Agreement and all other loan and security documents executed in connection therewith, the "Prepetition Term Loan Documents", and together with the Prepetition Revolver Documents and Prepetition Participation Agreement, the "Prepetition Documents").

(v)     *Prepetition Term Loan Obligations.*  The Prepetition Term Loan provided the Borrowers with a term loan commitment up to $30,000,000 in aggregate principal amount. As of the Petition Date, the outstanding principal amount owing under the Prepetition Term Loan Agreement was $30,000,000 (together with any amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Term Loan Documents, principal, accrued and unpaid interest, any fees, expenses, and disbursements (including, without limitation, attorneys' fees, consultant fees, and related expenses and disbursements), indemnification obligations and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof, the "Prepetition Term Loan Obligations", and together with the Prepetition Revolver Obligations, the "Prepetition Obligations").  The Prepetition Term Loan Obligations are guaranteed by each of the Borrowers.

(vi)    *Prepetition Liens and Prepetition Collateral.*  As more fully set forth in the Prepetition Revolver Documents and Prepetition Term Loan Documents, prior to the Petition

A/72581736.7

Date, the Borrowers granted security interests in and liens on, among other things, substantially all assets of the Borrowers (collectively, the "Prepetition Collateral") to: (a) the Prepetition Revolver Agent, for itself and the Prepetition Revolver Lenders (the "Prepetition Revolver Liens"); and (b) the Prepetition Term Loan Agent, for itself and the Prepetition Term Loan Lenders (the "Prepetition Term Loan Liens", and together with the Prepetition Revolver Liens, the "Prepetition Liens"). The Prepetition Term Loan Liens on the Prepetition Collateral are subordinate to the Prepetition Revolver Liens on the Prepetition Collateral in accordance with and subject to the Intercreditor Agreement (as defined herein).

(vii) *Priority of the Prepetition Liens; Intercreditor Agreement.* The Prepetition Revolver Agent and Prepetition Term Loan Agent entered into that certain Intercreditor Agreement dated as of February 1, 2008 (as supplemented by that certain side letter between the Prepetition Revolver Agent and Prepetition Term Loan Agent dated June 20, 2008, the "Intercreditor Agreement")[2] to govern the respective rights, interests, obligations, priority, and the positions of the Prepetition Revolver Agent and Prepetition Term Loan Agent with respect to the assets and properties of the Borrowers and other obligors. Pursuant to the Intercreditor Agreement, among other things, (a) the Prepetition Revolver Liens are senior and prior in right to the Prepetition Term Loan Liens and (b) the Prepetition Term Loan Liens are junior and subordinate to the Prepetition Revolver Liens, subject to and in accordance with the terms of the Intercreditor Agreement.

(viii) *Validity, Perfection and Priority of Prepetition Liens and Prepetition Obligations.* Subject to the provisions of paragraph 18 of this Order, the Debtors and Debtors in Possession, to the best of their information and belief, acknowledge and agree that: (a) as of the

---

[2] Each of the Borrowers acknowledged and agreed to the Intercreditor Agreement.

A/72581736.7

Petition Date, the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected; (b) as of the Petition Date, the Prepetition Revolver Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise permitted by the Prepetition Revolver Documents (to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Revolver Liens as of the Petition Date, the "Permitted Prior Liens");[3] (c) as of the Petition Date, the Prepetition Term Loan Liens were junior and subordinate to the Prepetition Revolver Liens and Permitted Prior Liens, and otherwise had priority over any and all other liens on the Prepetition Collateral; (d) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (e) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (f) the Debtors and their estates have no claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against any of the Prepetition Agents or Prepetition Lenders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to their respective loans to the Debtors; (g) as of the Petition Date, the value of the Prepetition

---

[3] Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Prior Liens are valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited, to the Debtors, the Prepetition Agents, the Prepetition Lenders, and any Statutory Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Permitted Prior Lien and/or security interest.

Collateral securing the Prepetition Obligations exceeded the amount of those obligations, and accordingly the Prepetition Obligations are allowed secured claims within the meaning of section 506 of the Bankruptcy Code, in an amount of not less than $135,910,217.91 in the case of the Prepetition Revolver Obligations, and in a principal amount of not less than $30,000,000 in the case of the Prepetition Term Loan Obligations, together with accrued and unpaid interest, fees (including, without limitation, attorneys' fees and related expenses), and any and all other charges of whatever nature owing in respect of such Prepetition Obligations; and (h) any payments made on account of the Prepetition Obligations to or for the benefit of the Prepetition Agents or the Prepetition Lenders prior to the Petition Date were on account of amounts in respect of which the Prepetition Agents and the Prepetition Lenders were oversecured, were payments out of the Prepetition Collateral, and such payments did not diminish any property otherwise available for distribution to unsecured creditors.

(ix) *Cash Collateral*. The Debtors represent that all of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitute the Cash Collateral of the Prepetition Agents and Prepetition Lenders.

(x) *Default by the Debtors*. The Debtors acknowledge and stipulate that the Debtors are in default of their debts and obligations under the Prepetition Revolver Documents and the Prepetition Term Loan Documents.

F. *Adequate Protection*. The Prepetition Revolver Agent, for the benefit of itself, the Prepetition Revolver Lenders and the Prepetition Junior Participants, and the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Lenders, are each entitled to receive adequate protection to the extent of any diminution in value of their respective

interests in the Prepetition Collateral (including the Cash Collateral) resulting from the use of Cash Collateral, the use, sale or lease of Prepetition Collateral authorized herein, the subordination of the Prepetition Revolver Liens and the Prepetition Term Loan Liens to the Carve Out, as described herein, and the imposition of the automatic stay (collectively the "Diminution in Value") pursuant to sections 361, 362, and 363 of the Bankruptcy Code. Pursuant to sections 361, 363, and 507(b), as adequate protection: (i) the Prepetition Revolver Agent, for the benefit of itself, the Prepetition Revolver Lenders and the Prepetition Junior Participants, will receive (a) the Revolver Adequate Protection Liens; (b) the Revolver Adequate Protection Superpriority Claim; (c) the Revolver Adequate Protection Payments; and (d) the Prepetition Revolver Indemnity Account (each as defined herein), and (ii) the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Lenders, will receive (a) the Term Loan Adequate Protection Liens; (b) the Term Loan Adequate Protection Superpriority Claim; (c) the Term Loan Adequate Protection Payments; and (d) the Prepetition Term Loan Indemnity Account (each as defined herein).

G. *Sections 506(c) and 552(b)*. In light of the Prepetition Agents', Prepetition Lenders' and Prepetition Junior Participants' agreement to subordinate their liens and superpriority claims to the Carve Out and to permit the use of their Cash Collateral for payments made in accordance with the Budget and the terms of this Interim Order, each of the Prepetition Agents, Prepetition Lenders and Prepetition Junior Participants are entitled to (a) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (b) upon entry of a Final Order (as defined herein), a waiver of the provisions of section 506(c) of the Bankruptcy Code.

