COOLEY GODWARD KRONISH LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 479-6000
Cathy Hershcopf
Brent Weisenberg

Counsel for the Official Committee
 of Unsecured Creditors

<u>Hearing Date</u>: February 5, 2009 at 11:00 a.m.
<u>Objection Deadline</u>: January 29, 2009 at 5:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

In re:

STONE BARN MANHATTAN LLC f/k/a Steve &
Barry's Manhattan LLC, <u>et al.</u>

                        Debtors.

------------------------------------------------------------X

Chapter 11

Case No. 08-12579 (ALG)

(Jointly Administered)

**FIRST INTERIM APPLICATION OF COOLEY GODWARD KRONISH LLP,**
**COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR**
**COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD**
<u>**FROM JULY 21, 2008 THROUGH OCTOBER 31, 2008**</u>

| | |
|---|---|
| Name of Applicant: | <u>Cooley Godward Kronish LLP</u> |
| Authorized to Provide Professional Services to: | <u>The Official Committee of Unsecured Creditors</u> |
| Date of Retention: | <u>August 26, 2008, *nunc pro tunc* to July 21, 2008</u> |
| Period for which compensation and reimbursement is sought: | <u>July 21, 2008 through October 31, 2008</u> |
| Amount of Compensation sought as actual, reasonable and necessary: | <u>$675,659.25</u> |
| 80% of Compensation sought as actual, reasonable and necessary: | <u>N/A</u> |
| Amount of Expense Reimbursement sought | |

as actual, reasonable and necessary:        $8,136.29

This is Cooley Godward Kronish LLP's first interim fee application in this case.

| Period Covered | Fees Requested | Fees Paid (80%) | Holdback (20%) | Expenses Requested | Expenses Paid (100%) |
|---|---|---|---|---|---|
| July 21, 2008 – August 31, 2008 | $466,000.25 | $372,800.20 | $93,200.05 | $642.37 | $642.37 |
| September 1, 2008 – September 31, 2008 | $111,101.50 | $88,881.20 | $22,220.30 | $4,023.17 | $4,023.17 |
| October 1, 2008 – October 31, 2008 | $98,557.50 | $78,846.00 | $19,711.5 | $3,470.75 | $3,470.75 |
| **TOTAL** | **$675,659.25** | **$540,527.40** | **$135,131.85** | **$8,136.29** | **$8,136.29** |

## ATTACHMENT B TO FEE APPLICATION

| Name of Professional Person | Position of the Applicant and Year of Obtaining License to Practice | Hourly Billing Rate | Total Billed Hours | Total Compensation |
|---|---|---|---|---|
| Lawrence C. Gottlieb | Partner; Member of New York Bar since 1974 | $850 | 1.20 | $1,020.00 |
| William L. Castleberry | Partner; Member of New York Bar since 1970 | $840 | 1.30 | $1,092.00 |
| Jay R. Indyke | Partner; Member of New York Bar since 1982 | $760 | 8.40 | $6,384.00 |
| Steven K. Weinberg | Partner; Member of New York Bar since 1972 | $760 | 0.70 | $532.00 |
| Ronald R. Sussman | Partner; Member of New York Bar since 1979 | $735 | 111.8 | $82,173.00 |
| Cathy Hershcopf | Partner; Member of New York Bar since 1989 | $680 | 270 | $183,600.00 |
| Eric J. Haber | Special Counsel; Member of New York Bar since 1989 | $620 | 116.5 | $72,230.00 |
| Zev Bomrind | Associate; Member of New York Bar since 1997 | $570 | 1.1 | $627.00 |
| Nicholas Smithberg | Associate; Member of New York Bar since 1995 | $560 | 9.7 | $5,432.00 |
| Gregory G. Plotko | Associate; Member of New York Bar since 1999 | $535 | 50.4 | $26,964.00 |
| Brent Weisenberg | Associate; Member of New York Bar since 2002 | $525 | 475.89 | $249,842.25 |
| Damian Najman | Associate; Member of New York Bar since 2006 | $375 | 11.4 | $4,275.00 |
| Richelle Kalnit | Associate; Member of New York Bar since 2006 | $375 | 46.7 | $17,512.50 |
| Brian Wuk Byun | Associate; Member of New York Bar since 2007 | $335 | 35.7 | $11,959.50 |
| Adam Cook | Associate; Member of New York Bar since 2008 | $285 | 12.3 | $3,505.50 |
| Nicholas M. Santoiemma | Associate: Admission Pending | $285 | 3.6 | $1,026.00 |
| David Fleischer | Paralegal | $240 | 4.4 | $1,056.00 |
| Rebecca Goldstein | Paralegal | $215 | 29.9 | $6,428.50 |
| **Grand Total Fees** | | | | **$675,659.25** |
| **Total Hours** | | | **1190.99** | |
| **Blended Rate** | | | | **$567.31** |