H. *Necessity of Relief Requested*. The ability of the Debtors to finance their

operations requires the use of Cash Collateral, absent which immediate and irreparable harm will result to the Debtors, their estates and creditors, and the possibility for a successful chapter 11 case.  In the absence of the use of Cash Collateral, the continued operation of the Debtors' businesses would not be possible and serious and irreparable harm to the Debtors, their estates and their creditors would occur.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses in the ordinary course of business or to maintain their property without the use of Cash Collateral.  The relief requested in the Motion is therefore necessary, essential, and appropriate for the continued operation of the Debtors' businesses and the management and preservation of their property.  The Prepetition Agents, Prepetition Lenders and Debtors have negotiated at arms' length and in good faith regarding the Debtors' use of Cash Collateral to fund the continued operation of the Debtors' businesses during the Specified Period (as defined below).  The Prepetition Agent, Prepetition Lenders and Prepetition Junior Participants have agreed to permit the Debtors to use their Cash Collateral for the Specified Period, subject to the terms and conditions set forth herein, which terms and conditions are fair and reasonable and have been stipulated to by the Debtors in the exercise of their sound business judgment.  Entry of this Interim Order is in the best interests of the Debtors and their estates.

I.      *Final Hearing*.  At the Final Hearing, the Debtors will seek final approval of the relief requested in the Motion for the proposed use of Cash Collateral arrangements on a final basis pursuant to a final order (the "Final Order"), notice of which Final Hearing will be provided in accordance with this Interim Order.

J.      *Notice*.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including:  (i) the U.S. Trustee; (ii) the parties included on

the Debtors' list of the thirty (30) largest unsecured creditors; (iii) counsel to the Prepetition Revolver Agent for itself and for the Prepetition Revolver Lenders; and (iv) counsel to the Prepetition Term Loan Agent for itself and for the Prepetition Term Loan Lenders. The parties have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.    <u>Motion Granted</u>.  The Motion is granted, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

2.    <u>Objections Overruled</u>.  All objections to the Motion to the extent not withdrawn or resolved are hereby overruled.

3.    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order, and in accordance with the Budget, the Debtors are authorized to use Cash Collateral for the period (the "<u>Specified Period</u>") from the Petition Date through the date which is the earliest to occur of (a) the expiration of the Remedies Notice Period (as defined herein), (b) 11:59 p.m. (Eastern time) on August 1, 2008, or (c) the Closing Date of a GC Sale or a Full Chain Liquidation (as defined on Exhibit B hereto).  Except as otherwise expressly provided herein, Cash Collateral may be used during the Specified Period solely up to the amounts (not to exceed 110% of the amounts set forth in the Budget on a cumulative, aggregate rolling basis measured weekly as of the close of business on Friday of each week), at the times, and for the purposes identified in the cash collateral budget approved by the Prepetition Agents, each in its sole discretion (the "<u>Budget</u>"), a copy of which is attached hereto as Exhibit A; <u>provided</u>,

_however_, that during the Remedies Notice Period, the Debtors may use Cash Collateral in accordance with the terms and provisions of the Budget solely to meet payroll obligations and to pay expenses critical to the preservation of the Debtors and their estates as agreed by the Prepetition Revolver Agent and Prepetition Term Loan Agent, each in its sole discretion. All Cash Collateral use must be strictly in accordance with the terms of the Budget, subject to the variance discussed above. The authorization for the Debtors to use Cash Collateral shall terminate at the expiration of the Specified Period. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order or another "First Day" order of the Court (in each case consistent with this Interim Order and the Budget), with the prior written consent of the Prepetition Agents and Prepetition Lenders, and in accordance with the Budget.

4. <u>Budget Maintenance</u>. The Budget and any modification to, or extension, amendment or update of, the Budget shall be in form and substance acceptable to and approved in writing by each Prepetition Agent, in its sole discretion. The Budget may be amended or modified in writing from time to time only with the written consent of the Prepetition Agents, each in its sole discretion.

5. <u>Adequate Protection Liens</u>.

(a) _Revolver Adequate Protection Liens_. Pursuant to section 361 and 363(e) of the Bankruptcy Code, the Prepetition Revolver Agent, for the benefit of itself, the Prepetition Revolver Lenders and the Prepetition Junior Participants, is hereby granted additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests in and liens (the "<u>Revolver Adequate Protection Liens</u>") on any

and all presently owned and hereafter acquired personal property, real property and all other assets of the Debtors, together with any proceeds thereof (collectively, the "Collateral").

(b)     *Term Loan Adequate Protection Liens*.  Pursuant to section 361 and 363(e) of the Bankruptcy Code, the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Lenders, is hereby granted additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests in and liens on the Collateral (the "Term Loan Adequate Protection Liens", and together with the Revolver Adequate Protection Liens, the "Adequate Protection Liens").

(c)     *Priority of Adequate Protection Liens*

(i)     The Revolver Adequate Protection Liens shall be junior only to: (A) the Carve Out; (B) the Prepetition Revolver Liens; and (C) the Permitted Prior Liens. The Revolver Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.

(ii)     The Term Loan Adequate Protection Liens shall be junior only to: (A) the Carve Out; (B) the Prepetition Revolver Liens; (C) the Revolver Adequate Protection Liens; (D) the Prepetition Term Loan Liens; and (E) the Permitted Prior Liens. The Term Loan Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.

(iii)     The Adequate Protection Liens shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, "Successor Cases").  Except

as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases.  The Adequate Protection Liens shall not be subject to sections 506(c) (effective upon entry of the Final Order), 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

6.     <u>Adequate Protection Superpriority Claims</u>.

(a)     *Revolver Adequate Protection Superpriority Claim*.  As further adequate protection against any Diminution in Value of the interests of the Prepetition Revolver Agent, Prepetition Revolver Lenders and Prepetition Junior Participants in the Prepetition Collateral, the Prepetition Revolver Agent, Prepetition Revolver Lenders and Prepetition Junior Participants are each hereby granted as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "<u>Revolver Adequate Protection Superpriority Claim</u>").

(b)     *Term Loan Adequate Protection Superpriority Claim*.  As further adequate protection against any Diminution in Value of the interests of the Prepetition Term Loan Agent and Prepetition Term Loan Lenders in the Prepetition Collateral, the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders are each hereby granted as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "<u>Term Loan</u>

Adequate Protection Superpriority Claim", and together with the Revolver Adequate Protection Superpriority Claim, the "Adequate Protection Superpriority Claims").

(c) *Priority of Adequate Protection Superpriority Claims.* The Revolver Adequate Protection Superpriority Claim shall be junior only to the Carve Out. The Term Loan Adequate Protection Superpriority Claim shall be junior only to the Carve Out and the Revolver Adequate Protection Superpriority Claim. Except for the Carve Out, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code.