## COMPENSATION BY PROJECT CATEGORY

| | Subject Matter Categories | Hours During Period | Amount |
|---|---|---|---|
| B01 | Asset Analysis and Recovery | 20.3 | $11,355.00 |
| B02 | Asset Disposition | 271.0 | $160,162.00 |
| B03 | Business Operations | 24.3 | $14,797.50 |
| B04 | Case Administration | 87.5 | $35,535.50 |
| B05 | Claims | 10.5 | $6,508.50 |
| B06 | Employee Benefits/Pensions | 0.00 | $0.00 |
| B07 | Fee/Employment Applications | 84.3 | $47,635.50 |
| B08 | Fee/Employment Objections | 9.2 | $5,078.00 |
| B09 | Financing and Cash Collateral | 190.9 | $106,477.00 |
| B10 | Litigation | 287.79 | $165,196.75 |
| B11 | Meetings | 33.1 | $20,805.00 |
| B12 | Plan and Disclosure Statement | 0.80 | $482.00 |
| B13 | Relief from Stay Proceedings | 9.2 | $4,493.00 |
| B14 | Travel | 0.00 | $0.00 |
| B15 | Accounting/Auditing | 0.00 | $0.00 |
| B16 | Business Analysis | 0.00 | $0.00 |
| B17 | Corporate Finance | 0.00 | $0.00 |
| B18 | Leases and Executory Contracts | 59.4 | $33,222.00 |
| B19 | Preparation For and Attendance at Court Hearings | 102.7 | $63,911.50 |
| B20 | Reconstruction Accounting | 0.00 | $0.00 |
| B21 | Tax Issues | 0.00 | $0.00 |
| B22 | Valuation | 0.00 | $0.00 |
| B23 | Avoidance Actions | 0.00 | $0.00 |
| B24 | Regulatory Compliance | 0.00 | $0.00 |
| | **TOTAL** | **1190.99** | **$675,659.25** |

## EXPENSE SUMMARY

| Subject Matter Categories | Amount |
|---|---|
| Audio/Video Conferencing Services | $58.82 |
| Federal Express | $111.09 |
| Meals | $923.40 |
| Messenger Service | $274.29 |
| Postage | $1.00 |
| Reproduction of Documents | $776.84 |
| Research Databases/Document Retrieval | $4,969.74 |
| Taxi | $121.00 |
| Telephone | $100.42 |
| Transportation | $799.69 |
| **TOTAL** | **$8,136.29** |

COOLEY GODWARD KRONISH LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 479-6000
Cathy Hershcopf
Brent Weisenberg

Hearing Date: February 5, 2009 at 11:00 a.m.
Objection Deadline: January 29, 2009 at 5:00 p.m.

Counsel for the Official Committee
of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

In re:

STONE BARN MANHATTAN LLC f/k/a Steve &
Barry's Manhattan LLC, et al.

                    Debtors.

-------------------------------------------------------------X

Chapter 11

Case No. 08-12579 (ALG)

(Jointly Administered)

**FIRST INTERIM APPLICATION OF COOLEY GODWARD KRONISH LLP,
COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR
COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD
FROM JULY 21, 2008 THROUGH OCTOBER 31, 2008**

Cooley Godward Kronish LLP ("Applicant"), counsel to the Official Committee

of Unsecured Creditors (the "Committee") of Stone Barn Manhattan LLC f/k/a Steve & Barry's

Manhattan LLC, et al. (collectively, the "Debtors"), in the above-captioned chapter 11 case,

respectfully represents:

## I.

## INTRODUCTION

1.       This is Applicant's first interim application (the "Application") for allowance of

compensation and reimbursement of expenses pursuant to § 331 of chapter 11 of title 11 of the

United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") and the *Order Pursuant to Sections 105(A) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(A) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals*, dated July 29, 2008 (the "Interim Compensation Order").