7. Adequate Protection Payments and Protections. As further adequate protection, the Debtors are authorized and directed to provide adequate protection payments (a) to the Prepetition Revolver Agent, on behalf of itself, the Prepetition Revolver Lenders and the Prepetition Junior Participants (the "Revolver Adequate Protection Payments"), in the form of: (i) payments of interest, fees and other amounts due under the Prepetition Revolver Documents, at the times specified therein; (ii) ongoing payment of the reasonable fees, costs and expenses of the Prepetition Revolver Agent and Prepetition Revolver Lenders, including, without limitation, the fees and expenses of legal and other professionals retained by the Prepetition Revolver Agent and Prepetition Revolver Lenders; and (iii) payment of all cash on hand as of the close of business on Friday of each week (the "Excess Cash Collateral") in excess of $2.5 million at or before 12:00 p.m. (Eastern time) on Monday of each week, which Excess Cash Collateral shall

be applied to the principal of the Prepetition Revolver Obligations; and (b) to the Prepetition Term Loan Agent, on behalf of itself and the Prepetition Term Loan Lenders (the "Term Loan Adequate Protection Payments" and collectively with the Revolver Adequate Protection Payments, the "Adequate Protection Payments"), ongoing payment of the reasonable fees, costs and expenses of legal and other professionals retained by the Prepetition Term Loan Agent and Prepetition Term Loan Lenders.  In addition, the Debtors shall provide continued maintenance and insurance of the Collateral in the amounts and for the risks, and by the entities, required under the Prepetition Documents.  The Prepetition Agents and Prepetition Lenders shall not be required to comply with the U.S. Trustee fee guidelines.

8. <u>Prepetition Indemnity Accounts</u>.

(a) *Prepetition Revolver Indemnity Account.*  The Debtors shall establish an account in the control of the Prepetition Revolver Agent (the "Prepetition Revolver Indemnity Account"), into which at the end of the Specified Period $250,000 shall be deposited as security for any reimbursement, indemnification or similar continuing obligations of the Debtors in favor of the Prepetition Revolver Agent and Prepetition Revolver Lenders under the Prepetition Revolver Documents (the "Prepetition Revolver Indemnity Obligations"); provided, however, that the Prepetition Revolver Indemnity Account shall terminate and all remaining amounts held therein shall be released to the Debtors (and shall be applied in accordance with this Interim Order) upon the expiration of the Challenge Period (as defined herein) if, as of such date, no party has filed or asserted (or sought to file or assert) an adversary proceeding, cause of action, objection, claim, defense or other challenge as contemplated in paragraph 18 herein.  The Prepetition Revolver Agent and Prepetition Revolver Lenders are hereby granted a first priority lien on the Prepetition Revolver Indemnity Account to secure the Prepetition Revolver Indemnity

Obligations and other Prepetition Revolver Obligations, and the Prepetition Revolver Indemnity Account shall otherwise be subject to a second priority lien in favor of the Prepetition Term Loan Agent and Prepetition Term Loan Lenders.

(b) *Prepetition Term Loan Indemnity Account.* The Debtors shall establish an account in the control of the Prepetition Term Loan Agent (the "Prepetition Term Loan Indemnity Account"), into which, upon indefeasible payment in full of the Prepetition Revolver Obligations, and the cancellation, backing, or cash collateralization of letters of credit under the Prepetition Revolver Facility, $250,000 shall be deposited as security for any reimbursement, indemnification or similar continuing obligations of the Debtors in favor of the Prepetition Term Loan Agent and Prepetition Term Loan Lenders under the Prepetition Term Loan Documents (the "Prepetition Term Loan Indemnity Obligations"); provided, however, that the Prepetition Term Loan Indemnity Account shall terminate and all remaining amounts held therein shall be released to the Debtors (and shall be applied in accordance with this Interim Order) upon the expiration of the Challenge Period if, as of such date, no party has filed or asserted (or sought to file or assert) an adversary proceeding, cause of action, objection, claim, defense or other challenge as contemplated in paragraph 18 herein. The Prepetition Term Loan Agent and Prepetition Term Loan Lenders are hereby granted a first priority lien on the Prepetition Term Loan Indemnity Account to secure the Prepetition Term Loan Indemnity Obligations and other Prepetition Term Loan Obligations.

9. Modification of Automatic Stay. The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Debtors to

perform such acts as the Prepetition Agents or Prepetition Lenders each may request in its sole discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Prepetition Agents and Prepetition Lenders under the this Interim Order; and (d) authorize the Debtors to pay, and the Prepetition Agents and Prepetition Lenders to retain and apply, payments made in accordance with the terms of this Interim Order.

10.     <u>Perfection of Adequate Protection Liens</u>.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens, the liens on the Prepetition Revolver Indemnity Account, and the liens on the Prepetition Term Loan Indemnity Account without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, the liens on the Prepetition Revolver Indemnity Account, and the liens on the Prepetition Term Loan Indemnity Account, or to entitle the Prepetition Agents, Prepetition Lenders and Prepetition Junior Participants to the priorities granted herein.  Notwithstanding the foregoing, each of the Prepetition Agents is authorized to file, as it deems necessary in its sole discretion, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable Adequate Protection Liens, liens on the Prepetition Revolver Indemnity Account, and liens on the Prepetition Term Loan Indemnity Account, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; <u>provided</u>, <u>however</u>, that no such

filing or recordation shall be necessary or required in order to create or perfect the Adequate

Protection Liens, the liens on the Prepetition Revolver Indemnity Account, or the liens on the

Prepetition Term Loan Indemnity Account. The Debtors are authorized and directed to execute

and deliver promptly upon demand to the Prepetition Agents all such financing statements,

mortgages, notices and other documents as any of the Prepetition Agents or Prepetition Lenders

may reasonably request. The Prepetition Agents, each in its sole discretion, may file a

photocopy of this Interim Order as a financing statement with any filing or recording office or

with any registry of deeds or similar office, in addition to or in lieu of such financing statements,

notices of lien or similar instrument.

11.    Debtors' Obligations.  The Debtors shall:

(a)    Remit all Cash Collateral, as and when received, for deposit to Blocked

Accounts and Lock Boxes (as defined in the Prepetition Revolver Documents) and for all

available funds in such accounts to be swept daily (or as often as practicable) to the

Disbursement Account (as defined in the Prepetition Revolver Documents) to be used in

accordance with this Interim Order and the Budget;

(b)    Apply Cash Collateral and other sources of cash available to the Debtors

hereunder to the expenses of the operation of their businesses as provided in the Budget;

(c)    Deliver to the Prepetition Agents on or before 12:00 p.m. (Eastern Time)

on Tuesday of each week (and if such day is not a business day, then the next succeeding

business day) a (i) comparison for the prior week of actual results of all items contained in the

Budget to the amounts originally contained in the Budget and (ii) cumulative comparison for the

period from the Petition Date through the end of the prior week of the actual results of all items

contained in the Budget to the amounts originally contained in the Budget, in each case along

with such supporting information as each Prepetition Agent may request;

(d)     Provide the Prepetition Agents with financial reports, including cash expenditures in relation to the Budget, when reasonably requested by the Prepetition Agents;

(e)     Provide the Prepetition Agents with daily Borrowing Base Certificates (as defined in the Prepetition Revolver Agreement) on or before 3:00 p.m. on each business day;

(f)     Serve the Prepetition Agents and their respective counsel with a copy of each monthly report filed by the Debtors in these Cases as required by the Court, the U.S. Trustee or applicable law; and

(g)     Comply with the Prepetition Documents, other than as modified herein or as prohibited by the Bankruptcy Code.