2.    This Application seeks an interim allowance of compensation for legal services rendered by Applicant in the total amount of **$675,659.25** and reimbursement of certain expenses incurred by (or first billed by outside vendors to) Applicant in the amount of **$8,136.29** for the period from July 21, 2008 through October 31, 2008 (the "Compensation Period"), all as more fully set forth below.

3.    This Application complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Interim Compensation Order, as stated in the certification dated January 5, 2009, accompanying this Application, made on behalf of Applicant by Cathy Hershcopf, Esq. (the "Certification"). The Certification is attached hereto as **"Exhibit A"**.

## II.

## BACKGROUND

4.    On July 9, 2008 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their business and their properties as debtors-in-possession. No trustee or examiner has been appointed in this case.

### A.    Appointment of the Committee

5.    On July 17, 2008, the Committee was appointed in this case by the Office of the United States Trustee, consisting of the following seven members: (i) AGI Logistics

Corporation; (ii) American Express; (iii) General Growth Properties, Inc.; (iv) Gildan Active

SRL; (v) JJ Garment; (vi) Simon Property Group, Inc.; and (vii) Texport Syndicate (India) Ltd.

6.       On July 21, 2008, the Committee met and decided that it wished to employ

Applicant as its counsel to advise and represent it in this proceeding *nunc pro tunc* to July 21,

2008 with respect to the various legal considerations and decisions which have arisen and will

continue to arise throughout the duration of this proceeding.

**B.       Applicant's Retention**

7.       On April 19, 2007, the Committee filed the *Application of the Official Committee*

*of Unsecured Creditors for Authority to Retain Cooley Godward Kronish LLP as its Counsel*

*Nunc Pro Tunc to July 21, 2008*, as to which there was no objection. This Court approved the

Committee's retention of Applicant pursuant to an order entered on August 26, 2008.

**C.       Previous Fee Applications**

8.       This is Applicant's first interim fee application in this case. Applicant has

previously served monthly fee applications in accordance with the Interim Compensation Order

for the months of July, August, September and October, 2008:

- Applicant served a first monthly fee application on September 29, 2008, pursuant
  to which it requested the sum of $466,000.25, plus the sum of $642.37,
  representing actual and necessary out-of-pocket disbursements incurred during the
  period of July 21, 2008 through August 31, 2008. No objections were filed to the
  first monthly fee application.

- Applicant served a second monthly fee application on October 27, 2008, pursuant
  to which it requested the sum of $111,101.50, plus the sum of $4,023.17,
  representing actual and necessary out-of-pocket disbursements incurred during the
  period of September 1, 2008 through September 30, 2008. No objections were
  filed to the second monthly fee application.

- Applicant served a third monthly fee application on November 26, 2008, pursuant
  to which it requested the sum of $98,557.50, plus the sum of $3,470.75,
  representing actual and necessary out-of-pocket disbursements incurred during the

period of October 1, 2008 through October 31, 2008.  No objections were filed to the third monthly fee application.

## III.

### JURISDICTION AND STATUTORY PREDICATES

9.     This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are §§ 105(a), 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016.

## IV.

### SERVICES RENDERED DURING PRESENT COMPENSATION PERIOD OF JULY 21, 2008 THROUGH OCTOBER 31, 2008

10.     During the Compensation Period, Applicant's services to the Committee included professional advice and representation in connection with discreet categories in this chapter 11 proceeding.  The aggregate hours and amount for each category is set forth on the cover pages to this Application.

11.     During the Compensation Period, Applicant, on behalf of and in consultation with the Committee, maintained an active role in this chapter 11 case.

12.     To apprise this Court of the legal services rendered during the Compensation Period, Applicant sets forth the following summary of legal services rendered.  However, the summary is intended only to highlight the general categories of services performed by Applicant on behalf of the Committee.  It is not intended to set forth each and every item of professional services which Applicant performed.

**Asset Analysis and Recovery**

13.     This category includes time expended by Applicant with respect to analysis of the Debtors' assets and recovery thereof.  Applicant spent time in this category (i) reviewing the appraisal of the Debtors' assets in preparation for the Sale (hereinafter defined); (ii) analyzing the Debtors' assets in connection with winding-down the Debtors' estates; and (iii) drafting a wind-down analysis with Loughlin Meghji + Company ("Loughlin"), which formed part of a presentation provided to Judge Gropper in camera.

14.     Applicant expended 1.5 hours of time for a charge of $1,002 for services rendered with respect to matters relating to asset analysis and recovery.