12.     <u>Cash Management</u>.  Until the indefeasible payment in full in cash of all Prepetition Revolver Obligations and the cancellation, backing, or cash collateralization of letters of credit under the Prepetition Revolver Facility the Debtors shall maintain the cash management system which has first been agreed to by the Prepetition Revolver Agent, in its sole discretion, except as may be modified pursuant to a cash management order that is in form and substance acceptable to and approved in writing by the Prepetition Revolver Agent.  Thereafter, and until the indefeasible payment in full in cash of all Prepetition Term Loan Obligations, the Debtors shall maintain the cash management system which has first been agreed to by the Prepetition Term Loan Agent, in its sole discretion, except as may be modified pursuant to a cash management order that is in form and substance acceptable to and approved in writing by the Prepetition Term Loan Agent.

13.     <u>Disposition of Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral without the prior written consent of the

Prepetition Revolver Agent and, subject to and consistent with the Intercreditor Agreement, the Prepetition Term Loan Agent (and no such consent shall be implied, from any other action, inaction or acquiescence); provided, however, that the Debtors are permitted to sell, transfer, convey, assign or otherwise dispose of any Collateral constituting the sale of Inventory (as defined in the Prepetition Revolver Documents) in the ordinary course of business.

14.     Events of Default.  The occurrence of any of the following events, unless waived by the Prepetition Revolver Agent and Prepetition Term Loan Agent (subject to and consistent with the Intercreditor Agreement) in writing, shall constitute an event of default (collectively, the "Events of Default"):

(a)     the failure by the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order;

(b)     the obtaining of credit or the incurring of indebtedness that is (i) secured by a security interest, mortgage or other lien on all or any portion of the Collateral which is equal or senior to any security interest, mortgage or other lien of the Prepetition Agents and the Prepetition Lenders, or (ii) entitled to priority administrative status which is equal or senior to that granted to the Prepetition Agents and Prepetition Lenders herein;

(c)     the institution of a Challenge (as defined herein) pursuant to paragraph 18 herein after a party in interest has been granted standing, upon notice and hearing, by order of the Court, which Challenge has not been withdrawn or dismissed within five (5) business days of the commencement of such Challenge;

(d)     any lien or security interest purported to be created under the Prepetition Documents shall cease to be, or shall be asserted by any Debtor not to be, a valid and perfected lien on or security interest in any Collateral, with the priority required by the Prepetition

Documents or herein;

(e)     the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral, or (ii) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtors;

(f)     any of the Debtors' return of goods constituting Collateral pursuant to section 546(h) of the Bankruptcy Code;

(g)     reversal, vacatur, or modification (without the express prior written consent of the Prepetition Agents, each in its sole discretion) of this Interim Order;

(h)     dismissal of the Cases or conversion of the Cases to chapter 7 cases, or appointment of a chapter 11 trustee or examiner with enlarged powers or other responsible person;

(i)     any material misrepresentation of fact made after the Petition Date by any of the Debtors or their agents to the Prepetition Agents or Prepetition Lenders, or to agents for the Prepetition Agents or Prepetition Lenders, about the financial condition of the Debtors, or any of them, the nature, extent, location or quality of any Collateral, or the disposition or use of any Collateral, including Cash Collateral;

(j)     a default by any of the Debtors in reporting financial information as and when required herein or under the Prepetition Documents or this Interim Order, and the continuance of such default for a period of one (1) business day following written notice by the applicable Prepetition Agent to the Debtors of such default;

(k)     the sale of any portion of any of the Debtors' assets outside the ordinary course of business without the prior written consent of the Prepetition Revolver Agent and, subject to and consistent with the Intercreditor Agreement, the Prepetition Term Loan Agent;

(l)     the Debtors' failure to perform the obligations (the "Sale Trigger Events") as set forth on and when required by Exhibit B attached hereto;

(m)     the failure to comply with Prepetition Revolver Documents or Prepetition Term Loan Documents, other than as otherwise modified herein or as prohibited by the Bankruptcy Code;

(n)     the filing of any motion by the Debtors or a Statutory Committee for reconsideration of this Interim Order, which motion has not been withdrawn or dismissed within five (5) business days after the filing of any such motion;

(o)     the failure to maintain cash receipts in an amount of at least 90% of the amount set forth in the Budget on a cumulative, aggregate rolling basis measured weekly as of the close of business on Friday of each week; or

(p)     the failure to maintain Inventory levels at the amount set forth in the Budget on a cumulative, aggregate rolling basis measured weekly as of the close of business on Friday of each week (subject to an aggregate $10 million variance).

15.     Rights and Remedies Upon Event of Default.  Immediately upon the occurrence and during the continuation of an Event of Default, the Prepetition Revolver Agent or Prepetition Term Loan Agent may declare a termination, reduction or restriction of the ability of the Debtors to use any Cash Collateral, except for the limited use of Cash Collateral provided in paragraph 3 (any such declaration, shall be referred to herein as a "Termination Declaration").  The Termination Declaration shall be given by facsimile (or other electronic means) to counsel to the

Debtors, counsel to the Prepetition Agents, counsel to any Statutory Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date"). On the Termination Declaration Date, the Debtors' right to use Cash Collateral shall automatically cease, except as provided in paragraph 3. Any automatic stay otherwise applicable to the Prepetition Agents or Prepetition Lenders is hereby modified so that five (5) business days after the Termination Declaration Date (the "Remedies Notice Period"), (a) the Prepetition Revolver Agent and the Prepetition Revolver Lenders shall be entitled to exercise their rights and remedies to satisfy the Prepetition Revolver Obligations, Revolver Adequate Protection Superpriority Claim, Revolver Adequate Protection Liens, and any other obligation under this Interim Order, and (b) subject to and consistent with the Intercreditor Agreement, the Prepetition Term Loan Agent and Prepetition Term Loan Lenders shall be entitled to exercise their rights and remedies to satisfy the Prepetition Term Loan Obligations, Term Loan Adequate Protection Superpriority Claim, Term Loan Adequate Protection Liens, and any other obligations under this Interim Order. During the Remedies Notice Period, the Debtors shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default has occurred and/or is continuing. Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred and/or is not continuing, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order, and the Debtors shall no longer have the right to use or seek to use Cash Collateral, and (i) the Prepetition Revolver Agent and Prepetition Revolver Lenders, and (ii) subject to and consistent with the Intercreditor Agreement, the Prepetition Term Loan Agent and Prepetition Term Loan Lenders, shall be permitted to exercise all remedies set forth herein, in the Prepetition Revolver Documents or Prepetition Term

Loan Documents, as applicable, and as otherwise available at law against the Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the Collateral or any other rights and remedies granted to the Prepetition Agents and the Prepetition Lenders with respect thereto pursuant to the Prepetition Revolver Agreement, Prepetition Revolver Documents, Prepetition Term Loan Agreement, Prepetition Term Loan Documents, or this Interim Order, as applicable.