**Asset Dispositions**

15.     This category includes time expended by Applicant with respect to the sale (the "Sale") of substantially all of the Debtors' assets.  Applicant actively participated in the negotiation of the proposed asset purchase agreement (the "Proposed Sale Agreement") with BH S&B Holdings, LLC ("Bay Harbour"), including holding numerous internal meetings and conference calls with the Debtors, counsel for Bay Harbour and Loughlin regarding same.  In particular, Applicant reviewed and participated in negotiating the numerous drafts of the Proposed Sale Agreement as well as the drafts of the Agency Agreements with Hilco Merchant Resources, LLC, on behalf of a joint venture composed of Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC (collectively, the "Agent"), and had numerous conversions with the Debtors, Asset Disposition Advisors and the Agent concerning same.

16.     Applicant also (a) had numerous (i) conference calls with the Committee regarding the sale process, (ii) calls with creditors regarding the sale; (b) reviewed the objections to the bidding procedures and the Sale and assisted the Debtors in resolving same; (c) drafted a

memo to the Committee summarizing the Proposed Sale Agreement; and (d) attended and

actively participated in the three day auction and two day sale hearing.

17.    In addition, Applicant drafted an (i) objection to the Debtors' sale motion (the

"Committee Sale Objection"), asserting that the best interests of the Debtors' estate was not well

served through a chapter 11 sale process designed to exclusively benefit the Debtors' secured

lenders and (ii) a limited objection opposing the use of the sale proceeds to pay $5 million to the

Debtors' co-founders and co-CEOs, Steven Shore and Barry Prevor (collectively, the "Insiders")

on account of their purchase of a junior participation interest in the GE Revolver Agreement on

June 20, 2008.  Subsequently, during the course of the three day auction, the Debtors, the

Committee and the Debtors' lenders negotiated a global settlement of the numerous issues and

disputes amongst them, including the conduct of the sale process.  After extensive, arms-length

negotiations, the parties entered into an agreement, which permitted the sale to go forward

without objection; permitted the lenders to be paid in full, plus interest; and provided for a

collateral carve-out of $1.25 million earmarked specifically for general unsecured creditors.  The

objection to the Debtors' payment of the Insiders is still pending.  Applicant also spent time in

this category with respect to inventory reconciliation issues.

18.    Applicant expended 262.2 hours of time for a charge of $154,703 for services

rendered with respect to the handling of matters relating to asset dispositions.

**Business Operations**

19.    This category includes time expended by Applicant with respect to the business

operations and business issues of the Debtors, including Applicant's time reviewing and

providing comments to the Debtors' wind-down budget, reviewing the Debtors' schedules and

statement of financial affairs and reviewing the Debtors' monthly operating reports.

20.    Applicant expended 5.7 hours of time for a charge of $3,436 for services rendered with respect to matters relating to business operations.

## Case Administration

21.    This category includes time expended by Applicant relating to a variety of activities regarding the day-to-day management and prosecution of this chapter 11 case. Services rendered in this project category include (i) regular contact with the Committee and counsel to the Debtors, (ii) telephone calls with various creditors to keep them apprised of the status of the proceeding, (iii) review of the Debtors' first day motions and entered orders with respect to same, (iv) drafting and revising by-laws for the Committee; (v) reviewing various motions filed and orders entered in the case; (vi) attention to scheduling of matters on the Court's calendar; (vii) filing and serving numerous pleadings with the Court; and (viii) conducting legal research with respect to SPM trusts.

22.    Applicant expended 63.7 hours of time for a charge of $24,888 for services rendered with respect to the handling of matters relating to case administration.

## Claims

23.    This category includes time expended by Applicant with respect to various claims against the Debtors.  Applicant spent time in this category, *inter alia*, reviewing claims, advising the Committee and other creditors with respect to the 503(b)(9) claim procedures implemented by the Debtors, reviewing issues with respect to potential claims against the Debtors' insiders, and reviewing and providing comments to the Debtors' draft claims bar date motion.

24.    Applicant expended 7.5 hours of time for a charge of $4,887 for services rendered with respect to the handling of matters relating to claims.