16.     Carve Out.

(a)     *Carve Out.*  As used in this Interim Order, the "Carve Out" means the following expenses:  (i) statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); (ii) the allowed wind-down costs and expenses of a chapter 7 trustee appointed in any of the Cases or Successor Cases in an aggregate amount not to exceed $50,000; and (iii) $2,500,000 less the allowed and paid professional fees and disbursements ("Allowed Professional Fees") incurred by the Debtors and any Statutory Committee for any professional (the "Case Professionals") retained by final order of the Court (which order has not been vacated, stayed or appealed) by the Debtors and any Statutory Committee under sections 327 or 1103(a) of the Bankruptcy Code) (the "Case Professionals Carve Out").

(b)     *No Direct Obligation to Pay Professional Fees.*  The Prepetition Agents and Prepetition Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Cases.  Nothing in this Interim Order or otherwise shall be construed (i) to obligate the Prepetition Agents or Prepetition Lenders, in any way to pay compensation to or to reimburse expenses of any Case Professional, or to guarantee that the Debtors have sufficient funds to pay

such compensation or reimbursement, (ii) to increase the Carve Out if actual Allowed

Professional Fees are higher in fact than $2,500,000, (iii) as consent to the allowance of any

professional fees or expenses of any Case Professionals, or (iv) to affect the right of the

Prepetition Agents or Prepetition Lenders, to object to the allowance and payment of such fees

and expenses.

17.     <u>Limitations on the Cash Collateral and the Case Professionals Carve Out</u>.  The

Cash Collateral and the Case Professionals Carve Out may not be used:  (a) in connection with or

to finance in any way any action, suit, arbitration, proceeding, application, motion or other

litigation of any type (i) adverse to the interests of the Prepetition Agents, the Prepetition

Lenders, or their rights and remedies under the Prepetition Documents or this Interim Order,

including, without limitation, for the payment of any services rendered by the professionals

retained by the Debtors or any Statutory Committee in connection with the assertion of or joinder

in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other

contested matter, the purpose of which is to seek, or the result of which would be to obtain, any

order, judgment determination, declaration or similar relief adverse to the interests of the

Prepetition Agents, the Prepetition Lenders, or their rights and remedies under the Prepetition

Documents or this Interim Order, (ii) invalidating, setting aside, avoiding or subordinating, in

whole or in part, the Prepetition Obligations, (iii) for monetary, injunctive or other affirmative

relief against any Prepetition Agent or Prepetition Lender, or their respective collateral, or (iv)

preventing, hindering or otherwise delaying the exercise by the Prepetition Agents or Prepetition

Lenders of any rights and/or remedies under this Interim Order, the Prepetition Documents, or

applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further

order of the Court or otherwise) by the Prepetition Agents or Prepetition Lenders upon any of the

Collateral; (b) to make any distribution under a plan of reorganization in any of the Cases; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consent of the Prepetition Agents, unless otherwise ordered by the Court; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in any of the Debtors without the prior written consent of the Prepetition Agents, (e) subject to the limited use of Cash Collateral set forth in paragraph 3 and 15 above, objecting to, contesting, or interfering with in any way the enforcement or realization upon any of the Collateral once an Event of Default has occurred by the Prepetition Revolver Agent or Prepetition Revolver Lenders (and, subject to and consistent with the Intercreditor Agreement, the Prepetition Term Loan Agent or Prepetition Term Loan Lenders); (f) using or seeking to use Cash Collateral or selling or otherwise disposing of Collateral without the consent of the Prepetition Revolver Agent and Prepetition Revolver Lenders (and, subject to and consistent with the terms of the Intercreditor Agreement, the Prepetition Term Loan Agent and Prepetition Term Loan Lenders); (g) using or seeking to use any insurance proceeds constituting Collateral without the consent of the Prepetition Revolver Agent and Prepetition Revolver Lenders (and, subject to and consistent with the terms of the Intercreditor Agreement, the Prepetition Term Loan Agent and Prepetition Term Loan Lenders); (h) incurring Indebtedness (as defined in the Prepetition Revolver Agreement) outside the ordinary course of business without the prior consent of the Prepetition Revolver Agent and Prepetition Revolver Lenders (and, subject to the terms of the Intercreditor Agreement, the Prepetition Term Loan Agent and Prepetition Term Loan Lenders); (i) objecting to or challenging in any way the claims, liens, or interests (including interests in the Collateral) held by or on behalf of any Prepetition Agent or Prepetition Lender; (j)  asserting, commencing or

prosecuting any claims or causes of action whatsoever, including, without limitation, any actions

under chapter 5 of the Bankruptcy Code, against any Prepetition Agent, or Prepetition Lender;

(k) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity,

extent, amount, perfection, priority, or enforceability of any of the Prepetition Obligations or

Prepetition Liens or any other rights or interests of any Prepetition Agent or Prepetition Lender;

or (l) preventing, hindering or otherwise delaying the exercise by any Prepetition Agent or

Prepetition Lender of any rights and remedies granted under this Interim Order.  Notwithstanding

the foregoing, the Cash Collateral and the Case Professionals Carve Out may be used by any

Statutory Committee or any other person or entity granted standing by the Court to investigate

the Prepetition Obligations, the Prepetition Liens and/or a potential Challenge (as that term is

defined herein), provided that no more than $100,000 in the aggregate may be spent from the

aforementioned sources on such investigations.  Upon indefeasible payment in full of the

Prepetition Revolver Obligations and the cancellation, backing, or cash collateralization of letters

of credit under the Prepetition Revolver Facility, the rights and benefits of the Prepetition

Revolver Agent and Prepetition Revolver Lenders in this paragraph 17 shall inure to the benefit

of the Prepetition Term Loan Agent and Prepetition Term Loan Lenders.

18.     Reservation of Certain Third Party Rights and Bar of Challenges and Claims.

Nothing in this Interim Order shall prejudice the rights of a Statutory Committee, a successor

trustee and, solely if no Statutory Committee is appointed, any other party in interest granted

standing by the Court, (other than the Debtors), to seek to object to or to challenge the findings,

Debtors' Stipulations, including, but not limited to those in relation to:  (a) the validity, extent,

priority, or perfection of the mortgage, security interests, and liens of any Prepetition Agent or

Prepetition Lender; or (b) the validity, allowability, priority, full secured status or amount of the

Prepetition Obligations; _provided_, _however_, that any objection or challenge to the validity, allowability, priority, fully secured status or amount of the Prepetition Participation Obligations shall be directed solely against the Prepetition Junior Participants and shall not be directed against or affect the Prepetition Revolver Agent or the Prepetition Revolver Lenders. A party, including any Statutory Committee, if appointed, must commence, as appropriate, a contested matter or adversary proceeding raising such objection or challenge, including, without limitation, any claim against any Prepetition Agent, Prepetition Lender or Prepetition Junior Participant in the nature of a setoff, counterclaim or defense to the applicable Prepetition Obligations (each, a "Challenge") within the earlier of: (i) with respect to any Statutory Committee, sixty (60) calendar days from the effective date of retention of counsel to any Statutory Committee, and (ii) with respect to other parties in interest with requisite standing other than the Debtors or any Statutory Committee, seventy-five (75) calendar days following the date of entry of the Interim Order (together, the "Challenge Period"). The applicable Challenge Period may only be extended once by an additional forty-five (45) days for cause shown on motion and hearing brought prior to its expiration or by written consent of the applicable Prepetition Agent or Prepetition Junior Participant. Upon the expiration of the Challenge Period (the "Challenge Period Termination Date"), without the filing of a Challenge: (A) any and all such Challenges by any party (including, without limitation, any Statutory Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in these Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred, and (B) all of the Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to each Prepetition Agent's, each Prepetition Lender's and each Prepetition Junior Participant's

claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases.