## Fee/Employment Applications

25.    This category includes time expended by Applicant regarding the retention and compensation of various professionals in the Debtors' bankruptcy proceeding. Applicant spent time during the Compensation Period in connection with, among other things: (i) drafting its retention application; (ii) interviewing prospective financial advisors for the Committee; (iii) reviewing the terms of engagement of the Debtors' professionals and discussing same with the Debtors; (iv) reviewing and revising Loughlin's draft retention application; (v) reviewing and revising Applicant's monthly invoices; (vi) drafting Applicant's monthly fee application; (vii) assisting the Debtors with the negotiation and drafting of the Clear Thinking Group engagement letter, drafting the Clear Thinking Group retention application and drafting emails to the Committee with respect to same; (viii) reviewing and revising Loughlin's draft monthly fee applications; and (ix) reviewing other professionals' fee applications.

26.    Applicant expended 39.1 hours of time for a charge of $22,910.50 for services rendered with respect to matters relating to fee/employment applications.

**Fee/Employment Objections**

27.    This category includes time expended by Applicant regarding objections to the retention of, or compensation for, various professionals in the Debtors' bankruptcy proceeding. Applicant spent the majority of its time in this category regarding the Committee's opposition to the revised terms of engagement of Conway, Del Genio, Gries & Co., LLC ("Conway"). The Debtors proposed to enlarge the scope of Conway's retention so that it would assist the Debtors with the sale of substantially all of their assets. In consideration therefor, the Debtors proposed to pay Conway 1% of the aggregate consideration resulting from a sale (the "Success Fee"). Based upon the purchase price under the asset purchase agreement with Bay Harbour of $163 million, the Success Fee was expected to equal approximately $1,630,000. The Committee

believed the proposed fee was high in light of the work performed by Conway and would be paid

at the expense of administrative and priority creditors of these estates, who provided valuable

products and service to the Debtors.

28.    The Committee at first attempted to negotiate a consensual resolution to the

Committee's concerns but was unsuccessful at the outset.  Subsequently, the Committee drafted

an objection to the revised terms of Conway's retention.  After filing that objection, Applicant

successfully negotiated a resolution of the parties disputes whereby the Success Fee was reduced

to $1 million, with the first $500,000 payable upon entry of an order authorizing the revised

terms of Conway's retention and the balance payable when other professionals receive their final

fees in this case.

29.    Applicant expended 9.2 hours of time for a charge of $5,078 for services rendered

with respect to matters relating to fee/employment objections.

**Financing and Cash Collateral**

30.    This category includes time expended by Applicant with respect to the Debtors'

use of the cash collateral of General Electric Capital Corporation ("GE") and PrenSB, LLC

("PrenSB" and together with GE, the "Lenders").  Initially, Applicant reviewed, analyzed and

summarized the Debtors' loan agreements and the proposed final cash collateral order.  In

connection therewith, Applicant engaged in numerous telephone calls, internal meetings and

negotiations with counsel for the Lenders and the Debtors in order to modify provisions of the

cash collateral order to benefit the estates.  Applicant also began drafting a limited objection to

the Debtors' request for final approval of cash collateral when it appeared that the Lenders were

unwilling to compromise on certain issues.  The objections were drafted in an abundance of

caution due to the time constraints faced by Applicant and the uncertainty of the negotiation

process. In connection with the drafting of the objection and the negotiation process, Applicant

engaged in legal research with respect to certain financing issues.

31.    Applicant also conducted legal research regarding the early termination fees

accessed to the Debtors by the Lenders and began drafting an objection to same. That objection

was ultimately resolved in connection with a global resolution of the Committee's concerns

regarding the sale.

32.    Applicant expended 190.2 hours of time for a charge of $106,071.50 for services

rendered with respect to the handling of matters relating to financing.

**Litigation**

33.    This category includes time expended by Applicant with respect to the Debtors'

litigation or contested hearings against third parties. The time spent in this category included

preparing a document preservation letter and a document demand on the Debtors. In connection

therewith, Applicant conducted a preliminary investigation into the Debtors' 2006 transaction

with TA Associates and accounting practices based upon publicly available information, held

numerous internal meetings and meetings with Loughlin with respect to same.

34.    Applicant also spent a considerable amount of time in this category with respect

to the proposed sale of the Debtors' causes of action against the Insiders, BDO Seidman LLP and

senior management (collectively, the "Insider Claims"). On August 22, 2008, this Court

approved the sale of substantially all of the Debtors' assets and authorized the Debtors to enter

into an asset purchase agreement with Bay Harbour. However, this Court directed that the

Insider Claims be excluded from the purchased assets. After the Sale was approved by this

Court, Applicant reviewed and revised a draft 9019 motion, requesting approval of the sale of the

Insider Claims to Bay Harbour (the "Draft 9019 Motion"), provided by counsel for the Insiders.