19.     No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

20.     Section 506(c) Claims.  Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against any Prepetition Agent, Prepetition Lender or Prepetition Junior Participants or any of their respective claims or the Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the applicable Prepetition Agent Prepetition Lender, or Prepetition Junior Participants, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

21.     No Marshaling/Applications of Proceeds.  The Prepetition Agent, Prepetition Lenders and Prepetition Junior Participants shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral, as the case may be, and proceeds shall be received and applied in accordance with this Interim Order notwithstanding any other agreement or provision to the contrary.

22.     Section 552(b).  The Prepetition Agents, Prepetition Lenders and Prepetition Junior Participants shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the Prepetition Agents, Prepetition Lenders or Prepetition Junior Participants with respect to proceeds, product, offspring or profits of any of

the Prepetition Collateral.

23. <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the Prepetition Agents', any Prepetition Lender's or any Prepetition Junior Participant's right to seek any other or supplemental relief in respect of any Debtor, including the right to seek additional adequate protection (without prejudice to any other person's right to object to or otherwise oppose such additional adequate protection); (b) any of the rights of any Prepetition Agent, Prepetition Lender or Prepetition Junior Participant under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans.

24. <u>Section 507(b) Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to any of the Prepetition Agents, Prepetition Lenders and/or Prepetition Junior Participants hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by the Prepetition Agents, Prepetition Lenders or Prepetition Junior Participants, that the adequate protection granted herein does in fact adequately protect the Prepetition Agents, Prepetition Lenders and Prepetition Junior Participants against any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral).

A/72581736.7

25.     <u>No Waiver by Failure to Seek Relief</u>.  The failure of any Prepetition Agent, Prepetition Lender or Prepetition Junior Participant to seek relief or otherwise exercise its rights and remedies under this Interim Order, the Prepetition Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the applicable Prepetition Agent, Prepetition Lender or Prepetition Junior Participant.

26.     <u>Proofs of Claim</u>.  The Prepetition Agents, Prepetition Lenders and Prepetition Junior Participants will not be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, each of (a) the Prepetition Revolver Agent on behalf of itself, the Prepetition Revolver Lenders and the Prepetition Junior Participants and (b) the Prepetition Term Loan Agent on behalf of itself and the Prepetition Term Loan Lenders is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Cases or Successor Cases for any claim allowed herein.  Any proof of claim filed by a Prepetition Agent shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Prepetition Lenders or Prepetition Junior Participants, respectively.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in any of the Cases or Successor Cases shall not apply to the Prepetition Agents, Prepetition Lenders or Prepetition Junior Participants.

27.     <u>Good Faith</u>.  The Prepetition Agents, Prepetition Lenders and Prepetition Junior Participants each have acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith.

A/72581736.7

28.     <u>Continuing Effect of Intercreditor Agreement and Prepetition Participation</u> <u>Agreement</u>.  The Prepetition Agents, Prepetition Lenders and Prepetition Junior Participants each shall be bound by and be subject to all the terms, provisions and restrictions of the Intercreditor Agreement.  Nothing in this Interim Order is meant to or shall be deemed to alter or otherwise modify the rights, including consent rights, contained in the Intercreditor Agreement as between and among the Prepetition Agents, Prepetition Lenders and Prepetition Junior Participants.  The Prepetition Junior Participants each shall be bound by and subject to all the terms, provisions and restrictions of the Prepetition Participation Agreement and Prepetition Revolver Documents. Nothing in this Interim Order is meant to or shall be deemed to grant or confer additional rights, or to improve the rights, including consent rights, of the Prepetition Junior Participants that are otherwise subject to the provisions of the Prepetition Participation Agreement and Prepetition Revolver Documents.

29.     <u>Binding Effect of Interim Order</u>.  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the Prepetition Agents, the Prepetition Lenders, the Prepetition Junior Participants, all other creditors of any of the Debtors, any committee appointed in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.  In the event of any inconsistency between the provisions of this Interim Order and any other order (including any "First Day" order), the provisions of this Interim Order shall govern and control.  Any payments to be made under any order (including any "First Day" order) shall be made in accordance with this Interim Order and the Budget.

30.     <u>No Modification of Interim Order</u>.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent of the Prepetition Agents and Prepetition Lenders, and no such consent shall be implied by any other action, inaction or acquiescence of the applicable Prepetition Agent or Prepetition Lenders.  In the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, such modification, amendment or vacatur shall not affect the validity, perfection, priority, allowability, enforceability or non-avoidability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby.  Any liens or claims granted to the Prepetition Agents, Prepetition Lenders and Prepetition Junior Participants hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

31.     <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the Prepetition Agents, Prepetition Lenders and Prepetition Junior Participants pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until all

Prepetition Obligations have been indefeasibly paid in full in cash and all letters of credit under the Prepetition Revolver Facility shall have been cancelled, backed, or cash collateralized in accordance with the terms thereof, notwithstanding the expiration of the Specified Period or any earlier termination of the Debtors' authorization to use Cash Collateral.

32.     <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order is scheduled for _____, 2008 at ___:00 __.m. (Eastern Time) before the Honorable _____, United States Bankruptcy Judge, Courtroom ____ at the United States Bankruptcy Court for the Southern District of New York.  On or before _____, 2008, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with a copy of this Interim Order and the Motion, on:  (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for any Statutory Committee; and (d) the thirty (30) largest unsecured creditors.  The Final Hearing Notice shall state that any party in interest objecting to the relief requested in the Motion on a final basis shall file written objections with the Clerk of the Court no later than on _____, 2008 at __:00 __.m. (Eastern Time), which objections shall be served so as to be received on or before such date by:  (i) counsel to the Debtors, attn:  Lori R. Fife, Esq. and Shai Y. Waisman, Esq., Weil, Gotshal & Manges LLP, 767 Fifth, Avenue, New York, NY 10153; (ii) counsel to any Statutory Committee; (iii) counsel to the Prepetition Revolver Agent, attn:  Robert A. J. Barry, Esq., and Julia Frost-Davies, Esq., Bingham McCutchen LLP, One Federal Street, Boston, MA 02110; (iv) counsel to the Prepetition Term Loan Agent, attn: Kevin J. Simard, Esq., Reimer & Braunstein LLP, Three Center Plaza, 6th Floor, Boston, Massachusetts 02108; and (v) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street,

21st Floor, New York, NY 10004, attn: Paul Schwartzberg, Esq.

33.     <u>Effect of this Interim Order</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

34.     <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

SO ORDERED by the Court this _____ day of July, 2008.