The Committee subsequently informed the Debtors and counsel for the Insiders that some

investigation of the causes of action was necessary before the Committee could make an

informed decision about the Draft 9019 Motion. Accordingly, Applicant revised its previously

circulated document demand and had numerous calls with the Debtors and counsel for the

Insiders with respect to same.

35.    On or about September 5, 2008, the Committee sent counsel for the Insiders and

the Debtors the revised document demand. However, neither the Debtors nor the Insiders agreed

to fully cooperate in responding to the document demand. Accordingly, Applicant drafted a

2004 motion, requesting entry of an order compelling the Debtors and Insiders to cooperate with

the Committee's investigation. The Debtors and the Insiders subsequently objected to the 2004

Motion. Applicant subsequently drafted a response to the objections to the 2004 motion. On

October 16, 2008, this Court denied the 2004 motion without prejudice. In connection with the

2004 motion, Applicant had numerous internal meetings and calls with counsel for the Insiders

with respect to discovery issues.

36.    Applicant also negotiated a confidentiality agreement in connection with the

Insiders' production of documents to the Committee and began reviewing the produced

documents and preparing a memo with respect to same.

37.    Applicant also conducted legal research regarding the early termination fees

accessed to the Debtors by the Lenders and began drafting an objection to same. That objection

was ultimately resolved in connection with a global resolution of the Committee's concerns

regarding the Sale. In connection therewith, Applicant spent time in this category drafting a

motion, and conducting legal research for same, requesting authority to enter into a settlement

with the Lenders regarding a $1.25 million carve-out for general unsecured creditors.

38.    Applicant expended 110.41 hours of time for a charge of $64,849.75 for services rendered with respect of matters relating to litigation.

**Meetings**

39.    This category includes time expended by Applicant for preparation and attendance at meetings with, *inter alia*, the Committee, Loughlin, and counsel for the Debtors, Clear Thinking and Conway Del Genio regarding, inter alia, transition services and potential litigation against the Insiders.  In addition, Applicant billed time in this category with respect to the first meeting with the Committee and the in-person meeting with the Debtors and counsel for the Insiders.

40.    Applicant expended 26.3 hours of time for a charge of $16,983 for services rendered with respect to preparation and attendance at meetings.

**Plan and Disclosure Statement**

41.    This category includes time expended by Applicant with respect to a plan and disclosure statement.  The time spent in this category was de minimis.

42.    Applicant expended 0.4 hours of time for a charge of $272 for services rendered with respect to preparation and attendance at meetings.

**Relief from Stay Proceedings**

43.    This category includes time expended by Applicant regarding relief from the automatic stay proceedings.  The time spent in this category was mostly spent with respect to the AGI motion to lift the stay and issues arising out of same.

44.    Applicant expended 7.5 hours of time for a charge of $3,600.50 for services rendered with respect to relief from the automatic stay proceedings.

**Leases and Executory Contracts**

45.    This category includes time expended by Applicant with respect to the Debtors' unexpired non-residential leases of real property and executory contracts. Applicant spent time in this category reviewing the Debtors' numerous license agreements and conducting legal research regarding the assignability of same. Applicant also drafted an objection to the Debtors' motion requesting authority to pay certain celebrity endorsers royalty payments prior to the assumption of their license agreements. The Committee never filed that motion after it became clear that the funds being used to pay the royalties would never trickle down to general unsecured creditors.

46.    Applicant also spent time in this category reviewing and revising the Debtors' lease rejection procedures motion and assisting the Debtors with resolving landlord objections with respect same and contacts with the Debtors' landlords regarding assumption, rejection and payment issues.

47.    Moreover, Applicant spent time in this category reviewing the Debtors' motion for a 365(d)(4) extension and reviewing the numerous objections regarding same. In addition, Applicant reviewed issues regarding the Debtors' claims to unpaid tenant allowances from their landlords.

48.    Applicant expended 27.4 hours of time for a charge of $14,980.50 for services rendered with respect to the handling of matters relating to leases and executory contracts.