_____
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT A**

Budget

**Steve & Barry's**
**Daily Cash Flow Forecast - In Court**
*($ in thousands)*

| | Wed 7/9/08 | Thurs 7/10/08 | Fri 7/11/08 | Week Ending 7/18/08 | Week Ending 7/25/08 | Week Ending 8/1/08 |
|---|---|---|---|---|---|---|
| Store Count: | 276 | 276 | 276 | 276 | 276 | 276 |
| **RECEIPTS** | | | | | | |
| Sales Receipts, gross | 2,400 | 1,200 | 1,000 | 10,518 | 8,943 | 9,230 |
| Tax Refund | - | - | - | - | - | - |
| **Total Receipts** | 2,400 | 1,200 | 1,000 | 10,518 | 8,943 | 9,230 |
| **DISBURSEMENTS** | | | | | | |
| Store-related Expenses: | | | | | | |
| Salaries & Payroll Taxes | - | - | - | 4,402 | - | 4,402 |
| Employee Benefits | - | - | - | 154 | - | 154 |
| Rent | - | - | - | - | - | - |
| Utilities & Telephone | 127 | 127 | 127 | 635 | 635 | 611 |
| Bank Charges | 16 | 18 | 26 | 122 | 104 | 110 |
| Other Store Expenses | 125 | 125 | 125 | 623 | 623 | 618 |
| Liquidator Reimbursement | - | - | - | - | - | - |
| **Subtotal** | 267 | 269 | 277 | 5,936 | 1,362 | 5,896 |
| Corporate Expenses: | | | | | | |
| Salaries & Payroll Taxes | - | - | - | 1,057 | - | 1,057 |
| Payroll Fees | - | - | - | 60 | - | 59 |
| Employee Benefits | - | - | - | 159 | - | 159 |
| Rent | - | - | - | - | - | - |
| Utilities & Telephone | - | - | - | 19 | 19 | 19 |
| Bank Charges | 6 | 6 | 6 | 21 | 18 | 18 |
| Insurance | - | - | - | - | - | 472 |
| Royalty Payments | - | - | - | - | - | 255 |
| Other Corporate Expenses | 93 | 93 | 93 | 463 | 463 | 450 |
| **Subtotal** | 98 | 98 | 98 | 1,779 | 500 | 2,490 |
| DC Expense: | | | | | | |
| Salaries & Payroll Taxes (Inc. Benefits) | - | - | - | 331 | - | 331 |
| Rent | - | - | - | - | - | - |
| Utilities & Telephone | - | - | - | 21 | 21 | 21 |
| Other Expenses | 7 | 7 | 7 | 36 | 36 | 36 |
| **Subtotal** | 7 | 7 | 7 | 388 | 57 | 388 |
| Overseas Offices | - | 234 | - | 38 | 283 | 961 |
| Inventory Purchases | - | - | - | - | - | - |
| Domestic Freight | 15 | 15 | 15 | 76 | 76 | 76 |
| **Total Operating Disbursements** | 388 | 623 | 398 | 8,217 | 2,278 | 9,811 |
| Non-Operating Disbursements | | | | | | |
| Taxes / Sales Taxes | - | - | 24 | 24 | 2,332 | - |
| Interest Expense/Fees | - | - | - | - | - | 1,676 |
| Capital Lease Payments | - | - | - | - | - | 355 |
| Capital Expenditures | 15 | 15 | 15 | 75 | 59 | 59 |
| **Total Non-Operating Disbursements** | 15 | 15 | 39 | 99 | 2,391 | 2,091 |
| Restructuring-Related Items | | | | | | |
| Critical Vendor Payments | - | - | - | - | - | - |
| Corporate Restructuring | - | - | - | - | - | - |
| Severance & Vacation Payout | - | - | - | - | - | - |
| Professional Fees | - | - | - | - | - | 2,500 |
| **Total Bankruptcy Disbursements** | 0 | 0 | 0 | 0 | 0 | 2,500 |
| **Total Disbursements** | 403 | 638 | 437 | 8,316 | 4,669 | 14,402 |
| **Float** | 36 | (46) | 79 | (1,579) | 678 | (1,441) |
| **NET CASH FLOW** | 1,961 | 608 | 485 | 3,781 | 3,596 | (3,730) |
| **Loan Balance** | | | | | | |
| Beginning Loan Balance | 165,910 | 165,910 | 165,910 | 164,756 | 160,976 | 157,379 |
| Paydown | - | - | (1,154) | (3,781) | (3,596) | - |
| Draw | - | - | - | - | - | - |
| Ending Loan Balance | 165,910 | 165,910 | 164,756 | 160,976 | 157,379 | 157,379 |
| **Cash Collateral** | | | | | | |
| Beginning Cash Balance | 600 | 2,561 | 3,169 | 2,500 | 2,500 | 2,500 |
| Net Cash Flow | 1,961 | 608 | 485 | 3,781 | 3,596 | (3,730) |
| Loan Borrowing/(Paydown) | - | - | (1,154) | (3,781) | (3,596) | - |
| Ending Cash Balance | 2,561 | 3,169 | 2,500 | 2,500 | 2,500 | (1,230) |
| Loan Balance | 165,910 | 165,910 | 164,756 | 160,976 | 157,379 | 157,379 |