**Preparation For and Attendance at Court Hearings**

49.    This category includes time expended by Applicant with respect to preparation for, and attendance at, Court hearings, including hearings regarding the Debtors' proposed bidding procedures in connection with the sale, the hearing regarding the Debtors proposed payments to certain celebrity endorsers, the sale hearings, the Debtors' 503(b)(9) motion, filing

of schedules and rejection procedures and hearings regarding the 2004 motion and the 365(d)(4) motion.

50.     Applicant expended 69 hours of time for a charge of $42,610.50 for services rendered with respect to the handling of matters relating to the preparation for and attendance at Court hearings.

# V.

## MATTERS PERTAINING TO APPLICANT

51.     Applicant has maintained contemporaneous time records which indicate the time that each attorney has spent working on a particular matter and the nature of the work performed. Copies of these time records are annexed to this Application as **Exhibit "B"**. The total number of hours expended by Applicant's attorneys and para-professionals during the Compensation Period in conjunction with this case is 1190.99. All of the services have been rendered by those individuals at Applicant's firm as listed on Applicant's Personnel Chart attached hereto.

52.     The personnel who have expended extensive time on this matter during the Application period are as follows:  (a) Cathy Hershcopf:  Ms. Hershcopf has been actively involved in all aspects of this case, including, most importantly, protecting general unsecured rights with respect to the sale of substantially all of the Debtors' assets; and (b) Brent Weisenberg:  Mr. Weisenberg was responsible for various day-to-day issues that arose during the Compensation Period.

53.     Many of the items that have been reviewed are unique to retail-type bankruptcy proceedings.  It is respectfully submitted that Applicant's expertise in retail bankruptcy cases has caused certain issues to be reviewed without difficulty, as other bankruptcy attorneys without expertise in retail cases would have had to spend more time researching issues and, in addition,

would not have been familiar with the issues applicable to this type of case.  Some of the retail chapter 11 cases in which Applicant has been retained include:  Any Mountain in Santa Rosa, California; Archibald Candy Corporation in Chicago, Illinois; Bag n'Baggage in Dallas, Texas; Bob's Stores in Wilmington, Delaware; Boscov's in Wilmington, Delaware; Casual Male in New York, New York; Copelands Enterprises in Wilmington, Delaware; Cosmetic Center in Wilmington, Delaware; Dry Ice in St. Louis, Missouri; Filene's Basement in Boston, Massachusetts; Goody's in Wilmington, Delaware; Harvey Electronics in New York, New York; J. Silver Clothing in Wilmington, Delaware; Jacobson's Stores in Detroit, Michigan; Just for Feet, Bob's Stores in Wilmington, Delaware; Kuppenheimers in Wilmington, Delaware; Leather Loft Stores in Manchester, New Hampshire; Leatherland in Toledo, Ohio;  Levitz Home Furnishings, Inc. in New York, New York;  Lids Corporation in Wilmington, Delaware; Loehmann's  in Wilmington, Delaware; Long John Silver's Restaurants, Inc. in Wilmington, Delaware; Moe Ginsburg in New York, New York;  Mervyn's in Wilmington, Delaware; Montgomery Ward in Wilmington, Delaware; Pic 'N Pay Stores in Wilmington, Delaware; Princeton Ski Shops in Newark, New Jersey; Renaissance Cosmetics in Wilmington, Delaware; Scotty's in Wilmington, Delaware;  Sharper Image in Wilmington, Delaware; Steve's Shoes in Kansas City, Kansas; Sun Apparel Warehouse in Philadelphia, Pennsylvania; Today's Man II in Camden, New Jersey; Today's Man in Wilmington, Delaware; Troutman's Emporium in Eugene, Oregon; Weiner's Stores in Wilmington, Delaware; and Woodworker's Warehouse in Wilmington, Delaware.

54.    Applicant rendered all the professional services for which compensation is requested herein in connection with the Debtor's chapter 11 case in furtherance of Applicant's professional responsibilities as attorneys for the Committee.

55.     During the Compensation Period, the partners, associates and para-professionals of Applicant devoted substantial time, 1190.99 hours, in rendering professional services to the Committee, all of which time was reasonable and necessary.

56.     Applicant, by experience, training and ability, is fully qualified to perform the services for which compensation is sought here.  Applicant represents or holds no interest adverse to the Committee with respect to the matters upon which it is engaged.

57.     No agreement or understanding exists between Applicant and any other entity for the sharing of compensation to be received for services rendered in or in connection with these chapter 11 cases.