**Steve & Barry's**
**Daily Availability Roll-forward**

*($ in thousands)*

| | Wed 7/9/08 | Thurs 7/10/08 | Fri 7/11/08 | Week Ending 7/18/08 | Week Ending 7/25/08 | Week Ending 8/1/08 |
|---|---|---|---|---|---|---|
| Beginning Stock Ledger Inventory Balance | 236,170 | 235,463 | 234,679 | 233,534 | 228,074 | 221,169 |
| Purchases | - | - | - | - | - | - |
| COGS | (707) | (784) | (1,145) | (5,460) | (6,905) | (7,268) |
| Ending Stock Ledger Inventory Balance | 235,463 | 234,679 | 233,534 | 228,074 | 221,169 | 213,902 |
| | | | | | | |
| Ending Inventory | 235,463 | 234,679 | 233,534 | 228,074 | 221,169 | 213,902 |
| Ineligible Inventory | (7,663) | (7,663) | (7,663) | (7,663) | (7,663) | (7,663) |
| Eligible Inventory | 227,800 | 227,016 | 225,871 | 220,411 | 213,507 | 206,239 |
| | | | | | | |
| Eligible Intransit (excludes inv received above) | - | - | - | - | - | - |
| Shrink Reserve | (4,773) | (4,801) | (4,842) | (5,048) | (5,224) | (5,409) |
| Total Inventory | 223,028 | 222,215 | 221,030 | 215,363 | 208,283 | 200,830 |
| NOLV | 77.0% | 77.0% | 77.0% | 77.0% | 77.0% | 78.1% |
| Net Orderly Liquidation Value of Inventory | 171,731 | 171,106 | 170,193 | 165,830 | 160,378 | 156,848 |
| Advance Rate | 90.0% | 90.0% | 90.0% | 90.0% | 90.0% | 90.0% |
| Available Inventory | 154,558 | 153,995 | 153,173 | 149,247 | 144,340 | 141,163 |
| | | | | | | |
| Eligible Credit Card Receivables | 401 | 401 | 401 | 401 | 401 | 401 |
| Advance Rate | 90.0% | 90.0% | 90.0% | 90.0% | 90.0% | 90.0% |
| Available Credit Card Receivables | 361 | 361 | 361 | 361 | 361 | 361 |
| **Borrowing Base Before Reserves** | **154,919** | **154,356** | **153,534** | **149,608** | **144,701** | **141,524** |
| Reserves: | | | | | | |
| Rent Reserve | (1,723) | (1,723) | (1,723) | (1,723) | (1,723) | (1,723) |
| Texas Ad Taxes Reserve | (153) | (153) | (153) | (153) | (153) | (153) |
| Insurance Reserve | (629) | (629) | (629) | (629) | (629) | (629) |
| Royalties Reserve | (1,700) | (1,700) | (1,700) | (1,700) | (1,700) | (1,700) |
| Freight & Duty | (636) | (636) | (636) | (636) | (636) | (636) |
| Gift Cards (50%) | (1,017) | (1,017) | (1,017) | (1,017) | (1,017) | (1,017) |
| Return Reserve | (736) | (736) | (736) | (736) | (736) | (736) |
| Second Lien Deficiency Amount | (9,372) | (9,447) | (9,557) | (10,080) | (10,735) | (11,158) |
| Other | - | - | - | - | - | - |
| Total Reserves | (15,967) | (16,042) | (16,151) | (16,675) | (17,329) | (17,753) |
| Total Borrowing Base | 138,952 | 138,314 | 137,383 | 132,933 | 127,372 | 123,771 |
| Maximum Amount | 197,000 | 197,000 | 197,000 | 197,000 | 197,000 | 197,000 |
| Lesser of A or B | 138,952 | 138,314 | 137,383 | 132,933 | 127,372 | 123,771 |
| | | | | | | |
| Plus Second Lien Loan | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| Borrowing Base with Second Lien Loan | 168,952 | 168,314 | 167,383 | 162,933 | 157,372 | 153,771 |
| | | | | | | |
| Revolving Loan | 135,910 | 135,910 | 134,756 | 130,976 | 127,379 | 127,379 |
| Second Lien Loan | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| Minimum Borrowing Availability | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| | 195,910 | 195,910 | 194,756 | 190,976 | 187,379 | 187,379 |
| **Borrowing Availability** | **(26,958)** | **(27,596)** | **(27,373)** | **(28,043)** | **(30,008)** | **(33,608)** |
| | | | | | | |
| **Loan Balance** | **165,910** | **165,910** | **164,756** | **160,976** | **157,379** | **157,379** |
| | | | | | | |
| **Second Lien Availability Calculation** | | | | | | |
| | | | | | | |
| Eligible Inventory | 223,028 | 222,215 | 221,030 | 215,363 | 208,283 | 200,830 |
| NOLV | 77.0% | 77.0% | 77.0% | 77.0% | 77.0% | 78.1% |
| Net Orderly Liquidation Value of Inventory | 171,731 | 171,106 | 170,193 | 165,830 | 160,378 | 156,848 |
| Advance Rate | 12.0% | 12.0% | 12.0% | 12.0% | 12.0% | 12.0% |
| Available Inventory | 20,608 | 20,533 | 20,423 | 19,900 | 19,245 | 18,822 |
| | | | | | | |
| Eligible Credit Card Receivables | 401 | 401 | 401 | 401 | 401 | 401 |
| Advance Rate | 5.0% | 5.0% | 5.0% | 5.0% | 5.0% | 5.0% |
| Available Credit Card Receivables | 20 | 20 | 20 | 20 | 20 | 20 |
| | | | | | | |
| Second Lien Loan Availability | 20,608 | 20,553 | 20,443 | 19,920 | 19,265 | 18,842 |
| Second Lien Loan Outstanding | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 |
| **Second Lien Deficiency Reserve Amount** | **(9,372)** | **(9,447)** | **(9,557)** | **(10,080)** | **(10,735)** | **(11,158)** |

# Exhibit B

# Sale Trigger Events

<u>Definitions for the purposes of this Exhibit B:</u>

"**Sale Transaction**" means any or all of the GC Sale or Full Chain Liquidation, on terms reasonably acceptable to the Prepetition Revolver Agent (and, subject to and consistent with the Intercreditor Agreement, the Prepetition Term Loan Agent) in all respects.

"**Full Chain Liquidation**" means a liquidation, in one or a series of related transactions, of substantially the entire chain of store locations of the Debtors and all of the assets relating thereto. The agency documents and all other relevant documents executed in connection with the Full Chain Liquidation shall be in form and substance satisfactory to the Prepetition Revolver Agent (and, subject to and consistent with the Intercreditor Agreement, the Prepetition Term Loan Agent).

"**GC Sale**" means a sale, in one or a series of related transactions, of the business of the Debtors as a going concern under section 363 of the Bankruptcy Code with respect to the Debtors and/or all or any substantial portion of the assets of the Debtors. The purchase documents and all other relevant documents executed in connection with the GC Sale shall be in form and substance satisfactory to the Prepetition Revolver Agent (and, subject to and consistent with the Intercreditor Agreement, the Prepetition Term Loan Agent).

<u>Sale Trigger Events:</u>

(a)  On or before July 15, 2008, unless the Prepetition Revolver Agent and the Debtors agree otherwise, the Debtors, after consultation with the Prepetition Revolver Agent (and, subject to and consistent with the Intercreditor Agreement, the Prepetition Term Loan Agent) shall have accepted a stalking horse bid (the "*Stalking Horse Bid*") from a stalking horse bidder (the "*Stalking Horse Bidder*") that is reasonably acceptable to Prepetition Revolver Agent (and, subject to and consistent with the Intercreditor Agreement, the Prepetition Term Loan Agent).

(b)  On or before July 16, 2008, the Bankruptcy Court shall have approved and entered a sales procedures order with respect to the Sale Transaction. The proposed orders and the bidding procedures with respect to the Sale Transaction shall be in form and substance satisfactory to the Prepetition Revolver Agent (and, subject to and consistent with the Intercreditor Agreement, the Prepetition Term Loan Agent).

(c)  On or before July 29, 2008, the Debtors shall complete the auction for the Sale Transaction.

(d)  On or before July 31, 2008, the Debtors shall receive the approval of the Bankruptcy Court for the Sale Transaction and the order approving such Sale Transaction shall be in

form and substance satisfactory to the Prepetition Revolver Agent (and, subject to and consistent with the Intercreditor Agreement, the Prepetition Term Loan Agent).

(e)  On or before July 31, 2008 (the "*Closing Date*"), the Debtors shall have executed all of the agency documents (to the extent applicable in the event a bidder other than the Stalking Horse Bidder is the successful bidder at any auction) or purchase agreements and all other relevant documents in connection with the Sale Transaction (the "*Closing*").

(f) On or before July 31, 2008, to the extent applicable, the GC Sale shall have been consummated, or the Full Chain Liquidation shall have commenced.

2