## VI.

## EXPENSES

58.     Annexed as part of the cover sheet is a list of the necessary and actual disbursements incurred during the Compensation Period in connection with the above-described work.  The list is derived from the information found at the end of the Case Administration project category in Exhibit "B".  These records indicate that Applicant has advanced and will have advanced, during the Compensation Period, the sum of **$8,136.29** in necessary and actual out-of-pocket expenses.  In connection with said expenses, it should be noted that Applicant charges $1.00 per page for outgoing telefacsimilies with no charge for incoming telefacsimilies, 20¢ per page for photocopying and charges for meals only necessitated by meetings with the Debtors or the Committee or when Applicant's personnel would work on this case through a normal meal period.

## VII.

## NOTICE AND PRIOR APPLICATION

59.    Notice of this Application has been provided to (i) the Debtors, (ii) Debtors'

counsel, (iii) the U.S. Trustee; (iv) all other parties entitled to notice in these cases. Applicant

submits that the foregoing constitutes good and sufficient notice and that no other or further

notice need be given.

60.    No previous application for the relief sought herein has been made to this or any

other court.

**WHEREFORE**, Applicant hereby respectfully requests (i) interim allowance of

compensation for Applicant's duly authorized, necessary and valuable service to the Committee

during the Compensation Period in the aggregate amount of **$675,659.25**; and (ii) reimbursement

to Applicant for actual and necessary expenses incurred during the Compensation Period in

connection with the aforesaid services in the aggregate amount of **$8,136.29**.

Dated: New York, NY
     December 30, 2008

COOLEY GODWARD KRONISH LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 479-6000
Cathy Hershcopf
Brent Weisenberg

By:   /s/ Cathy Hershcopf
      Cathy Hershcopf

Counsel for the Official
Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

In re:

STONE BARN MANHATTAN LLC f/k/a Steve &
Barry's Manhattan LLC, et al.

                        Debtors.

Chapter 11

Case No. 08-12579 (ALG)

(Jointly Administered)

-------------------------------------------------------------X

### ORDER GRANTING FIRST INTERIM APPLICATION OF COOLEY GODWARD KRONISH LLP, COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM JULY 21, 2008 THROUGH OCTOBER 31, 2008

Upon the application, dated December 30, 2008 (the "Application"),[1] of Cooley

Godward Kronish LLP ("Applicant"), counsel to the Official Committee of Unsecured Creditors

(the "Committee") of Stone Barn Manhattan LLC f/k/a Steve & Barry's Manhattan LLC, et al.

(collectively, the "Debtors"), in the above-captioned chapter 11 case, seeking entry of an order

allowing compensation and reimbursement of expenses pursuant to §§ 330 and 331 of chapter 11

of title 11 of the United Stated Code (the "Bankruptcy Code") for legal services performed for

the period from July 21, 2008 through October 31, 2008 (the "Compensation Period"); and it

appearing that the Court has jurisdiction to consider the Application and the relief requested

therein in accordance with 28 U.S.C. §§ 157 and 1334; and due notice of the Application having

been provided to, among others, (i) the Debtors, (ii) Debtors' counsel, (iii) the U.S. Trustee; (iv)

all other parties entitled to notice in these cases, and it appearing that no other or further notice

need be provided; and it further appearing that the relief requested in the Application is in the

---

[1]    Any capitalized term not defined herein shall have the meaning ascribed to it in the Application.

best interests of the Debtors and their estates and creditors; and after due deliberation and

sufficient cause appearing therefor, it is hereby

**ORDERED**, that the Application is granted on a final basis in the amount of

$675,659.25 for professional services rendered and $8,136.29 for reimbursement of expenses

incurred in the connection with the rendition of such services during the Interim Application

Period for a total award of $683,795.54; and it is further

**ORDERED,** that the amount of $675,659.25 is reasonable compensation for

services rendered by Applicant for the Interim Application Period, and that $8,136.29 is

reasonable for expenses incurred in connection with the rendition of the professional services

rendered; and it is further

**ORDERED**, that the Debtors are authorized and directed to pay the allowed

amounts set forth above, to the extent such amount have not yet been paid; and it is further

**ORDERED**, that the amount of compensation allowed to Applicant under this

Order is provided pursuant to §§ 330 and 331 of the Bankruptcy Code.

Dated: New York, NY
      January ___, 2009

 

                                             HONORABLE ALLAN L. GROPPER,
                                             UNITED STATES BANKRUPTCY JUDGE